No. 24-2045

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, ALAN HIRSCH, JEFF CARMON, STACY EGGERS IV, KEVIN N. LEWIS, SIOBHAN O'DUFFY MILLEN

*Defendants-Appellants*,

DEMOCRATIC NATIONAL COMMITTEE,

*Intervenor-Defendant-Appellant*,

*v.*

REPUBLICAN NATIONAL COMMITTEE, NORTH CAROLINA REPUBLICAN PARTY,

*Plaintiffs-Appellees*.

On Appeal from the United States District Court
for the Eastern District of North Carolina, No. 5:24-cv-00547 (Myers, C.J.)

**MOTION OF THE DEMOCRATIC NATIONAL COMMITTEE
TO STAY REMAND ORDER PENDING APPEAL,
AND REQUEST FOR AN IMMEDIATE ADMINISTRATIVE
STAY PENDING RULING ON STAY MOTION
(ACTION REQUESTED BEFORE OCTOBER 22, 2024)**

JIM W. PHILLIPS, JR.
SHANA L. FULTON
ERIC M. DAVID
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
   HUMPHREY & LEONARD, LLP
150 Fayetteville Street
1700 Wells Fargo Capital Center
Raleigh, N.C. 27601
(919) 839-0300

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
GARY M. FOX
JOSEPH M. MEYER
JANE E. KESSNER
NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com

October 18, 2024

**LOCAL RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 8 and 26.1, the Democratic National Committee makes the following disclosures:

1. Is party a publicly held corporation or other publicly held entity?  NO

2. Does party have any parent corporations?  NO

3. Is 10% or more of the stock of a party owned by a publicly held corporation or other publicly held entity?  NO

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  NO

5. Is party a trade association?  NO

6. Does this case arise out of a bankruptcy proceeding?  NO

7. Is this a criminal case in which there was an organizational victim?  NO

Signature:  /s/ Seth P. Waxman                    Date:  October 18, 2024
Counsel for:  Democratic National Committee

## INTRODUCTION

The Democratic National Committee ("DNC") moves this Court to stay, pending this appeal, the district court's order granting plaintiffs' motion to remand count two of their complaint to state court. (The court dismissed count one with prejudice for failure to state a claim.) A stay pending appeal is warranted under the traditional four factors, but the court issued its remand order on October 17 and stayed it only until October 22, meaning that a stay is needed for this Court to have a chance to consider the appeal. And because the district court has already chosen to grant only a temporary stay, and given that there is largely a weekend between now and when that stay expires, it would be impractical for the DNC to seek a further stay from the district court before filing this motion.

The DNC also requests an immediate administrative stay of the district court's remand order until this motion is resolved, and asks that this administrative-stay request be resolved by a single judge if there is not time for a panel to consider it. *See* L.R. 27(e).[1]

The DNC requested plaintiffs' position earlier today but had not received a response by the time of the filing of this motion.

_____

[1] The original defendants today filed their own separate appeal from the district court's remand order, and have likewise moved for a stay pending appeal. The DNC supports a stay in that appeal for the same reasons given herein.

## STATEMENT

Plaintiffs filed their two-count complaint in North Carolina superior court on August 23—less than 90 days before election day, and with even less time than that before early voting in North Carolian began. Compl. (ECF 1-3) at 2.[2] They allege that the North Carolina State Board of Elections (State Board), its members, and its executive director committed "a plain violation of Section 303 of the Help America Vote Act" (HAVA), and further allege that "because of" that violation, North Carolina's voter rolls "potentially" include ineligible voters. *Id.* ¶3.

Count one, which has now been dismissed with prejudice, *see* Op. (ECF 58) at 44, sought a writ of mandamus to address an alleged violation of North Carolina General Statutes §163-82.11(c), which requires the State Board to maintain North Carolina's voter rolls in compliance with HAVA. Compl. ¶¶77-88. Count two (the subject of this appeal) seeks a mandatory injunction to redress an alleged violation of the North Carolina Constitution based on the same purported violation in count one (i.e., the State Board's supposed failure to comply with both HAVA and its implementing state statute). *Id.* ¶¶90-92. To remedy both counts, plaintiffs requested "a court-approved plan" under which "ineligible registrants" will be "remov[ed] … from the state's voter registration lists." *Id.* at 19. If "removal is not feasible," then plaintiffs seek a court order requiring "all individuals who failed

---

[2] ECF citations refer to the district court's docket.

to provide necessary HAVA identification information but were still registered to vote under the state's prior registration form, to cast a provisional ballot in the upcoming elections pending" the State Board's "receipt and confirmation of the required HAVA information." *Id.* at 19-20.

The DNC intervened in superior court and filed a motion to dismiss, answer, and affirmative defenses. ECF 1-18, 1-19. The State Board subsequently removed the case, ECF 1, and then moved to dismiss both counts of plaintiffs' complaint for failure to state a claim. ECF 30, 31. The DNC filed a response supporting dismissal. ECF 48.

Over a week after removal, plaintiffs filed an "emergency" motion to remand to the superior court, ECF 37, 38, which the State Board and DNC opposed, ECF 49, 51. On October 17—the day early voting began in North Carolina—the district court held a hearing on the motions to remand and dismiss, and issued an opinion later that day resolving the motions. Op.44.

The district court rejected plaintiffs' argument that removal of both claims had been improper, concluding that it had original jurisdiction over count one and supplemental jurisdiction over count two, Op.2, and thus denied plaintiffs' emergency remand motion in full, Op.44. It also dismissed count one with prejudice, concluding that plaintiffs lacked a private right of action to for its claim that the State Board violated HAVA "by failing to collect" the driver's license or

social security numbers HAVA requires and "refusing 'to maintain accurate voters rolls.'" Op.19, 42-44 (quoting Compl. at 18-19). But having dismissed count one, the district court "decline[d] to exercise supplemental jurisdiction over Count Two," the state constitutional claim, and remanded that claim. Op.44 (quotation marks omitted). Count two, the court ruled, "raised a 'novel' issue of North Carolina law," namely, "whether the State's noncompliance with state and federal election law can give rise to state constitutional injury." Op.43. In the court's view, it would disrupt the federal-state balance for the federal courts to resolve a claim about the state constitution.

## ARGUMENT

The district court's remand order should be stayed pending appeal because (1) defendants are likely to succeed on appeal in reversing that order; (2) they will be irreparably injured absent a stay; (3) a stay would impose no substantial harm on plaintiffs; and (4) the public interest overwhelmingly favors a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (enumerating these four factors for a stay pending appeal).

## I.    THE DNC WILL LIKELY SUCCEED ON APPEAL

Plaintiffs will likely succeed in showing that the district court erred when it declined to exercise jurisdiction over plaintiffs' second count. That count (like the count on which the court correctly concluded it had original jurisdiction) turns

*entirely* on a violation of HAVA. The district court therefore had jurisdiction over count two as over count one—pursuant to both 28 U.S.C. §1441 and 1443—and its remand of that count violated its "virtually unflagging obligation … to exercise the jurisdiction given" to it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). And even if the court had any discretion to decline to exercise jurisdiction over count two, it abused that discretion here.

A.       Under 28 U.S.C. §1441(a), any case over which federal district courts would have original jurisdiction can be removed. As to §1441(a), the district court "assume[d] without deciding that this claim [two] necessarily rais[ed] a disputed and substantial issue of federal law." Op.17. Indeed, it acknowledged that "Defendants and the DNC persuasively argued that Count 2 involves the same disputed issues pertaining to HAVA as Count One." Op.17 n.2. It therefore concluded that count two met three of the four factors courts consider in deciding whether federal-question jurisdiction exists over a state-law cause of action: A federal issue was (1) "necessarily raised," (2) "actually disputed," and (3) "substantial." *Gunn v. Minton*, 568 U.S. 251, 258 (2013), *quoted in Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022). But it concluded that the fourth factor—whether the complaint is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," *id.*—cut against federal jurisdiction, stating that its consideration of

count two "would fundamentally disrupt the 'federal-state balance.'" Op.17

(quoting *Gunn*, 568 U.S. at 258).

That conclusion did not warrant a remand. Indeed, on the court's logic, it is

*remand* that would disrupt the proper federal-state balance. As the court

explained, "Congress intended for federal courts to resolve core questions of

statutory interpretation" as to HAVA, and "there is no indication that Congress

intended that outcome to the exclusion of federal court jurisdiction." Op.33. The

court did not explain why that logic did not apply equally to count two—which

again, the court described as "involv[ing] the same disputed issues pertaining to

HAVA as Count One," Op.17 n.2. There is no reason why plaintiffs' passing

reference to the state constitution in count two of their complaint (and in particular

to a supposed "chilling effect on North Carolinians' right to vote in free and fair

elections") could require a different result; in fact, plaintiffs allege that such

chilling will occur only "[i]f [d]efendants do not remove ineligible voters from the

state's voter rolls," Compl. ¶71—the action they claim HAVA mandates, *e.g., id.*

¶58. Put another way, the district court's recitation of the general principle

(Op.17) that "state courts [should] be left free" to "interpret[] their state

constitutions" has no import here, because plaintiffs are not asking the court to

interpret the state constitution. Op.17-18. Their complaint, on its face, raises a

*federal* question: whether *HAVA* requires voters to be removed from the rolls even this close to the election (or made to vote provisionally).

In *Gunn*, the Supreme Court deemed the fourth factor (federal-state balance) to cut against federal jurisdiction because states "have a special responsibility for maintaining standards among members of the licensed professions." 568 U.S. at 264 (quotation marks omitted). This case, by contrast, concerns statutes that safeguard Americans' right to vote in *federal* elections. HAVA, for example, provides that "[t]he computerized list [of voters at issue here] shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. §21803(a)(1)(A)(viii). And the ban in the National Voter Registration Act (NVRA) on systematically removing voters from the rolls 90 days before an election covers the "90 days prior to … a[ny] … election for Federal office." *Id.* §20507(c)(2)(A). There is "no reason to suppose that Congress" intended to preclude federal courts from hearing litigation so centrally focused on the fundamental right to vote in federal elections. *Gunn*, 568 U.S. at 264.

In short, the DNC will likely succeed in showing that the court had original jurisdiction under §1441(a) over count two for the same reasons it properly found federal jurisdiction over count one.[3]

---

[3] Though not directly relevant to the current appeal (or this stay motion), the district court should have dismissed count two along with count one. Plaintiffs are

B. The district court also erred in declining to find federal jurisdiction over count two under 28 U.S.C. §1443, which allows removal of cases involving either "a right under any law providing for the equal civil rights of citizens of the United States," or a "refus[al] to do any act on the ground that it would be inconsistent with such law."

The Supreme Court has held that the phrase "any law providing for … equal civil rights" in §1443(1) "must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Georgia v. Rachel*, 384 U.S. 780, 792 (1966), *quoted in Vlaming v. West Point School Board*, 10 F.4th 300, 309 (4th Cir. 2021). The NVRA is such a statute. It provides for a specific civil right—the "fundamental right" to "vote"—and prohibits "discriminatory and unfair registration laws and procedures" which "disproportionately harm … racial minorities." 52 U.S.C. §20501(a). The State Board, moreover, "refused to" (28 U.S.C. §1443(2)) remove registered voters from the rolls or require that they cast provisional ballots "because the [NVRA] prohibits the State Board from systematically removing registered voters fewer than 90 days before an election," ECF 51 at 13 (citing 52 U.S.C. §20507(c)(2)(A)).

---

barred from suing to enforce their HAVA claim in state court—whether cloaked in state-mandamus garb *or* state constitutional garb.

The district court acknowledged that "certain provisions of the NVRA are expressed in terms of racial equality." Op.37; *see* 52 U.S.C. §10101(a)(1). And it recognized that 28 U.S.C. §1443(2) permits removal in cases involving defendants' refusal to act pursuant to "authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law." Yet it opined that "it is not enough for defendants to generally reference a law that provides for civil rights in terms of racial equality to establish removal jurisdiction under Section 1443"; in other words, the court declared, removal was unavailable because the State Board's "refusal to act ha[d] nothing to do with considerations of race" given that the specific statutory *provision* within the NVRA they have invoked (i.e., the 90-day bar) does not itself repeat the NVRA's racial-equality purpose. Op.37, 39. The court cited no authority supporting this cramped reading of the civil-rights removal statute. And while it purported to "adhere to" *Georgia v. Rachel*, 384 U.S. 780, 792 (1966), that case, as this Court has held, stands only for the proposition that "racial equality"—not sex equality—is §1443's "sole subject," *Vlaming*, 10 F.4th at 309. Nothing in *Rachel* (or *Vlaming*) authorizes or justifies a district court declining jurisdiction over a case removed pursuant to §1443 where removal is based on a law expressly enacted to protect racial equality, on the ground that the specific section cited does

9

not expressly repeat the act's racial-equality purpose. That is a rule of the district court's own creation, and it is likely to be reversed on appeal.

C.   In the alternative, to the extent that the district court had any discretion to remand count two after having dismissed count one, it erred in declining to retain supplemental jurisdiction over that second count.

First, as the DNC argued (ECF 49 at 9), plaintiffs never argued in their "emergency" remand motion that the district court should decline supplemental jurisdiction. And a plaintiff may forfeit any objection to supplemental jurisdiction by failing to raise such objection, because supplemental jurisdiction is discretionary. *E.g.*, *Williams v. 5300 Columbia Pike Corp.*, 891 F.Supp. 1169, 1182 (E.D. Va. 1995); *Sherin v. John Crane-Houdaille, Inc.*, 2015 U.S. Dist. LEXIS 36857, *14 (D. Md. Mar. 24, 2015); *cf. Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) ("The discretionary aspect to supplemental jurisdiction is waivable."). But the district court declined supplemental jurisdiction *sua sponte*—even though that issue was never briefed, except in reply—and without addressing whether any argument that it should decline such jurisdiction had been forfeited. Op.44. Doing so was reversible error.

Second, even if any such argument was properly before the district court, it abused its discretion in declining to exercise supplemental jurisdiction here. Retaining supplemental jurisdiction over count two would not violate the

"principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988), because plaintiffs' state law claims are inadequately pleaded, the district court and the parties have already expended significant resources in the adjudication of plaintiffs' core arguments under HAVA, and dismissal of count two does not require an adjudication of any state-law issues.

*  *  *

The errors in the district court's remand order leave no doubt that the first, "most critical" factor for a stay pending appeal, *Nken*, 556 U.S. at 434, supports a stay.

## II.   THE REMAINING FACTORS ALL FAVOR A STAY

Given the DNC's likelihood of success, a stay would be warranted even if the other factors did not support a stay. But each one does.

### A.   The DNC Will Be Irreparably Harmed Without A Stay

The second factor asks whether the applicant will be irreparably harmed without a stay. The answer here is yes. If the remand order is not stayed, the DNC will suffer irreparable harm because it will effectively lose its statutory right to appeal that order. The DNC has such a statutory right in two ways. First, the district court's remand order was part of its final judgment, giving rise to a right to appeal under 28 U.S.C. §1291. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*,

11

556 U.S. 635 (2009) (holding that a district court's remand of state-law claims based on a decision not to exercise supplemental jurisdiction under 28 U.S.C. §1367(c) falls outside the no-appeal bar for most remand orders 28 U.S.C. §1447(d)). Second, one of the grounds for removal was 28 U.S.C. §1443(2), rendering the remand order appealable under §1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

A stay is thus necessary "to prevent rendering the statutory right to appeal 'hollow.'" *Northrop Grumman Technical Services, Inc. v. DynCorp International LLC*, 2016 WL 3346349, at \*3 (E.D. Va. June 16, 2016). The harm from that outcome "would be immediate and potentially severe." *Id.* Recognizing this, courts have frequently granted stays pending appeals of remand orders where an appeal is authorized, stressing that irreparable harm would result absent such a stay. *E.g.*, *Raskas v. Johnson & Johnson*, No. 4:12-cv-2174, 2013 WL 1818133, at \*1 (E.D. Mo. Apr. 29, 2013) (collecting cases). As the court in one such case put it, "if the case is actually remanded, and the state court proceeds to move it forward, the appellate right would be an empty one." *Indiana State District Council of Laborers & Hod Carriers Pension Fund v. Renal Care Group, Inc.*, 2005 WL 2237598, \*1 (M.D. Tenn. Sept. 12, 2005).

**B.     A Stay Will Not Substantially Injure The Other Parties**

A stay will not substantially injure any party.  A stay would not preclude

plaintiffs from obtaining a court decision on their surviving claim for relief.  The

only question is which forum is best suited to hear the federal issues presented in

that claim.  As explained above, the answer is clearly the federal courts.

Even if plaintiffs were to assert an interest in the swift resolution of their

remaining claim, the expeditious resolution of this case is likely to be hindered,

rather than aided, if the Court denies a stay pending appeal.  If this Court (or

potentially the U.S. Supreme Court) determines that federal jurisdiction is proper,

then both parties will have wasted significant resources litigating this suit in the

superior court.  *See Northrop Grumman*, 2016 WL 3346349, at *4 ("[I]ssuing a

stay would actually save Defendant, as well as Plaintiff, the burden of having to

simultaneously litigate this case as a trial in state court and an appellate proceeding

before the Fourth Circuit.").  Any slight harm to plaintiffs from the precise timing

of the adjudication for their remaining claim "would be temporary," and "it pales

in comparison to the potential harm … if no stay is issued." *Id.*  Accordingly, the

balance of harms decidedly tilts in favor of defendants and the DNC.

**C.     The Public Interest Favors A Stay**

A stay pending appeal would prevent the superior court from moving

forward with considering a claim that should be heard in federal court, and it could

potentially result in an order that would irreparably disenfranchise voters. A stay would also serve the public interest by "avoid[ing] potentially duplicative litigation in the state courts and federal courts, thereby conserving judicial resources and promoting judicial economy." *Raskas*, 2013 WL 1818133, at \*2; *see also Scott v. Family DollarStores, Inc.*, No. 3:08-cv-540, 2016 WL 4267954, at \*1 (W.D.N.C. Aug. 11, 2016) (granting a stay based on judicial economy); *United States v. 2366 San Pablo Ave.*, No. 13-cv-2027, 2015 WL 525711, at \*5 (N.D. Cal. Feb. 6, 2015) (finding "a cognizable public interest in promoting judicial economy").

**III.    IT WAS NOT PRACTICABLE FOR THE DNC TO ASK THE DISTRICT COURT FOR A STAY PENDING APPEAL**

Both Federal Rule of Appellate Procedure 8(2)(A)(i) and Local Rule 8 authorize appellants to seek a stay pending appeal from this Court when seeking such relief from the district court is not practicable. Here, Defendants made clear to the district court that no part of this case should proceed in superior court, but the district court nevertheless chose to grant only a temporary stay of its remand order until October 22 rather than a stay pending resolution of this appeal. The district court has therefore indicated that it is unlikely to stay its remand order beyond October 22. Regardless, seeking relief in the district court first would risk delaying resolution of this request until the current stay has already expired. Given the upcoming weekend, the district court may not be able to deny a stay until Monday, October 21, or even Tuesday, October 22 (when the current stay

expires)—leaving this Court little or no time to enter a stay before the remand order is executed.

*    *    *

The DNC is likely to succeed on appeal because the district court had jurisdiction over the second count in plaintiffs' complaint. At a minimum, the district court should have exercised supplemental jurisdiction over that claim. Without a stay, defendants and the DNC will be irreparably harmed by being forced to litigate simultaneously in both this Court and superior court. Given the proximity of the general elections on November 5, the district court's remand order taking effect would even risk depriving defendants and the DNC of the proper federal forum for responding to plaintiffs' sole remaining claim, which raises federal issues.

## CONCLUSION

The Court should stay the district court's remand order pending appeal, and it should immediately enter an administrative stay during the pendency of this motion.

October 18, 2024

Respectfully submitted,

/s/ Seth P. Waxman

| | |
|---|---|
| JIM W. PHILLIPS, JR. | SETH P. WAXMAN |
| SHANA L. FULTON | DANIEL S. VOLCHOK |
| ERIC M. DAVID | CHRISTOPHER E. BABBITT |
| WILLIAM A. ROBERTSON | GARY M. FOX |
| JAMES W. WHALEN | JOSEPH M. MEYER |
| BROOKS, PIERCE, MCLENDON | JANE E. KESSNER |
|    HUMPHREY & LEONARD, LLP | NITISHA BARONIA |
| 150 Fayetteville Street | WILMER CUTLER PICKERING |
| 1700 Wells Fargo Capital Center |    HALE AND DORR LLP |
| Raleigh, N.C. 27601 | 2100 Pennsylvania Avenue N.W. |
| (919) 839-0300 | Washington, D.C. 20037 |
| | (202) 663-6000 |
| | seth.waxman@wilmerhale.com |

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the foregoing contains 3,482 words, excluding the portions exempted by Rule 32(f).

/s/ Seth P. Waxman
SETH P. WAXMAN

## CERTIFICATE OF SERVICE

On this 18th day of October, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Seth P. Waxman
SETH P. WAXMAN