Nos. 24-2044, 24-4045

# In the United States Court of Appeals for the Fourth Circuit

REPUBLICAN NATIONAL COMMITTEE; NORTH CAROLINA REPUBLICAN PARTY,
*Plaintiffs-Appellees*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; ALAN HIRSCH, IN HIS OFFICIAL CAPACITY AS CHAR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; JEFF CARMON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; STACY EGGERS, IV, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; KEVIN N. LEWIS, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; SIOBHAN O'DUFFY MILLEN, IN HER OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendants-Appellants*

DEMOCRATIC NATIONAL COMMITTEE,
*Intervenor/Defendant-Appellant*

————————

From the United States District Court
for the Eastern District of North Carolina
The Honorable Richard E. Myers II (No. 5:24-CV-00547)

————————

**OPPOSITION OF PLAINTIFFS-APPELLEES TO EMERGENCY MOTIONS TO STAY**

————————

PHILLIP J. STRACH
JORDAN A. KOONTS
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
301 HILLSBOROUGH ST., SUITE 1400
RALEIGH, NORTH CAROLINA 27603

PH: (919) 329-3800
PHIL.STRACH@NELSONMULLINS.COM
JORDAN.KOONTS@NELSONMULLINS.COM

# INTRODUCTION

Defendants and Intervenor-Defendants Motions are procedurally defective run-arounds of the Federal Rules of Appellate Procedure. In an attempt to delay remand to state court, Defendants and Intervenor-Defendant ignore that the District Court already granted a stay at their request. Unhappy with the amount of time they asked for, they run to this Court seeking improper relief. For the reasons set forth herein, both Motions should be denied.

# BACKGROUND

Plaintiffs filed their Complaint against the North Carolina State Board of Elections ("NCSBE") in Wake County Superior Court on August 23, 2024. Doc. 6 ("Compl.") at 26. Plaintiffs allege that the NCSBE, its members, and its executive director (collectively, "Defendants") violated state law by allowing potentially ineligible applicants to register to vote without collecting the required identification information under state law in the first instance. N.C.G.S. §163-82.4(a) (requiring county boards the collection of certain information in a voter application form). Compl. ¶3. It is undisputed that NCSBE's previous voter registration form made optional the fields

on the form where applicants are required under federal law to provide a driver's license number or the last 4 digits of their social security number, *see* 52 U.S.C. §21083(a)(5)(A), and that this omission resulted in the registration of approximately 225,000 applicants who did not supply information required by HAVA. *Id.* ¶¶42-43.

Count One—now dismissed—sought a writ of mandamus to address an alleged violation of N.C.G.S. §163-82.11(c) for failing to collect the required voter information in the first instance and, as a result, failing to maintain North Carolina's voter rolls in compliance with HAVA. *Id.* ¶¶77-88. Count Two—the subject of this appeal—seeks a permanent injunction to stop the NCSBE from further violating Plaintiffs' constitutional rights under Article I, Sec. 19 of the North Carolina Constitution by failing to collect all required identification information under state law. *Id.* ¶¶90-92. Recognizing the urgency of the issue, Plaintiffs requested "a court-approved plan to be completed no later than September 6" that would identify and remove ineligible registrants or, in the alternative, require voters who did not provide HAVA identification in their application to cast a provisional ballot *Id.* at Prayer for Relief ¶2.

After Defendants accepted service on August 27, Plaintiffs sought expedited discovery given the exigencies of the matter on August 29, 2024. Shortly thereafter, August 30, 2024, the Democratic National Committee ("DNC" or "Intervenor-Defendant") moved to intervene as defendants. Doc. 6 at 49.

In the eleventh hour, on September 23, 2024, Defendants removed to federal district court. Plaintiffs filed an emergency motion to remand to the superior court on October 1. Doc 6 p. 3. On October 17, the district court held a hearing on the motions and issued an opinion later that day. Doc. 6 p. 3.

The district court concluded that it had original federal jurisdiction over Count One under 28 U.S.C. §1331 as it raised a disputed and substantial issue of federal law, and supplemental jurisdiction over Count Two. Doc. 6 at 81. Accordingly, the court found removal was proper under 28 U.S.C. §1441(a). *Id*. The district court analyzed and rejected Defendants' alternative theory for removal under 28 U.S.C. §1443(2), because "[n]either Section 20507(c)(2)(A) nor Section 1010(a)(2)(B) provide 'for specific civil rights stated in terms of racial equality.'" Doc. 6 at 83 (quoting *State of Georgia v. Rachel*, 384

U.S. 780, 792 (1966)). Refuting the application of §1443(2) to these claims, the court specifically noted that "the party seeking removal must cite a civil rights statute that deals in terms [of] racial equality and make some showing that their refusal to act actually involves considerations of racial equality or discrimination." Doc. 6 at 85-86 (citing *Davis v. Glanton*, 107 F.3d 1044, 1049 (3d Cir. 1997)). Because "Defendants' refusal to act does not have anything to do with racial equality," the court concluded that it only had subject matter jurisdiction pursuant to §§1331 and 1441(a). Doc. 6 at 86-87.

After determining it had original jurisdiction of Count One, the district court dismissed it with prejudice, concluding that Plaintiffs lacked a private right of action under federal or state law.[1] Doc. 6 at 87-

---

[1] Plaintiffs maintain that this ruling was incorrect for several reasons including, the district court's misclassification of the mandamus relief Plaintiffs sought in Count 1. The North Carolina Supreme Court has made clear that North Carolina law treats private mandamus actions differently than federal courts in *Committee to Elect Dan Forest v. Employees Political Action Committee*, 376 N.C. 558, 569, 853 S.E.2d 698, (2021) (discussing North Carolina's incorporation of "the prerogative writ of mandamus" through the common law); N.C. Gen. Stat. §4-1 ("Common law declared to be in force"). Contrary to footnote 8 on page 42, *State v. Diaz-Thomas*, 382 N.C. 640, 652, 888 S.E.2d 368, 378 (2022) did not alter the right to common law civil mandamus standard in North Carolina trial courts. Instead, *State v. Diaz-Thomas*

4

91. As to Count Two, the court declined to exercise supplemental jurisdiction over the "novel" issue of state constitutional law: "[W]hether the State's noncompliance with state and federal election law can give rise to state constitutional injury." Doc. 6 at 43-44. Citing "compelling [federalism] reasons" the court further noted that declining supplemental jurisdiction was appropriate because "state courts should decide the scope and extent of state constitutional rights." Doc. 6 at 43 (quotation marks omitted) (citing 28 U.S.C. §1367(c)(4); *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940)). The court then remanded the case to state court in order to "best promote the values of economy, convenience, fairness and comity." Doc. 6 at 44 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988)); *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001)). At the NCSBE's request, the

---

is a criminal case involving an appellate court's issuing of a writ of mandamus under Rule 22 of the North Carolina Rules of Appellate Procedure. Here, Plaintiffs sought a civil common law writ of mandamus in the trial court. This further speaks to the unique nature of the state law claims at issue here. *See infra* pp. 8-9.

court stayed remand until October 22 to allow for this appeal. *See* Oct. 17, 2024 Hrg. Tr. ("Ex. 1") at 17:7-12[2].

## ARGUMENT

The district court's remand order should take immediate effect, and Defendants' and Intervenor-Defendant's Motions should be denied, for two reasons. First, both Motions are procedurally defective and not properly before this Court. And second, even if these motions were properly in front of the Court, a stay pending appeal is inappropriate under relevant precedent.

### I. Defendants' and Intervenor-Defendant's Motions are Procedurally Defective and Not Properly Before the Court.

As a threshold matter, Defendants' and Intervenor-Defendant's Motions fail to comply with the Rules of Appellate Procedure. Rule 8 of the Federal Appellate Rules governs motions for a stay pending appeal, providing that such motions "must ordinarily" be made "first in the district court." Fed. R. App. P. 8(a)(1). While the Rule does contemplate the possibility of the motion being made to this Court, it is clear that

---

[2] A true and accurate copy of the transcript from the October 17,2024 hearing is attached hereto as **Exhibit 1**.

the motion must meet certain criteria; in particular, if a motion to stay pending appeal is made first to this Court, then the motion must:

> "(i) show that moving first in the district court would be impracticable; or
>
> (ii) state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action."

*Id.* at 8(a)(2)(A)(i)(ii).

Neither Defendants nor Intervenor-Defendant meet this requirement. Instead, Defendants and Intervenor-Defendants improperly ask this Court to essentially amend the district court's judgment, and grant an emergency stay where none was requested below. Neither party cites to controlling precedent for such an action. Moreover, under Federal Rule of Civil Procedure 52(b), a stay motion should have been made with the district court. No party made such a motion. Now, Defendants and Intervenor-Defendant ask this Court to cure these glaring omissions.

### a. Defendants Cannot Satisfy Rule 8's Requirements.

The district court's order stayed enforcement of the remand until Tuesday, October 22, 2024. Doc. 6 at 44. This relief was specifically requested by Defendants so they could pursue an appeal if the district

court remanded the case. *See* Ex. 1 at 17:7-12 ("I would ask you to enter some sort of reasonable stay of that order to allow the State Board time to appeal, as the State Board has the right to do . . ."); *see also* Doc. 6 at 92 ("At yesterday's hearing, the State Board Defendants asked the district court to ***briefly stay*** its remand order, so they could appeal any adverse decision regarding remand.") (emphasis added). The district court heard Defendants' requests and obliged. Yet Defendants now claim, without support, that they understood the district court's order to direct them to seek further relief from this Court. Doc. 6 at 50, n. 1. Apart from the fact that such an understanding should have first been vetted with the district court through a proper motion to stay, this makes no sense.

Nor can Defendants show that moving for a stay in the district court would be impracticable. *See* Fed. R. App. P. 8(a)(2)(A)(i). In fact, the record clearly reflects that Defendants sought a stay and the district court granted one in the exact form which it was requested. *Compare* Ex. 1 at 17:7-12 *with* Doc. 6 at 92. Similarly, Defendants cannot meet Rule 8's other requirement that the district court denied a stay or

otherwise failed to afford the relief requested. Fed. R. App. P. 8(a)(2)(A)(ii).

In short, the district court's order did exactly what Defendants asked. Defendants sought, and received, a short stay. That Defendants were not more specific in their request is an improper basis for levying a substantial burden on Plaintiffs. Had Defendants wanted a longer stay, they should have moved to modify the district court's judgment under Fed. R. Civ. P. 52(b). Defendants failure to do so renders their motion out of compliance with Federal Appellate Rule 8.

### b. Intervenor-Defendant Cannot Satisfy Rule 8's Requirements Either.

Unlike Defendants, Intervenor-Defendant did not ask the district court for a stay of proceedings. Nevertheless, Intervenor-Defendant now claims that asking the district court for a "further stay" would be "impractical." Doc. 4 at p. 1. In support, Intervenor-Defendant can only point to the weekend between October 18, 2024 and the expiration of the district court's stay on October 22, 2024. Intervenor-Defendant's motion ignores two key points, both of which render their motion equally as defective as Defendants'.

First, Intervenor-Defendant offers no explanation as to why they did not file a motion with the district court. Instead of immediately moving for a modification of the order, Intervenor-Defendant waited until the end of the day on October 18, 2024—a Friday—to file the present motion. Intervenor-Defendant's arguments on impracticability fall flat. Based on the district court's order, such a request was clearly not impracticable, especially considering it granted Defendants' request for a stay. Doc. 6 at 92.

Second, Intervenor-Defendant cannot meet Rule 8's explicit requirements for when a motion to stay is properly before this Court. As explained previously, the NCSBE sought and received a stay. Thus, the record clearly reflects that Intervenor-Defendant made a conscious choice to neither seek its own stay nor ask the district court to modify the length of its stay. As a result, Intervenor-Defendant's motion is similarly defective and cannot satisfy Rule 8.

## II.   **Even if These Motions Were Properly Before This Court, a Stay is Inappropriate.**

A stay pending appeal is only appropriate where (1) the stay applicant has "made a **strong showing**" of likelihood of success on the merits; (2) the stay applicant will be irreparably injured without the

requested stay; (3) issuance of the stay will not substantially injure the nonmovants; and (4) the public interest favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (emphasis added). Even if Defendants' and Intervenor-Defendant's Motions are properly before the Court, a stay is not appropriate here for at least two reasons. First, Defendants cannot make a strong showing that they are likely to succeed on the merits of their appeal because the district court appropriately declined to exercise supplemental jurisdiction over the novel issue of state law presented by Count Two. Second, Plaintiffs would be irreparably harmed by a further stay because a stay would preclude effective relief prior to the election, and the public interest does not favor a stay to determine a discretionary jurisdictional issue rather than the prompt resolution of Plaintiffs' case on the merits. As such, Defendants' and Intervenor-Defendant's Motions should be denied.

### a. Defendants and Intervenor-Defendant have not made a strong showing of likelihood of success of their appeal.

#### i. Plaintiffs' state constitutional claim is a novel issue that state courts should resolve.

Plaintiffs' state constitutional claim does not arise under federal law pursuant to 28 U.S.C. §1331 because (1) it cannot be decided without disrupting the federal-state balance approved by Congress and (2) it does not raise a substantial, actually disputed issue of federal law. *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)), *cert. denied*, 143 S. Ct. 87 (2022)).

The district court correctly determined that Count Two raises a novel issue of state constitutional law. N.C.G.S. §163-82.4(a) requires that certain information be collected in voter registration applications, which in turn informs list maintenance procedures under §163-82.11(c). Failure of a state agency to comply with mandatory state and federal reporting requirements can independently violate Article I, Section 19 of the North Carolina Constitution by diluting the votes of eligible voters with ineligible voters.

Furthermore, as the district court reiterated, allowing states to interpret their own constitutions is a foundational principle of federalism. Doc. 6 at 17 (citing *Martin v. Hunter's Lessee*, 14 U.S. 304, 325 (1816)). Federal courts are not meant to be the arbiters of state constitutional questions, and wading into an issue of state-specific voter registration regulations presented by Plaintiffs here would elide the proper relationship between the state and federal courts. *See Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions."). Tellingly, Defendants' and Intervenor-Defendant's briefs fail to meaningfully engage with the balance of federalism that was key to the district court's decision.

Further, Defendants cannot make a strong showing that Count Two necessarily presented a substantial, actually disputed question of federal law. Defendants overstate a footnote in the district court's opinion about the fact that they argued Count Two raises the same issues as the dismissed Count One but ignore the fact that the district court previously indicated "Defendants have not convincingly argued" Count Two raised a federal question and merely "assume[d] without

deciding that this claim necessarily raises a disputed and substantial issue of federal law." *Compare* Op. 16-17 *with* NCSBE Br. at 8 (quoting Op. 17 n.2); DNC Br. at 5 (same). Regardless, there is no necessarily presented, substantial, or disputed federal question in Count Two:

- Plaintiffs' state constitutional claim does not necessarily raise a federal question. "[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when **every** legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law[.]" *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 818 (4th Cir. 2004). The issue of whether 225,000 persons should have been registered to vote in the first place is a separate, but related, issue to HAVA. *See* N.C.G.S. §§163-82.11(c), 163-82.4(a).

- For much the same reason as there is no necessarily presented federal question, there is no substantial federal question involved in Plaintiffs' state constitutional claim. HAVA defers to state law when determining the sufficiency of the information received from a registrant. *See* 52 U.S.C. §21083(a)(5)(A)(iii). As state law defines the contents of the voter registration form, *see* N.C.G.S. §82.4(11), what is and is not sufficient information received from a qualified person seeking to register to vote is a matter of state law.

- Even if HAVA is implicated in Plaintiffs' state constitutional claim, Defendants' noncompliance with HAVA is undisputed. Defendants conceded that they allowed applicants to register to vote without providing a social security number or driver's license number, and thereby violated HAVA. (Doc. 6 at 19-20).

Accordingly, Plaintiffs, not Defendants or Intervenor-Defendant, are likely to succeed on the merits in this appeal, and there should be no stay in the interim.

## ii. Removal under 28 U.S.C. §1443(2) is improper.

Defendants likewise cannot show that the district court erred in finding their removal under 28 U.S.C. §1443(2) was inappropriate. Section 1443(2) permits removal in cases involving "any act under color of authority derived from any law providing for equal rights," or the refusal "to do any act on the ground that it would be inconsistent with such law." §1443(2). The district court correctly identified "[t]he problem with [Defendants'] theory"—namely, that the Supreme Court "has limited the meaning of a 'law providing for equal rights' in § 1443 to only those concerning racial equality." Doc. 6 at 34 (quoting *Vlaming*, 10 F.4th at 309). In *State of Georgia v. Rachel*, 384 U.S. 780 (1966), the United States Supreme Court precluded the possibility of removal jurisdiction under §1443 for causes of action under laws that "are phrased in terms of general application available to all persons or citizens," as opposed to "specific language of racial equality." Doc. 6 at 14 (quoting *Rachel*, 385 U.S. at 792).

Despite Defendant's contentions to the contrary, the statutes in question are "phrased in terms of general application available to all persons or citizens" and do not contain "the *specific language of racial*

*equality* that §1443 demands." *Vlaming*, 10 F.4th at 309 (emphasis added). Therefore, Defendants' argument on the merits necessarily fails and they are not entitled a temporary stay because they are not "likely to succeed on appeal in reversing [the] order." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Defendants agree that removal under §1443(2) requires a law concerning racial equity. Br. at 10 (quoting *Vlaming*, at 309). But the federal laws at issue here, NVRA and HAVA, do not explicitly deal with racial equality as required by *Vlaming*. Defendants erroneously claim that the NVRA is "indisputably [the] kind of law" that provides for equal rights. Br at 10. In support, they point to the congressional findings in statute which indicate that the NVRA was enacted to "eliminate 'discriminatory and unfair registration laws and procedures' that 'have a direct and damaging effect on voter participation . . . and disproportionately harm voter participation by *various groups, including racial minorities*." *Id.* (quoting 52 U.S.C. §20501(a)(3)). Defendants point to no "specific language" regarding racial equity that §1443 demands. Moreover, This language is far less convincing than defendants would like it to be. The general concern highlighted by the

congressional finding was a desire to remedy laws that have a damaging effect on "voter participation" by "various groups." While racial minorities were one of the groups that could be negatively affected by discriminatory and unfair registration laws, the findings cited by the defendants in 52 U.S.C § 20501 display concern for harms to many groups rather than specific focus on racial equality.

Defendants also fail to adequately explain why removal was denied by the Supreme Court in *Rachel* if all that is required is that a law be the "kind of law" that provides for equal rights. Indeed, in *Rachel*, the Supreme Court held that "broad contentions under . . . the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under §1443." 384 U.S. at 792. One would be hard pressed to identify a law that was more the "kind of law" that provides for equal rights than the Fourteenth Amendment, but removal was still improper under §1443 because "the guarantees of those clauses are phrased in terms of general application . . . rather than the specific language of racial equality that §1443 demands." *Id.*

Furthermore, even if the NVRA were a law that would support removal under §1443, the circumstances under which defendants seek

to remove in this case do not apply. Defendants seek removal specifically because they are refusing to employ the remedy requested by plaintiffs on the grounds that such an action would violate the NVRA. Under the second clause of 18 U.S.C. §1443(2), a defendant may remove to federal court for "refusing to do any act on the ground that it would be inconsistent with [a law providing for equal rights]." In *City of Greenwood v. Peacock*, 384 U.S. 808 (1966), the Supreme Court observed that the refusal to act phrase was added by congress "[t]o enable State officers, who shall refuse to enforce State laws discriminating . . . on account of race or color, to remove their cases to the United States courts." *Id.* at 824 n.22.

Here, defendants cite no law discriminating on account of race or color which they are refusing to enforce. Instead, defendants claim that the NVRA prevents them from taking an action, namely systematically removing registered voters fewer than 90 days from the general election. This subtle but important distinction completely undermines any basis for defendants' argument for removal under the "refuses to take action" clause of §1443(2). In order for removal to be warranted under §1443(2), defendants must argue that they are refusing to enforce

a law that discriminates on account of race or color. Instead, they argue that they are justified in refusing to act under a law that allegedly provides for equal rights. This is the equivalent of defendants raising a federal defense to having to take an action rather than a claim that they are refusing to enforce a law that discriminates on the account of race or color. A federal defense is not sufficient to support removal. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983). ("[A] case may not be removed to federal court on the basis of a federal defense."). Because defendants have failed to identify any discriminatory law that they are refusing to enforce, they have no grounds for removal under §1443(2). Once again, defendants' argument fails on the merits and, therefore, they fail to establish that they are entitled to a temporary stay.

### iii. The Court correctly declined to exercise supplemental jurisdiction over Count Two after dismissing Count One.

For much the same reason as Count Two does not arise under federal law, the district court correctly declined to exercise supplemental jurisdiction after dismissing Count One. A district court "may decline to exercise supplemental jurisdiction" where "the claim

raises a complex or novel <u>issue</u> of state law," "the claim substantially predominates over the claim . . . over which the district court has original jurisdiction," or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(1)-(3). Declination of supplemental jurisdiction is appropriate under each of these provisions.

The district court appropriately declined to exercise supplemental jurisdiction under §1367(c)(1) because, as discussed extensively *supra*, this matter involves a novel issue of state law. Likewise, declining supplemental jurisdiction under. §1367(c)(2) and (c)(3) is merited because the district court dismissed Count One. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by* 28 U.S.C. §1447(c). Because the state constitutional claim is the only remaining claim, it *de facto* "substantially predominates" over Count One. Moreover, "the district

court has dismissed [Count One] over which it has original jurisdiction."

§1447(c)(2). The district court did not have original jurisdiction over

Count Two and declining supplemental jurisdiction under (c)(3) was

proper.

The district court's decision to decline supplemental jurisdiction

was not reversible error. "Once a district court has dismissed the

federal claims in an action, it maintains 'wide discretion' to dismiss the

supplemental state law claims over which it properly has supplemental

jurisdiction." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541,

553 (4th Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S.

343, 353–54 (1988)). Moreover, federal courts "are obliged to inquire *sua*

*sponte* whenever a doubt arises as to the existence of federal

jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.

274, 278 (1977). In fact issues of supplemental jurisdiction may even be

raised for the first time on appeal. *Doe by Fein v. District of Columbia*,

93 F.3d 861, 871 (D.C. Cir. 1996).

None of the cases cited in the DNC Brief support the notion that

the district court improperly declined to exercise supplemental

jurisdiction over Count Two. For example, in *Williams v. 5300*

*Columbia Pike Corp.*, 891 F.Supp. 1169, 1182 (E.D. Va. 1995), the district court did not dismiss the federal claims in the lawsuit and retained supplemental jurisdiction because a remanded case would involve a Virginia court applying Delaware law, meaning there would be no state court applying its own state's law, and thus no benefit to remand. Here, the sole potentially federal claim was dismissed. Remand here involves North Carolina courts interpreting the North Carolina Constitution. Similarly, in *Sherin v. John Crane-Houdaille, Inc.*, the district court declined to remand state law claims after the parties could have sought remand two years prior and the court already decided summary judgment motions. No.WDQ-11-3698, 2015 WL 1401853, at *2 (D. Md. Mar. 24, 2015).

Instead, this case is more akin to *Arrington v. City of Raleigh*, 369 F. App'x 420 (4th Cir. 2010). In *Arrington*, the Fourth Circuit held that the district court should have sua sponte declined supplemental jurisdiction. Despite the plaintiff not requesting remand, the court held that "both the plain text of § 1367(c) as well as our precedents make clear that in this instance, that discretion should have been exercised to decline jurisdiction." *Id.* at 422-23. "Indeed, our precedents evince a

strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction under circumstances such as those reflected here." *Id.* at 423. In short, "[w]ith all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so." *Waybright v. Frederick County, MD*, 528 F.3d 199, 209 (4th Cir. 2008), *cert. denied*, 555 U.S. 1069 (2008). *See also Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 112 (N.D.N.Y. 2016) (citing S.D.N.Y. and E.D.N.Y. cases supporting same); *see also Doe 1 v. Varsity Brands, LLC*, No. 5:22-CV-00430-M, 2024 WL 1200303, at *6 (E.D.N.C. Mar. 20, 2024) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278) ("On its own motion, a district court may raise issues regarding subject matter jurisdiction.").

Defendants have not made a strong showing that the district court's decision to remand Count Two was improper, and their stay should be denied.

## b. The Remaining Factors Weigh Against Entry of Stay

Defendants have failed to demonstrate a "strong showing" of likelihood of success on the merits, making a stay unwarranted regardless of the Court's evaluation of the other factors. Nevertheless, the remaining factors also weigh against a stay.

As to the second factor, the irreparable harm lies not with Defendants or Intervenor-Defendant, but with Plaintiffs if a stay is granted. It is the Plaintiffs who, by their lawsuit, seek to ensure that the state's elections are conducted fairly and in compliance with the State's constitution, without ineligible voters on its rolls. As the State Board acknowledges, early voting has already commenced, and time is of the essence. Allowing a stay would preclude Plaintiffs from effective relief prior to the election in which potentially ineligible individuals are voting. This alone weighs strongly against granting the requested stay. *See, e.g., Common Cause v. Rucho,* 284 F. Supp. 3d 780, 786 (M.D.N.C. 2018) (finding risk of impending election being conducted in unconstitutional manner to be a "substantial risk weigh[ing] strongly against granting the requested stay").

More simply—without prompt resolution of Plaintiffs' claim on the merits, any harm resulting from improper votes being cast would be

irreversible. If the case is delayed and the election proceeds with ineligible voters participating, the election results cannot be undone. The potential disenfranchisement of valid voters due to vote dilution caused by ineligible voters far outweighs any speculative procedural harm to Defendants.

### i. Public Interest Strongly Favors Denying a Stay

Public interest "weighs heavily" in favor of Plaintiffs because the integrity of the election is at risk. *See Democracy N. Carolina v. N. Carolina State Bd. of Elections*, 476 F. Supp. 3d 158, 237 (M.D.N.C. 2020). The public interest is best served by allowing the state court to resolve these urgent election-related state constitutional issues without delay. Indeed, it "is the state judiciary that has the responsibility to protect the state constitutional rights of the citizens; this obligation to protect the fundamental rights of individuals is as old as the State." *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992). Further, the District Court acknowledged that allowing states to interpret their own constitutions is a foundational principle of federalism. Op. 17 (citing *Martin v. Hunter 's Lessee*, 14 U.S. 304, 325 (1816)). In light of these principles, it is

imperative that no stay be entered so the state court may take prompt action to uphold the constitutional rights of its citizens and the voting process.

Defendants argue that a stay serves the public interest by conserving judicial resources and avoiding duplicative litigation. (Defendants Br. p. 18). But while " 'stability and consistency are also virtues' when it comes to elections, the infringement of the fundamental right to vote poses a far greater risk." *See Democracy N. Carolina*, 476 F. Supp. 3d at 237. Defendants' pursuit of a stay while they appeal a perceived procedural issue risks delaying any decision on the merits of Plaintiff's claim until *after* the election, rendering any remedy meaningless. The public has no interest in such an outcome.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' and Intervenor-Defendant's motions for stay pending appeal.

Respectfully submitted, this, the 21st day of October, 2024.

**NELSON MULLINS RILEY &
SCARBOROUGH LLP**

By: /s/  Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com


**BAKER DONELSON BEARMAN, CALDWELL & BERKOWITZ, PC**

By: /s/  John E. Branch, III
John E. Branch, III
North Carolina State Bar no. 32598
Thomas G. Hooper
North Carolina State Bar no. 25571
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(A)(7)(B) because it contains 5,158 words, excluding the parts of the brief exempted by FRAP 32(f).

2.    This brief complies with the typeface and style-requirements of FRAP 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century Schoolbook size 12 font.

Respectfully submitted, this, the 21st day of October, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the appellate  CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/  Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

---------------------------------------------------------

REPUBLICAN NATIONAL COMMITTEE
and NORTH CAROLINA REPUBLICAN
PARTY,

             Plaintiffs,

    -vs-                  Case No. 5:24-CV-547-M-RJ


NORTH CAROLINA STATE BOARD OF
ELECTIONS, et al.,

             Defendants,

      and

DEMOCRATIC NATIONAL
COMMITTEE,

     Intervenor-Defendant.

---------------------------------------------------------

MOTION HEARING
OCTOBER 17, 2024
THE HONORABLE CHIEF JUDGE RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE




Risa Kramer, RMR, CRR
Official Court Reporter
United States District Court
Wilmington, North Carolina

```
 1                    A P P E A R A N C E S

 2

 3    On Behalf of the Plaintiffs

 4
      PHILLIP J. STRACH and JORDAN ALEXANDER KOONTS
 5    Nelson Mullins Riley and Scarborough LLP
      301 Hillsborough Street, Suite 1400
 6    Raleigh, North Carolina 27603

 7
      THOMAS G. HOOPER
 8    Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
      101 South Tryon Street, Suite 3600
 9    Charlotte, North Carolina 28280

10
      On Behalf of the Defendant
11

12    SARAH G. BOYCE and SOUTH A. MOORE
      North Carolina Department of Justice
13    114 West Edenton Street
      Raleigh, North Carolina 27603
14

15
      On Behalf of Intervenor-Defendant
16

17    SETH P. WAXMAN
      Wilmer Cutler Pickering Hale and Dorr LLP
18    2100 Pennsylvania Avenue N.W.
      Washington, D.C. 20037
19

20    JIM W. PHILLIPS JR.
      Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
21    230 North Elm Street
      2000 Renaissance Plaza
22    Greensboro, North Carolina 27401

23
      SHANA L. FULTON
24    Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
      150 Fayetteville Street, Suite 1700
25    Raleigh, North Carolina 27601
```

```
 1                    TRANSCRIPT OF PROCEEDINGS
 2              (Proceedings commenced at 10:02 a.m.)
 3              THE COURT:  All right.  If the clerk would
 4   please call the case.
 5              THE CLERK:  Republican National Committee
 6   et al. versus North Carolina State Board of Elections.
 7              THE COURT:  Counsel, please state your
 8   appearance for the record.
 9              MR. STRACH:  Good morning, Your Honor.
10   Phil Strach, Nelson Mullins, here for the plaintiffs,
11   along with my colleague, Jordan Koonts.
12              MR. HOOPER:  Good morning, Your Honor.  Tom
13   Hooper here on behalf of plaintiffs as well from the law
14   firm of Baker Donelson.
15              MS. BOYCE:  Good morning, Your Honor.  My
16   name is Sarah Boyce.  I'm here on behalf of the State
17   Board of Elections and the other State defendants.
18              MR. MOORE:  Good morning, Your Honor.
19   South Moore also on behalf of the State Board of
20   Elections and other defendants.
21              MR. WAXMAN:  Good morning, Your Honor.  I'm
22   Seth Waxman.  I'm here on behalf of the intervenor
23   defendants.
24              THE COURT:  All right.
25              MR. PHILLIPS:  Your Honor, Jim Phillips with
```

```
 1    the Brooks Pierce law firm in Greensboro here on behalf
 2    of the intervenor defendants.
 3               MS. FULTON:  Shana Fulton, also Brooks
 4    Pierce, Raleigh office, on behalf of the intervenor
 5    defendants.
 6               THE COURT:  Okay.  I'm checking my map here
 7    to make sure who everyone is.  Thank you.
 8               All right.  We're here today on two motions,
 9    the plaintiffs' emergency motion to remand this matter
10    to state court at docket entry 37 and the defendants'
11    motion to dismiss at docket entry 30.
12               So we'll start with the motion to remand
13    because we need to make sure that I have jurisdiction.
14    So we'll start with that.  And the Court's
15    understanding, there -- two bases for removal in the
16    notice for removal:  Title 28, United States Code,
17    1441(a) and Title 28, United States Code, 1443(2).
18               The defendants bear the burden as the party
19    invoking the Court's subject-matter jurisdiction.  So
20    let's start with 1441(a).  I'll tell you tentatively
21    where I am so everybody knows what we're trying to talk
22    about.
23               So we're trying to figure out if I've got
24    original subject-matter jurisdiction over the
25    constitutional claim.  So the parties agree that this is
```

1    the <u>Merrell Dow</u>, <u>Grable</u>, and <u>Gunn</u> framework that we're

2    working with here.  So we're trying to figure out --

3    it's a state law statute.  The state law statute

4    provides that we will follow federal law.  So the

5    federal claim is necessarily implicated because we're

6    gonna have to understand the federal statute to enforce

7    the state statute.  So we have to figure out what the

8    relationship is between two of those.  So a question of

9    federal law is necessarily implicated there.

10              The State Board of Elections shall update

11   the statewide computerized voter registration list and

12   database to meet the requirements of Section 303 of the

13   Help America Vote Act of 2002 and reflect those changes

14   when citizenship rights are restored under General

15   Statute 13-1.

16              So we have the questions of:  Is it

17   necessarily raised?  Is it disputed?  Is it substantial?

18   And does it affect the federal-state balance?

19              The parties agree it's necessarily raised.

20   You have to interpret federal law to apply the state

21   statute.  The plaintiffs say there's no dispute here

22   because the federal law is not disputed because there's

23   an admission on the part of the Board that the voter

24   registration form did not comport with HAVA.  I think

25   the substance underneath it is there's some percentage

1    of voters who are eligible and registered but did so on

2    a form that doesn't meet the -- meet HAVA because the

3    driver's license or the Social Security number digits

4    were not necessarily required by the way the

5    computerized registration form worked.  That is, you

6    could register under the State's computer system without

7    complying with HAVA.  And so some percentage of voters

8    will have supplied it voluntarily, just gone ahead and

9    filled it out on the form.  Some percentage will have

10    left it out altogether.

11          Some percentage of those who left it out

12    altogether are eligible voters.  And the concern is that

13    some percentage of the folks who filled it out were not

14    eligible voters and they didn't provide that.  So we

15    have some percentage unknown of ineligible voters who

16    are registrants under the system.  The question then

17    becomes, "Well, what's our remedy?  Do we remove those

18    voters from the system or not?  And would doing so, at

19    this point, violate the NVRA?"

20          And so there's a question as to whether or

21    not there's a defense, ultimately, under the NVRA that

22    would affect what we can do at this point in the game.

23          Have I fairly stated where we are

24    substantively?

25          MS. BOYCE:  I think more or less, Your

1   Honor, yes.

2           THE COURT:  Okay.  So there are at least

3   five statutory provisions interacting here that we're

4   trying to sort out.  And so that's where we are today.

5           And then the state constitutional claim is a

6   state constitutional claim that -- I will tell you that

7   I am particularly cautious of exercising supplemental

8   jurisdiction over a state law claim in the first

9   instance because I'm concerned about the federal-state

10  balance, appropriately -- appropriately so, I think.

11          I am -- so my tentative conclusion is that

12  there's no federal question as to count 2, the state

13  constitutional law claim.  But I think there is a

14  federal question as to count 1 under the <u>Merrell Dow</u>

15  provisions, the way they all operate together.  That

16  means I can get to original jurisdiction over count 1 as

17  a matter of jurisdiction.  Then there's a separate

18  question of whether or not there's a private cause of

19  action as to count 1 that's intended to operate under

20  the statute that I'm supposed to use.  And if that falls

21  away on that basis, then I've got a supplemental

22  jurisdiction claim over count 2 that -- I'm concerned

23  about exercising supplemental jurisdiction if I find no

24  private cause of action.  And I would find no private

25  cause of action in federal court and send -- say count 1

1    isn't here, send count 2 back to state court to be

2    exercised, is where I'm leaning, having read everything,

3    having thought about everything, and trying to think

4    about how it all fits together.

5         The merits of the private right of action

6    part actually matter because it helps figure out if

7    there's a federal question that's intended to be there.

8    So "Does HAVA provide a private right of action?  Does a

9    state statute provide a private right of action?" I

10   think we have to think through also.  But I think those

11   are implicated but are in the -- in the jurisdictional

12   question, but they're not dispositive.  The jurisdiction

13   question requires me to engage with that question.

14        I think I have jurisdiction over count 1.

15   Then to the extent I would have it over the second, it

16   would be as a result of supplemental jurisdiction.

17        But I'm concerned about the private cause of

18   action as to whether or not plaintiffs have a right to

19   be here on count 1.  If they don't have a right to be

20   here on count 1, then I shouldn't keep count 2.  That's

21   where I am.

22        So everybody now understands what the judge

23   thinks, and so you know what you're talking to me about.

24        So the defendants are invoking removal of

25   jurisdiction.  I'll have you talk to me about -- so I

```
1   think you're with me on my -- on part of my reasoning
2   and probably concerned about the second part of my
3   reasoning; and, I think, vice versa.  So we'll start
4   with -- we'll start with the plaintiffs, and then we'll
5   -- on jurisdiction.  Then we'll flip it and start with
6   the -- we'll start with the defendants on jurisdiction.
7   Then we'll flip it and start with plaintiffs on private
8   right of action.  So I'll start with y'all.
9           MR. MOORE:  Thank you, Your Honor.
10          I will skip, then, right to count 2.  I
11  think for two reasons, you could have jurisdiction over
12  count 2 without needing to exercise supplemental
13  jurisdiction.
14          The first is -- I believe that count 2 also
15  necessarily raises the same federal question as count 1.
16  The way I understand plaintiffs' constitutional claim is
17  that they only have a claim under the North Carolina
18  Constitution if these voters must be removed under HAVA.
19  And so to determine, obviously, whether HAVA requires
20  the removal of those voters, you must construe HAVA so
21  it is necessarily raised.  It is still actually
22  disputed.  The State Board and plaintiffs disagree over
23  whether HAVA requires the State Board to remove the
24  voters who registered using this prior form but did not
25  provide a driver's license or Social Security number.
```

1  And for the same reasons that that question is
2  substantial as it relates to count 1, it is substantial
3  as it relates to count 2, that being this is a federal
4  election, that -- that HAVA -- Congress enacted HAVA to
5  impose uniformity among the minimum standards for
6  election administration, and also that the Attorney
7  General -- the United States enforces HAVA, so there's a
8  federal interest in having federal courts construe the
9  statute.
10             I hear your concerns about the federal-state
11  balance as it relates to a state constitutional claim.
12  But I don't think here that should compel remand, or at
13  least compel the determination that there is no federal
14  question jurisdiction over the state constitutional
15  claim.  For one thing, you know, I think plaintiffs have
16  spoken a lot about Pullman abstention.  But Pullman
17  abstention only applies when there is a federal
18  constitutional claim.  There isn't a federal
19  constitutional claim here.  So if you have federal
20  question jurisdiction, as I assert you do, you don't
21  have a basis to abstain from exercising that
22  jurisdiction.
23             I'm happy to answer other questions about
24  1441 as it relates to the count 2.  But if not, I'm
25  happy to move on to why I think 1443 also provides you

1  jurisdiction over count 2.

2      THE COURT:  So you're applying the same

3  Merrell Dow factors and just saying the state

4  constitutional question is so inextricably intertwined

5  with federal law that those -- that it becomes a federal

6  question under Merrell Dow and its progeny.

7      MR. MOORE:  Yes, Your Honor.  The way I read

8  their complaint, they do not have an Article 1, Section

9  19 claim unless HAVA requires the State Board to remove

10 these voters.  And determining that turns on, obviously,

11 a construction of HAVA, not North Carolina law.

12     THE COURT:  Okay.  All right.  Thank you.

13     MR. MOORE:  Okay.

14     And then, you know, I also think 1443(2)

15 provides a distinct and independent basis for this Court

16 to exercise jurisdiction over plaintiffs' state

17 constitutional claim.  Plaintiffs seek, as their remedy

18 for the state constitutional claim, an injunction

19 ordering the State Board to remove these voters.  The

20 State Board is refusing to do that because doing so

21 would violate the National Voter Registration Act, and

22 that is a federal civil rights law.

23     THE COURT:  All right.  This is where I have

24 some concerns.  After Vlaming, the Fourth Circuit case

25 that interprets Rachel, that -- where we say it has to

1    explicitly be stated in terms of race.  So civil rights

2    law in this context is actually a much narrower

3    interpretation of civil rights law than the plain

4    language would state.  Now, you're talking to somebody

5    who likes to start with the plain text, but that's not

6    permitted.  I'm precluded under Vlaming from doing just

7    a straight initial texture analysis because Vlaming said

8    we take Rachel, we then follow Vlaming -- Vlaming has

9    adopted Rachel in terms of the second clause as well.

10   1443(2) applies it there as well.  And so because it's

11   not explicitly stated in terms of race, it's not a civil

12   rights law within the context of 1443(2)'s determination

13   of what constitutes a civil rights law.

14          So you're gonna have to work me -- you're

15   gonna have to talk me through that to tell me why this

16   is a racially explicit law that covers it where -- so

17   there's a heading somewhere that says "For all the

18   following reasons, it's important."  But we actually

19   look at it, it's not racially explicit.  And civil

20   rights is very narrow in this context, not broad, after

21   Vlaming.  So I'm trying to sort through that.

22          MR. MOORE:  Of course, Your Honor.

23          So of course I agree that Vlaming requires

24   that the civil rights law be one intended to address

25   racial discrimination.  And I think, as you just

1  referenced, there is a statute in the plain text of the

2  NVRA that says one of the purposes of the NVRA is to

3  eliminate close-to-election voter purges because those

4  purges tended to be racially discriminatory.

5          So I take your point that that is sort of at

6  the beginning of the statute, and the actual prohibition

7  the NVRA imposes on purging voters does not come until

8  several sections later, 20507.  But the two are directly

9  related.  It is the voter purge provision of the NVRA,

10  the provision that Congress said was necessary to

11  eliminate racially discriminatory voter purges, that we

12  are saying prohibits the State Board from taking the

13  actions that plaintiffs request.

14          I do want to emphasize that it is important

15  that the -- it be the -- the civil rights law be the one

16  intended to address racial discrimination.  I think

17  plaintiffs have suggested that 1443(2) requires that the

18  state law be racially discriminatory.  And I do not

19  think that is the correct reading of the text of 1443.

20          THE COURT:  Now, when I read Rachel, Rachel

21  said to be able to determine it in the first instance --

22  now it's in a different context; it's in 1443(1), not

23  (2).  But Rachel said to be able to tell ex ante if

24  there is a racial concern, it has to be that state law

25  on its face is racially discriminatory.  That is, there

has to be a racially discriminatory component.  It's not
gonna be as applied.  It has to be that the state law
that we're concerned about that the civil rights law is
addressing is racially discriminatory.  That's what
Justice Stewart is sort of talking about, working his
way through in <u>Rachel</u>, right?  So he's working his
way through "How do I know in advance if race is
implicated?"  Well, is the state law racially
discriminatory?  Then a state law that is racially
discriminatory in its face can then -- somebody can then
remove it to say, "You're gonna enforce a law against me
that's discriminatory."

            This is sort of the opposite context because
it's section 2, and so we're sort of thinking slightly
differently about what we're trying to fix.  But what's
the relationship between whether or not the state law is
racially discriminatory?  And the right to remove it --
that is, the whole question is can I get a fair -- "Can
I get fair treatment in the state courts," is what
1443(2) is about, is "Will the state courts either
violate federal law predictably because their statute is
inconsistent with antidiscrimination laws?  Or will they
refuse to give me the remedy that I have a right to when
I come to federal" -- "when I go to state court, so I
have to take it to federal court" -- we're supposed to

interpret our removal statutes narrowly.  I've got
_Vlaming_.  I've got _Rachel_.  I'm trying to figure out how
discriminatory do I have to -- how much am I casting
aspersion on the state court by saying there's a
discriminatory concern for 1443(2) to be the basis when
it's not clear to me that there is a explicit racial
focus of the NVRA as opposed to we want to protect
everybody for all reasons.  It goes -- it has one -- one
basis, but then it has so many others that it ultimately
says, "We protect all voters, not just voters who are
being discriminated against on the basis of race,"
right?  It's hortatory at the beginning.  It's an early
paragraph.  But it has multiple bases.  And so the
question is, is it -- is the one mention enough to make
this explicitly racial under _Vlaming_ or not?

        MR. MOORE:  So there are a few things in
there, Your Honor, so I'll try to take them in pieces.

        First, I don't think the text of 1443(2)
requires you to cast any aspersions on North Carolina
state courts, and we are not casting those aspersions
either by removing this case.

        I agree that _Rachel_ does talk about, in
relation to a different part of 1443, a concern that
state courts might not enforce federal civil rights
laws.  But 1443(2) is actually about ensuring that there

1    is a federal venue for the federal civil rights law

2    Congress passes to address racial discrimination.  And

3    the NVRA is just such a statute.

4               I mean, I want to read you directly the

5    provision right at the beginning.  It says that the NVRA

6    was enacted to eliminate, quote, "discriminatory and

7    unfair registration laws and procedures that have a

8    direct and damaging effect on voter participation in

9    elections for federal office and disproportionately harm

10   voter participation by various groups, including racial

11   minorities."  The NVRA was explicitly thinking about

12   eliminating racial discrimination when it enacted things

13   like this purge -- or ban on the purge of voters fewer

14   than 90 days before an election.  And I think you also

15   said there was just this one provision, but there's also

16   legislative history supporting this view of the NVRA.

17              In the Senate report, there's a discussion

18   about how despite the great progress that the United

19   States has made in eliminating racial discrimination in

20   voting because of laws like the Voting Rights Act, these

21   late-in-time voter purges are still resulting in racial

22   discrimination, and the National Voter Registration Act

23   is necessary to eliminate that racial discrimination.

24              THE COURT:  Okay.

25              MR. MOORE:  I'm happy to answer any other

1    questions the Court has.  If there are no further

2    questions, I would just close with two points.

3              First, again, I think you should exercise

4    both -- or either federal question jurisdiction, our

5    civil rights removal jurisdiction, over both of

6    plaintiffs' claims.

7              I would also ask that if you are inclined to

8    enter a remand order, we, of course, do not believe you

9    should, but I would ask you to enter some sort of

10   reasonable stay of that order to allow the State Board

11   time to appeal, as the State Board has the right to

12   appeal because of 1447(d).

13             THE COURT:  All right.  Thank you, counsel.

14             MR. MOORE:  Thank you, Your Honor.

15             MR. WAXMAN:  Your Honor, I have just a few

16   points to add.

17             Obviously we agree with the State Board on

18   this issue.  We certainly agree with your tentative

19   views about count 1.  And I don't want to waste the

20   Court's time by quibbling with a few of the things that

21   you said or assume that I think are perhaps incorrect.

22             THE COURT:  Quibble away.  I want to get

23   this right, so if you think I'm getting something wrong,

24   tell me.

25             MR. WAXMAN:  Well, number one:  Although I

1   don't think anything in this lawsuit turns on whether

2   the prior form did or didn't violate HAVA, our position

3   is that it certainly did not violate HAVA.  The State

4   Board in its December 6th ruling did not say it.  It

5   said that the use of the prior form may have permitted

6   some violations of HAVA, although I'm not sure why.  And

7   our view is, look, the form, which you have -- we

8   printed in the briefs -- has it -- you know, has a place

9   to put in both the driver's license and the last four

10  digits of the Social Security number.  And it also has a

11  box, which says in plain terms, you should -- you know,

12  you should fill out or you must include your driver's

13  license number, and if you don't have it, the last four

14  digits of your Social Security number, and if you don't

15  have either, you must provide HAVA-compliant ID when you

16  come to vote.

17          The Board was convinced that the form could

18  have been more clear, but that is not a finding that the

19  prior form violated HAVA.  And we would dispute that.

20  But in any event, my bottom-line point is nothing turns

21  on this because this is a cause of action in mandamus.

22  And the point of mandamus is not whether there was some

23  prior form that's no longer being used.  That's not what

24  the mandamus remedy is.  This is a mandamus argument

25  that basically says you have a ministerial,

1 nondiscretionary duty to either deregister these 225,000
2 voters or require them to vote provisionally when they
3 show up and present, as federal and state law require,
4 both HAVA-compliant identification and photo
5 identification.
6           This isn't a question of we're arguing about
7 a remedy.  Their claim in mandamus is that we are
8 required, without any doubt whatsoever, to do one of
9 these two things.  And so this isn't a defense.
10           Now, just going -- those are the only
11 quibbles that I had with your articulation.
12           With respect to the count 2, there's no
13 question that the Grable-Gunn test, you know, applies
14 with respect to count 2 as it does with respect to count
15 1.  It doesn't distinguish between state statutory
16 claims and state constitutional claims.  This
17 constitutional claim, to the extent that one can
18 understand anything about what it is, in the very first
19 paragraph under count 2, paragraph 90 -- I mean,
20 paragraph 89 says the following paragraphs are
21 incorporated by reference.
22           90 says that we have a nondiscretionary duty
23 to maintain the state's voter rolls in a manner
24 compliant with Section 303 of HAVA.  And by the way,
25 incorporating all of the other paragraphs of this

1    complaint, this is a complaint which, from paragraph 3
2    until the very end of paragraph 20 -- paragraph 3
3    basically says this is a lawsuit about compliance with
4    Section 303.  All of the -- even the addendum -- the
5    remedy provisions reference it.  In 20 pages, this
6    complaint cites HAVA 55 times, including with respect to
7    the constitutional claim, both by incorporation and
8    expressly in paragraph 90.
9              And so the -- it just seems to me the same
10   analysis applies.  And with respect to -- I think
11   that's -- that's basically -- that's our point with
12   respect to the constitutional claim.
13             This complaint, from start to finish,
14   including the constitutional claim, whatever the
15   constitutional violation is, expressly turns on
16   establishing that there is a fundamental failure to
17   comply with HAVA Section 303.  And therefore, the same
18   section 1331, 1441 provisions apply equally.
19             Now, with respect to 1443(2), I certainly --
20   to me, this is a -- I think this is the heartland of
21   what paragraph -- subsection (2), as opposed to
22   subsection (1), is designed to get at.  This doesn't
23   depend, you know, on any aspersion about state courts,
24   and it doesn't depend on the text of the state law
25   itself.  The state law itself doesn't -- I mean, I'm not

1  sure there are any extant state laws anywhere in this

2  country that make distinctions based on race.  They

3  would be manifestly unconstitutional.  But the question

4  is -- the issue in this case under subsection (2) is was

5  there a refusal to comply with that state law based on,

6  you know, the text that we're all familiar with in -- in

7  subsection (2).

8           And, you know, in this case, there is a

9  manifest refusal based on the NVRA's 90-day removal ban,

10 which is incorporated by reference into HAVA, which

11 is -- as was said, is a law that provides for the

12 fundamental right to vote and prohibits expressly, in

13 the relevant provision, discrimination and unfair

14 registration laws and procedures, which the Congress has

15 found disproportionately harm racial minorities.

16          So, you know, taking, you know, Rachel for

17 all of its worth and saying notwithstanding the actual

18 text that talks about equal rights, this requires a

19 state court -- a state refusal to comply with state law

20 because of a -- because it -- the state official

21 believes it is prohibited by a law that was enacted to

22 protect equal rights and -- against discrimination

23 against racial minorities.

24          You asked a question about a private right

25 of action.  And I don't -- I'm not sure if...

1            THE COURT:  Well, I think --

2            MR. WAXMAN:  -- my colleague addressed it,

3    but I'm happy to since --

4            THE COURT:  Well, I think we're gonna come

5    back to it in a moment when we flip directions.  Right

6    now I'm making sure I have jurisdiction and that I'm

7    supposed to hear the case.

8            MR. WAXMAN:  Right.  All I was gonna say is

9    whether there is or isn't a private right of action is a

10   reason -- is dependent on whether you dismiss or not.

11   It's not relevant to whether there is jurisdiction under

12   1441 or 1433.  Thank you.

13           THE COURT:  All right.

14           MR. STRACH:  Thank you, Your Honor.  Good

15   morning.

16           So trying to address the Court's thinking,

17   where you're headed with this -- so I'll kind of throw

18   my notes out, so we'll see how it goes.

19           THE COURT:  Well, you can -- you do whatever

20   your best argument is.  If I'm wrong, tell me.  That's

21   what I'm trying to figure out.

22           MR. STRACH:  I don't like arguing the briefs

23   because it's pointless.

24           So I think, to be clear, this is not a HAVA

25   lawsuit.  Okay?  I want that to be very crystal clear.

 1    HAVA provides an important background for understanding

 2    what has to happen, but HAVA's not the basis for the

 3    lawsuit.  Had it been, we could have easily pled that.

 4              There are several state statutes that

 5    require the Board to maintain and to request the

 6    driver's license number or the last four.  There's the

 7    one that's been cited, 163-82.11.  There's also

 8    163-82.4(a)(11), which specifically says that the form

 9    shall request this information.  It didn't do that for a

10    long time.  And the Board effectively admitted that when

11    they considered the complaint that they considered in

12    December of last year.

13              The question now is what do we do about

14    that?  What do you do?  And, Judge, I think you're

15    exactly right.  I think there are buckets of people in

16    this situation, some who may be eligible, some who may

17    not be, some who provided the information, some who

18    didn't and aren't eligible.  When this was pending in

19    state court, we submitted discovery requests and asked

20    them to expedite the response to get at that very

21    question, to see what are the buckets of people that

22    we're talking about so that the courts can know what to

23    do.

24              But this is a state court action.  This is

25    based on state statutes that require the collection of

 1   this information.  It wasn't done.  The state courts now

 2   get to decide what the remedy is.

 3         Now, if the Board says, "Well, whatever

 4   remedy you're asking for will violate federal law,"

 5   that's a defense.  They can raise that in the state

 6   court.  I'm sure the state court will take due notice of

 7   it.  And the state court can craft something to make

 8   sure that only eligible voters vote in the election.

 9   That's a quintessentially state court thing to do.

10         So it's not a HAVA lawsuit.  Whether there's

11   a private right of action under HAVA, there's probably

12   not.  And if that's a basis for kicking it back, then I

13   would agree with that.  But we haven't raised a HAVA

14   lawsuit.

15         THE COURT:  What do you say to the concern

16   -- the 1443(2) concern?  That is, this is, in fact, a

17   civil rights statute.  We have a right to removal under

18   it because the State Board is saying, "We're not going

19   to do it."  That is, the NVRA is a civil rights statute.

20   "We are refusing to do any act on the ground that it

21   would be inconsistent with such law, so we have a right

22   to removal under 1443(2)."

23         MR. STRACH:  I think that's just incorrect,

24   number one.  I've not seen a case cited yet that says

25   NVRA or HAVA are racial discrimination statutes.  So

1    that's, at best, an open question.  And it seems pretty

2    clear to me that they're not.  It's certainly not the

3    Voting Rights Act.

4            This Court, couple two, three years ago,

5    remanded a case that, frankly, I removed that was based

6    on allegations that state officials would have to

7    violate the Voting Rights Act.  That got kicked back

8    down under 1443(2), affirmed by the Fourth Circuit.

9            I've not seen a case yet that says that

10   would come anywhere close to talking about the NVRA

11   being a racial discrimination statute.  And not even the

12   Congressional findings that my colleagues cite really

13   say that explicitly.

14           And so I think once you're looking at

15   Congressional findings to support a basis for removal,

16   you're already out on thin ice.  And clearly, the

17   findings that were in this law wouldn't support it

18   anyway.

19           The other thing, though, Your Honor, just

20   about the substance of the claim they're making, is

21   they're assuming that a state court is gonna require

22   them to violate federal law.  They're just making that

23   assumption.  We have no idea.  What we've asked for in

24   our complaint is to remove voters if it's consistent

25   with federal law.  We haven't asked the state court to

 1    do anything inconsistent with federal law.  We've asked
 2    them alternatively to require folks to vote
 3    provisionally so that the information can be collected.
 4    So we haven't asked them to do -- and of course
 5    provisional voting is expressly allowed by HAVA, and
 6    sometimes required by HAVA.  So we haven't asked the
 7    state courts to do anything.  This is just pure
 8    speculation on their part.
 9              So I think they've put the cart before the
10    horse in many respects on this issue.
11              THE COURT:  So the timing of the refusal is
12    critical here.  Right?  If 1443(2) grants jurisdiction
13    once the refusal has taken place, not when it's
14    prospective.
15              MR. STRACH:  That's right.  And there's been
16    no such thing here.
17              Now, if the state court comes along and
18    says, "You have to do X, Y, and Z," and the Board says,
19    "Well, we can't do that," then we're taking it back.
20    Okay.  You know, at least now you've been ordered to do
21    something.  You're refusing that order.  You're taking
22    it up.
23              Right now, there's been no order to do
24    anything.  That's what we're just trying to get to.  And
25    we think the state courts have the right to do that.

1          And, Your Honor, I would just point out too,

2    to the extent that the state courts require the Board to

3    have these folks vote provisionally, this is nothing

4    new.  We're not asking anything earth-shattering.  If

5    Your Honor -- if you go to vote and you don't bring your

6    ID, and you don't find -- sign the reasonable impediment

7    form, you're gonna vote provisionally.  And they're

8    gonna say, "Hey, come back to the Board, bring your ID,

9    and your vote's gonna count."

10          This is no different from that.  This is

11    simply saying we're asking the state courts -- have them

12    vote provisionally, let them know why they're voting

13    provisionally, tell them they got to bring this

14    information back to the Board or to the elections

15    officials, and boom, the vote will count.  It will be no

16    different than many other types of situations.

17          So much of this is just being sort of blown

18    out of proportion about what we're seeking.  We're not

19    asking to just wholesale remove people.  We want to find

20    out from the Board, through discovery, what the buckets

21    are.  And then we want to ask the state court to come up

22    with the right remedy under state law.  That's either

23    through a mandamus or through state constitutional

24    provision.  But all of that can be done under state law.

25    I know that because I've done it recently, and I've done

1    it before.

2           So absent the fact that the complaint talks

3    about HAVA, no one would ever be thinking that this was

4    a federal case because, to the extent the federal laws

5    apply, they're defenses to whatever the state court

6    might do as we get the case further down the road in

7    state court.

8           THE COURT:  So is it your position, then,

9    that HAVA provides, really, content that's hiding in the

10    background?  That's being imported into the state

11    statute?  So we don't have to interpret HAVA.  We just

12    have to say HAVA constitutes part of the content by

13    reference.

14           MR. STRACH:  It's clearly background.  It's

15    clearly important background.  But the state statutes

16    independently require the Board to collect this

17    information.

18           Now, if they -- if the state courts say,

19    "You didn't do it; here's what we're gonna do about it,"

20    and they say, "Oop, that violates HAVA," that's a

21    defense.  They can raise that.  But it is not -- HAVA

22    itself is background, at best.

23           Now, did they pass these statutes probably

24    because HAVA says this?  Probably.  They didn't have to.

25    The legislature didn't have to promulgate these statutes

1  that says, "Hey, collect this information."  They could

2  have just relied on HAVA.  And if they didn't do it,

3  somebody could sue under HAVA.  But the legislature

4  thought it important enough to independently promulgate

5  these directions.  That's what we're suing under.  We're

6  just suing under those directions.

7          And if HAVA ends up being a defense down the

8  road, fine.  Deal with that.  But it has nothing to do

9  with the claims we brought.

10          THE COURT:  All right.  And is it possible

11  to violate 163-82.11 without violating HAVA?  If the

12  statute says, "Comply," and the violation is you failed

13  to comply, you have to have violated both, right?

14          MR. STRACH:  I think you clearly would have

15  violated the state statute, and query whether someone

16  would have a cause of action under HAVA too.  But that

17  would be separate.  The one does not require the other,

18  going either way.  I think that you -- again, if the

19  legislature had just not put this in the statute, your

20  only basis would be HAVA.

21          THE COURT:  I understand.  But what the

22  legislature did do was say, "Comply with HAVA."  Right?

23  Said, "Comply with Section 303(a)."  So to determine if

24  there's been a violation -- I have to interpret the

25  federal law to determine if there's been a violation of

1    the state law, right?

2            MR. STRACH:  No because the information was

3    clearly not collected.  That's a -- that's a known fact.

4    We don't know how many people that applies to.  We know

5    that information wasn't collected.

6            So the issue now is the remedy.  And to the

7    extent that the -- if some court has to fashion a

8    remedy, HAVA is a defense.  It's not -- it does not have

9    to be construed as an independent claim.

10           THE COURT:  Okay.  But to violate the state

11   statute, you have to say, "Did you follow the" -- the

12   registration form and requirements come from HAVA and

13   are imported into state law, right?

14           MR. STRACH:  Well, that's under 82.11.  But

15   under the other statute I cited, 82.4(a)(11), there's --

16   the legislature separately said that the form has to

17   collect the specific information.  So --

18           THE COURT:  But there are two fonts.  But

19   one font is one that relies on federal law, right?

20           MR. STRACH:  I'm sorry, Your Honor?

21           THE COURT:  There are two fonts of that --

22   there are two bases for that collection requirement.

23   There's a pure state law simpliciter basis, and then

24   there's the incorporation of federal law basis, right?

25   They're both in the state statute.

1          MR. STRACH:  I might quibble with whether

2    you say it incorporated federal law.  It referenced it.

3          THE COURT:  Fair enough.

4          MR. STRACH:  But clearly they cite HAVA in

5    the second one.

6          THE COURT:  Okay.

7          MR. STRACH:  But yes.  On the first one, it

8    just says, "Hey, you got to collect this information."

9    They didn't do it.

10          THE COURT:  All right.  Thank you.

11          All right.  The motion to dismiss asks a

12    couple of questions.  One is laches, which I think I can

13    resolve from the papers.  But if the parties feel they

14    wish to argue it, I'll listen to it.

15          Then there's the question of whether or not

16    there is a private right of action under either the

17    state or the federal law.  So North Carolina law says

18    implied rights of action are disfavored and will not be

19    found in the absence of clear legislative intent, and

20    that the intent must be to create a statutory protection

21    for a particular group.  So there's a question of

22    whether or not there's a private right of action under

23    North Carolina law because this -- you're the master of

24    your complaint.  It's a North Carolina complaint.  So

25    the question is does the statute that you're seeking to

1 enforce actually create the private right of action?

2 We'll want to talk about that.  So does -- it doesn't do

3 it expressly.  It doesn't say "and there shall be a

4 private right of action," or "This shall be enforceable

5 by."  It's silent.

6           So the question is, I guess, what in the

7 statute demonstrates a legislative intent to impliedly

8 confer the private right of action?

9           MR. STRACH:  Your Honor, it's an election

10 law, and there are many times that people come in

11 through a mandamus action to enforce election law.

12 That's the -- that's the right of action.  It's common

13 law right of action.  The legislatures recognized it.

14 We've cited the statute.  So it's not federal common

15 law.  It's state common law.  And we've used it -- in

16 fact, we've used it recently to compel the Board of

17 Elections to comply with state election law.  And it's

18 used routinely.

19           So no, you're correct.  There's nothing that

20 says it creates a nice, little, neat little package of a

21 private right of action.  But our contention is that the

22 mandamus action allows that.

23           As to the laches piece, Your Honor, let me

24 just mention a couple dates to you so I make sure that

25 the Court understands the timeline.  On June 19th of

1   this year, the State Board denied the request for relief

2   violating a Carol Snow.  And she was asking for them to

3   remedy the fact that the form had not collected this

4   information or required the collection of this

5   information.  So there was no -- no -- no way for anyone

6   to know, until at least June 19th, what the Board was

7   gonna do about this situation.

8            We sent a letter on July 10th of this year.

9   The Board blew that letter off.  They literally just

10  didn't respond to it.  And so we filed the lawsuit on

11  August 23rd, about a month or so after.  So our

12  contention is that is in no way anything close to

13  laches.  We knew what their position was gonna be.  We

14  wrote them a letter giving them a chance to change the

15  position.  They didn't do it.  They blew it off, filed

16  the lawsuit.  All of it happened pretty quickly.

17           Only reason we're here right now, close to

18  the election, is because they removed the case.  I think

19  this case would have already been resolved by now by the

20  state courts had we been back in state court.

21           THE COURT:  And have you got a citation for

22  me?  Is that the Graham County -- what case am I

23  supposed to be looking for, for the relationship between

24  mandamus and private right of action?

25           MR. STRACH:  It's the general mandamus --

```
 1   let's see.  Yeah.  We've cited the cases, Your Honor,
 2   that talks about the common law of North Carolina.
 3              THE COURT:  Right.
 4              MR. STRACH:  And then we did cite a -- oh.
 5   N.C. Gen. Stat. 4-1, which expressly, by statute,
 6   incorporates the common law into the law of North
 7   Carolina.
 8              THE COURT:  And that's a question of state
 9   law that you say you've successfully litigated in a
10   different case?
11              MR. STRACH:  Yes.  Well, we've brought
12   mandamus actions to enforce election laws.
13              THE COURT:  Right.
14              MR. STRACH:  And we -- nobody removed the
15   case.  Nobody said we didn't have a claim.
16              THE COURT:  Okay.  So it wasn't a contested
17   part of that case.  It's just been successfully done by
18   the North Carolina courts.
19              MR. STRACH:  That's correct.
20              THE COURT:  All right.  Thank you.
21              MS. BOYCE:  Hi, Your Honor.
22              So I'll go quickly in turn to respond.  And
23   I'll start with the private right of action question and
24   then touch on laches, and then one other issue that I
25   think needs a little bit of attention.
```

```
 1              First, with respect to the private right of
 2    action, you asked about both the federal right of action
 3    and the state right of action.  I heard my colleague,
 4    Mr. Strach, to effectively concede that there is no
 5    federal right of action here under HAVA in his remarks
 6    earlier, so I won't waste your time with that.
 7              With respect to the state cause of action,
 8    we agree with Your Honor that there is not a state cause
 9    of action here underneath this particular statute that
10    they've cited, 82.11(c).
11              The way that I think about their claim,
12    though, is that Mr. Strach is correct that they have a
13    right to bring a mandamus claim.  We have not contested
14    their ability to bring the mandamus claim.  Where the
15    question of the right of action under state law becomes
16    relevant is on the first prong of the mandamus test,
17    which is whether they have a clear right to the remedy
18    they seek.  That question seems to necessarily bootstrap
19    in an inquiry of whether state law contemplates a
20    private citizen being able to bring some kind of claim
21    and seek the relief that they're asking for.  And that,
22    I think, is where your question is implicated about
23    whether 163-82.11(c) grants a private right of action.
24              I think you quoted precisely exactly what
25    the test is.  Was the legislature intending to confer a
```

1  right upon this particular group of individuals?  I

2  think state law also looks to whether the General

3  Assembly has directed other administrative remedies to

4  be put in place.  And here, consistent with HAVA, the

5  State Board has been directed to establish an

6  administrative procedure, which it has done, which

7  further underscores the fact that Congress seem to

8  believe that the appropriate remedy and the appropriate

9  cause of action here was through an administrative route

10 except, of course, for the Attorney General.

11          So we agree with Your Honor there is no

12 state cause of action.  We just think that that is more

13 relevant to the question of whether the mandamus claim

14 can survive, not necessarily a ground for saying that

15 they couldn't bring a mandamus claim in the first place,

16 consistent with what Mr. Strach was saying.

17          THE COURT:  All right.  So mandamus is

18 proper.  The question is "A right to what?"

19          MS. BOYCE:  Precisely.  Yeah.  If you lack a

20 private right of action, then you're hard-pressed to

21 establish that first prong, that you have a clear right

22 to the specific relief that you have requested.  That

23 would be the State Board's position.

24          With respect to laches, just two quick

25 points there, Your Honor.  I still haven't heard any

clear representation from my colleagues on the other

side as to when they actually found out about the issues

they're talking about here.  I would point out both that

this -- everyone seems to agree that the state form has

existed for decades now.  And so to the extent that the

issue arises from a problem with the form, that has --

that has, you know, persisted for many, many more years,

certainly far before June.

With respect to the question of when they

realized that the State Board was not going to remove

these voters from the roll or follow up to get more

information, that decision was announced in December of

last year.  It was announced in a public meeting.  I

would invite the Court to ask my colleagues on the other

side when they learned about that decision, and

specifically whether they had representatives at that

meeting.  It is our strong belief that they did.

So our position would be that they have

known about this claim since at least December and

should have brought this long before the eve of an

election and now with voting already ongoing.

THE COURT:  Well, now, this problem persists

past this election, right?  So there's the "Can this be

fixed before November?"  And there's will this --

elections will continue, and the voter rolls that have

1   people on them who may have problems -- the buckets

2   issue persists past November.  So this is a problem that

3   remains if to the extent it is -- that otherwise

4   ineligible voters were registered because the material

5   was not properly collected, that problem persists.  And

6   the question is how and when that's fixed.  That

7   persists past November.

8               So if we say it's administratively

9   impractical and would cause people to be removed doesn't

10  mean you don't have an obligation to fix it potentially,

11  because there's another election coming after that and

12  another one coming after that, right?  I hope.  Right?

13  We certainly believe that elections will persist.

14              MS. BOYCE:  Yes, Your Honor.

15              So, I guess, again, two points in response

16  to that.  First, insofar as the alleged problem was the

17  form and the problem was that the State Board was

18  registering voters without making it absolutely crystal

19  clear on the face of the form that this information was

20  required if you had it, that has been fixed.  That is

21  not going to occur, moving forward.

22              With respect to the question of whether

23  there are ineligible voters on the roll and how we deal

24  with that problem, I just want to take that premise

25  head-on.  We strongly disagree with the notion that what

1   happened here has any chance of resulting in ineligible

2   voters being on the rolls.  We know from HAVA -- and

3   nothing in state law says otherwise -- that a driver's

4   license and Social Security are not a prerequisite to

5   voting.  The simple fact that you don't have them does

6   not mean you're ineligible to vote.  Those numbers are

7   important because they help verify the identity of the

8   person who submitted a form.  And the reason, of course,

9   that the State Board permits you to check a box saying

10   that you don't have one and then to submit alternate

11   supplementary identification is because that also works

12   as a means of confirming that you're the person who

13   registered and you're the person who intends to vote.

14         So we just fundamentally disagree that the

15   failure to provide a driver's license or Social Security

16   number renders you ineligible.  And I think we've talked

17   at great length in our briefs about the many, many

18   safeguards that are in place to ensure that no voter

19   shows up to cast a ballot without providing some form of

20   verification that they are the person that they say they

21   are and that they are qualified to vote.

22         Now, of course, North Carolina has two ways

23   of doing that, both through the requirement of providing

24   HAVA ID and through our photo ID requirement.  But there

25   is no contention here, and it would be false to suggest

1    that any voter has managed to get on the rolls and then

2    vote without showing some form of identification, just

3    as HAVA requires.

4            So to your point, yes, this will continue to

5    -- people will continue to vote.  These people will

6    continue to be on the rolls.  But they will never be

7    permitted to vote without providing the identification

8    that HAVA requires under federal law.  They will have to

9    either show a photo identification or a government

10   identification document.  And then once they have done

11   that, just as HAVA says, they will be permitted to cast

12   a regular ballot.  If they fail to do that, then this

13   provisional ballot kicks in.  But otherwise, federal law

14   makes quite clear that they are eligible voters who

15   should be permitted to cast a vote.

16           The only other thing that I wanted to

17   respond to quickly, if I may, is this new reference to

18   163-82.4.  That has, of course, not been a basis of the

19   complaint at all.  We have been focused on 82.11(c).

20   But in any event, all 82.4 says is that the form has to

21   include this information.  Doesn't say what happens if

22   it doesn't.  It doesn't say you can't register if they

23   don't provide it.  And so to the extent there was any

24   issue with that state law, it has been corrected now

25   that the form does include that information.

```
 1              THE COURT:  All right.  Now, Mr. Waxman,
 2    speaking on behalf of the Board, says that there was no
 3    -- that -- at least the Democratic party doesn't concede
 4    a violation.  Does the Board agree that -- do you agree
 5    with his position that you don't concede a violation
 6    occurred?
 7              MS. BOYCE:  I believe that the way that the
 8    State Board framed it in its order is to concede that it
 9    made it possible a HAVA violation could occur, to have
10    this form.  They agree that the form could be improved.
11    They agree that the best way to communicate to voters
12    that this information was important, if they had it, was
13    to alter the form and change the font.  I don't think
14    that they outright conceded that the form itself was a
15    HAVA violation.  And I think that's in part based on
16    what Mr. Waxman said about the fact that it seemed to
17    contradict itself in some ways.  It was not highlighted
18    in red to show that it was mandatory, but it did
19    nevertheless have an instruction immediately under that
20    on the face of the form that said, "If you have this
21    information, you have to provide it."
22              THE COURT:  So the error, to the extent the
23    error exists, is the failure to place it in red.  The
24    form -- if you --
25              MS. BOYCE:  That's right.
```

```
 1              THE COURT:  -- take the colors away...

 2              MS. BOYCE:  If you were color-blind -- yes.

 3    You would not -- there would be a different matter.

 4    Perhaps.  Perhaps, Your Honor.

 5              THE COURT:  So the risk of -- the risk of

 6    confusion comes from the absence of the red shading on

 7    those boxes.

 8              MS. BOYCE:  That's right.  Yes.  And of

 9    course, Your Honor, this might be a completely different

10    case if what they were asking for was for us to change

11    this form.

12              THE COURT:  That's already happened.

13              MS. BOYCE:  We could fight about that.  That

14    has already happened, though.  They could make an

15    argument that there is a clear right underneath federal

16    and state law to a form that has this information.  We

17    might disagree with that, but they could certainly argue

18    that, and maybe it would be a closer question.  But that

19    has already happened, as Your Honor has pointed out.

20              The question here is whether state and

21    federal law provide them a relief to either kick people

22    off the rolls or demand that those people cast

23    provisional ballots instead of regular ones.  And that's

24    simply nowhere to be found in federal or state law.  You

25    can piece things together and, you know, guess that
```

1  perhaps that is required.  But we would argue that that

2  conflicts with HAVA.  And in any event, mandamus

3  requires it to be a clear duty.  If it's ambiguous, then

4  the mandamus claim automatically fails.

5          THE COURT:  All right.

6          MR. STRACH:  And, Your Honor, if I may, just

7  to that point, the point that my colleague just made is

8  the point.  The state courts may very well say, "Yes,

9  there is a clear right here."  So whether you get there

10  because it's not a substantial federal question and

11  because it's really a defense to that, or whether you

12  get there because of something like Pullman abstention,

13  because these are statutes that the state courts in the

14  first instance are gonna have to construe and interpret

15  to say whether there is this clear right or not, it

16  wouldn't be for this Court to say that, of course.  It

17  would be up to them to say whether that is.

18          That's where we're trying to get.

19          THE COURT:  Okay.  Now, the abstention

20  doctrines don't allow me to abstain if there's a 1442

21  right, correct?

22          MR. STRACH:  You mean if there's a right to

23  removal?

24          THE COURT:  Yeah.  Under 1442, if they have

25  a right to removal, then the abstention doctrines don't

```
 1   get me anywhere, right?  I've got to remove under that
 2   -- to the extent that statute applies, I have to remove.
 3             MR. STRACH:  You may be right.  I actually
 4   don't know the answer to that off the top of my head.
 5   Mr. Waxman probably does.
 6             MR. WAXMAN:  I'm gonna help my friend,
 7   Mr. Strach, just by saying the various -- the panoply of
 8   preemption doctrines don't go to the question of federal
 9   jurisdiction or removal of jurisdiction.  They go to the
10   question of is a federal court saying, "Okay.  I've got
11   this case, but one of these abstention doctrines
12   applies, so I'm just gonna hold onto the case," which is
13   what happens, "and certify this particular question of
14   state law to the state court."
15             Now, none of these abstention -- the only
16   abstention doctrine they've cited is Pullman.  And as my
17   friend on this side of the table said, Pullman
18   abstention applies only -- only in a case where
19   abstaining -- getting a state court ruling would avoid a
20   federal court having to rule on a federal constitutional
21   question, which is not in this case.
22             THE COURT:  Right.  It'd be Pullman
23   adjacent.  It'd be avoiding a ruling on a state --
24             MR. WAXMAN:  Right.
25             THE COURT:  -- constitutional question
```

1   first.  So it would be a different form -- it's not

2   <u>Pullman</u> abstention qua <u>Pullman</u> abstention, but it's

3   adjacent.  It's avoiding making a state constitutional

4   ruling as a matter of first --

5           MR. WAXMAN:  I mean, there -- it wouldn't be

6   <u>Pullman</u> abstention.  You're right.  But a federal court

7   could say, "My resolution of this federal question

8   presented to me turns on how the state courts" -- "the

9   state Supreme Court would interpret this ambiguous state

10  law."  And there's no issue here.  I will -- if I can

11  just beg the Court's indulgence to make, I think, three

12  points in response to --

13          THE COURT:  Well, I was about to ask.  I was

14  gonna say, now, if there's anything you think we've

15  missed in our conversation, please do.  So you have my

16  indulgence.

17          MR. WAXMAN:  Okay.

18          With respect to the removal, remand issue,

19  the plaintiffs, in their briefing, don't mention

20  anything whatsoever about supplemental jurisdiction.

21  And we're not urging removal -- if this case is properly

22  removed, that any supplemental jurisdiction be exercised

23  because we think that the 1441 question and the 1433

24  question apply equally to counts 1 and count 2, as I've

25  said.

1          But Your Honor did say that, look,

2    supplemental jurisdiction should be ordinarily entered

3    narrowly under the -- you know, under the circumstances.

4    The circumstances here -- if supplemental jurisdiction

5    were at issue, the circumstances here decidedly point in

6    the opposite direction.  And indeed, I think that

7    exercising supplemental jurisdiction, if you found that

8    there wasn't federal removal jurisdiction under count 2,

9    would be necessary and proper.

10          You know, on my -- there are probably at

11    least tens of thousands and probably hundreds of

12    thousands of North Carolina citizens who have already

13    voted.  On my way to the courthouse today from my hotel,

14    I passed a long line of people waiting to do early

15    voting in person.  And this is a situation that cries

16    out for an immediate resolution of this issue.

17          Secondly, my friend said, well -- and I

18    guess this relates to laches -- that, you know, laches

19    only applies -- the time clock only started running when

20    there was, quote, a refusal of the State Board to do

21    what's being asked here.

22          There was such a plain refusal in the

23    Board's published December order.  And, you know, I too

24    would challenge Mr. Strach to represent here, with

25    respect to laches, that his client was not actually

1    aware of the complaint filed by Ms. Snow in October and
2    discussed at a hearing in November.  It's not in the
3    record in this case.  But it is a public record
4    susceptible to judicial notice that a representative of
5    the Republican -- the Republican party of North Carolina
6    and a representative of the Democratic party of North
7    Carolina were at that meeting.  So we're talking about a
8    delay of a year, 11 months, since the Board said, "We
9    are not providing the additional prospective relief
10   because we conclude that federal law neither requires
11   nor allows us to do what it is that Ms. Snow and now the
12   plaintiffs are saying."

13           The notion that, "Well, you know,
14   provisional voting is common in North Carolina,
15   everybody knows how to do it, and what's the big deal if
16   these 225,000 people are somehow contacted and they
17   haven't voted already and told they're gonna have to
18   vote provisionally" -- provisional voting is absolutely
19   prohibited to be required under both federal law and
20   state law to a person who is eligible to vote and
21   provides the requisite identification that federal and
22   state law require at the time that she or he votes.  And
23   that only makes sense because what is it that they're
24   supposed to cure after they do that?  These people show
25   up and say, "I'm on the registered rolls."  Or "You just

told me that I wasn't somehow on the registered rolls,
but here is my HAVA ID.  Here is my photo ID."  And
they're told, "No, you have to vote provisionally, and
you've got to cure some question before the" -- you
know, at least the day before the state canvass.  The
question is gonna be, "What do I have to do?  I mean,
I've already provided both HAVA ID and state-required
photo ID."

          Now, I can cite Your Honor the provisions
both in federal law and state law that preclude
requiring these people to vote provisionally.

          The notion that the cited statute -- the
cited state statute in count 1 has, quote, only as
background, a background principle, Section 303 of HAVA,
is -- I mean, it's -- it's breathtaking.  The title of
the statute is "Compliance With Federal Law."  And the
only thing that -- the only content of the statute is
"You have to do this consistent with HAVA 303."

          Now, Mr. Strach cited to the Court another
section, 163-82.4(a)(11).  I could be wrong, but I don't
believe that that statute was cited anywhere in the
complaint in this case.  And in any event, that
provision, which just lists out what has to be on the
form, is entirely derivative of HAVA 303 -- Section
303's requirements.

           THE COURT:  It's not in the complaint.  I
looked earlier today.

           MR. WAXMAN:  Okay.  So -- phew.

           On the question of the motion to dismiss,
I'll address first the private right of action, and then
laches and <u>Purcell</u>, which is, I think, the only things
that have been discussed, and then explain why I think
the most fundamental problem here is that the complaint
fails to state -- plausibly allege any federal or state
violation, and that the mandamus sought, either a purge
of all of these people from the voter rolls or a
requirement that they provisionally vote, are absolutely
prohibited by federal and state law.

           With respect to the private right of action,
I take it that we're arguing only whether there is a
state law, whether state law has some implied private
right of action.

           THE COURT:  Yeah.  The case law is against
having any federal -- the Attorney General gets to do it
under federal law.

           MR. WAXMAN:  That's right.  I mean, even if
there were some implied -- there were some general
common law rule implying private rights of action or
allowing mandamus, the application of that general rule
to an alleged violation of HAVA -- in essence, an

1    alleged HAVA violation -- would be preempted.  I mean,

2    we're talking here about a federal statute that was --

3    not only Congress is authorized to promulgate and

4    require national compliance with, it is actually the

5    effectuation of a particular constitutional provision in

6    Article 1 that says that if Congress acts, it shall

7    dictate the time, place, and manner for holding

8    elections.

9              And Congress made the determination that

10   there is -- that these -- that alleged violations of

11   this law with respect to registration are to be enforced

12   either by the Attorney General or in an administrative

13   proceeding that each state must establish.  And neither

14   of those things is true.  And the notion that state law

15   can then add on a private right of action when --

16   assuming what we're assuming, for purposes of this case,

17   that there is no -- it did not provide a federal right

18   of action to enforce Section 303 or any other provision

19   of HAVA -- a state rule to the contrary, even if it were

20   in a state statute, would be preempted.

21             Now, with respect to -- I think I've said

22   what there is to be said with respect to laches except

23   that, in the first place, they have -- they have been on

24   actual notice about the State Board's declination to

25   require either of the forms of relief that they are

1  asking for in their complaint and that -- and they also

2  knew very, very well, as we -- as our own party know

3  very, very well, the 90-day prohibition on registration

4  removal.

5         And even if this were, as Mr. Strach says,

6  "Well, we didn't really know about it until they" -- you

7  know -- "they ruled on Ms. Snow's complaint in" --

8  "supplemental complaint in June," both the Supreme Court

9  and the federal circuit have applied laches in the

10  election context when the delay has been a matter of

11  days in the eve of the election, not just a matter of

12  months, as it was, even under their telling here.

13         I think if laches weren't enough, this is a

14  manifest case for the application of the Purcell

15  principle. Purcell basically has cautioned -- and its

16  progeny -- federal courts not to adjudicate, not to

17  countenance claims that would disrupt -- in the eve of

18  an election or near an election -- claims that would

19  disrupt the established rules of voting, voting

20  registration, et cetera, et cetera. That's exactly what

21  this does.

22         And indeed, in a very, very analogous case

23  in federal court in Arizona, in which there was a --

24  Maricopa County discovered that there were over 100,000

25  people who had registered under some prior form, and

1   looking back on it, it really wasn't clear whether that
2   complied with state or federal law, the Republican party
3   participated in that litigation, urged the Court under
4   Purcell and other grounds not to deregister or in any
5   way burden those particular voters, and succeeded.
6          And that was a -- that was litigation that
7   was filed, I think -- certainly at least a month ago,
8   and I think before the 90-day removal period.  And so
9   either Purcell or laches would apply.  But I would urge
10  the Court to dismiss this complaint in the first
11  instance because it -- you know, number one, it fails to
12  plausibly allege any violation of federal-state law.
13  The targeted voters in this case, the 225,000, have
14  attested under penalty of perjury that they are U.S.
15  citizens who meet the eligibility requirements to vote.
16  They're required to do that, and they all did.
17          County Boards of Election have evaluated and
18  confirmed their eligibility as required by federal and
19  state law.  Those voters who registered by mail are
20  gonna be required to present -- well, all of these
21  voters will be required to present both HAVA and photo
22  ID.  And even as of this date, with the election already
23  ongoing, the plaintiffs have not alleged and are not
24  prepared to allege that even a single one of these
25  225,000 voters, contrary to the record in this case, as

 1    I've just articulated, is not, in fact, eligible to

 2    vote.  I mean, that makes their constitutional claim,

 3    whatever the content of it is, particularly

 4    breathtaking.

 5              Secondly, on the merits, granting their

 6    requested relief would violate, as I said, black-letter

 7    federal and state election law.  The NVRA prohibits

 8    systematically purging voters within 90 days of a

 9    federal election, and removal from a roll without notice

10    or an opportunity to be heard and to cure violates both

11    North Carolina statutory law and the due process clauses

12    of both the North Carolina and the federal

13    Constitutions.

14              Their alternate contention that HAVA, you

15    know, permits only provisional balloting, is refuted

16    again by both federal and state law.  Requiring a

17    provisional ballot from a voter who is qualified to vote

18    violates HAVA, which incorporates the NV- -- the Voting

19    Rights Act.  And North Carolina law specifically

20    provides that there is no provisional balloting required

21    if an appropriate identification is presented at the

22    time of voting.

23              And I think that's all --

24              THE COURT:  I have a question -- well, I

25    have a question about what constitutes a properly

```
1    registered voter.  That is, when the person -- if a
2    person filled out non-HAVA-compliant form, didn't
3    provide the necessary materials to comply with HAVA, are
4    they a properly registered voter who's being removed?
5    Or are they not a properly registered voter in the first
6    instance?
7              MR. WAXMAN:  They are a properly registered
8    voter if, following an evaluation of the registration
9    form, the State authorities -- in this case, the State
10   Board's authority delegated to the County Boards of
11   Elections -- evaluates it and determines that they are.
12   And in that instance, state law, you know, absolutely
13   prohibits their removal except under certain irrelevant,
14   nonspecified statutory circumstances, like they died,
15   they moved out of the state, they've become mentally
16   incompetent, or they've been convicted of a felony and
17   not reinstated.
18             And I would also, I think, with respect,
19   quibble with the premise of your question, which is that
20   they didn't provide the information that is required.
21   The federal --
22             THE COURT:  That's the -- I think that's the
23   crux of the matter, right?  The Republican party here
24   says, "We don't know, and we want to get the buckets
25   sorted out so we can figure out who is, in fact,
```

1  eligible and properly registered."

2          Now, figuring out how to go about sorting

3  that and remedying it -- and if it's not for this

4  election because it's too close and we're in <u>Purcell</u>

5  doesn't mean that we can't have something that fixes it

6  for the next election where we're nowhere near <u>Purcell</u>

7  and any, you know, remedy is for the next election, not

8  this one.

9          MR. WAXMAN:  Right.  So I -- I guess what I

10  would say is, first of all, it is their pleading

11  obligation to at least assert on information and belief

12  that there are, in fact, voters among the 225,000 they

13  want to purge that are ineligible.

14          Now, Mr. Strach mentioned a discovery

15  request that was made to the State Board, and I will

16  stand corrected if I'm wrong.  But my reading of the

17  discovery request was not "Please identify people on

18  this" -- "of the 225,000 that are, in fact, ineligible."

19  It said, "Please tell us what you have done to verify

20  eligibility."

21          And it is their pleading burden to come

22  forward and say, "There are ineligible" -- "There are

23  voters who are going to vote or who are on this list

24  that are, in fact, ineligible to vote."  And HAVA --

25  neither HAVA nor the state statute that incorporates it

require that you provide one of these two numbers. What
the state statute says and the form -- the old form
itself said was "If you don't have either of these two
numbers, you must do the following." And HAVA and state
law provide that somebody who doesn't have either of
these numbers, the State must, A, provide them with a
unique identifier in their registration, assuming
they're determined to be eligible, and require
HAVA-compliant ID when they appear to vote. And the
State has represented in its papers here that it has
done both of those things.

So I don't think that they are improperly
registered, and neither did the county boards that had
the responsibility of ascertaining their eligibility.

THE COURT: Okay. Now, paragraph 68 of the
complaint says, "Upon information and belief,
Defendants' violations of HAVA allowed non-citizens to
register to vote in North Carolina, in direct
contravention of both federal and state law." So they
did make that allegation. And then paragraph 69 says,
"By allowing ineligible voters to register and then
remain on the North Carolina voter rolls, Defendants
have brought the security and validity of the state's
elections into question."

So they have alleged it, right? The

1  question is not have they -- that's their information
2  and belief.  "We think that is true.  We want that
3  bucketed out."

4         MR. WAXMAN:  You know, I fully credit my
5  friend Mr. Strach's professionalism, truly.  But if
6  there -- I would like to know what the information and
7  belief is that there are people on these rolls who, even
8  though their eligibility has been examined by the State
9  Board, and they have sworn under penalty of perjury that
10  they are, in fact, eligible, what the basis is for
11  information and belief that -- I guess he's only saying
12  that they allowed noncitizens to register, not that
13  there were, in fact, any noncitizens who registered.  I
14  think the predicate is wrong.

15         But my point, I think, still stands, which
16  is they are coming to this Court and seeking wholesale
17  relief, on the eve of an election -- well, in the middle
18  of an election -- without identifying a single
19  ineligible voter in the face of a state and federal
20  scheme which makes it essentially impossible for an
21  ineligible voter to vote because they are all required
22  to present HAVA ID and, in North Carolina, a photo ID
23  before they are allowed to vote.  I don't understand the
24  premise under which there could be an argument that
25  ineligible voters among these 225,000 people are voting.

1    Maybe there's some argument that somebody who did fill

2    out this -- there's somebody who did fill out this form

3    with their driver's license number but is not, in fact,

4    eligible to vote but presents some form of photo ID is

5    not, in fact, eligible.  But it certainly doesn't apply

6    to these 225,000 who are particularly required to

7    present HAVA-compliant identification at the time they

8    vote.

9            THE COURT:  All right.  I understand the

10   position.

11           MR. WAXMAN:  Okay.

12           THE COURT:  I understand the position.

13           MR. WAXMAN:  Thank you, Your Honor.

14           THE COURT:  Anything that the plaintiffs

15   wish to bring to the Court?

16           MR. STRACH:  Your Honor, very briefly.  I

17   think I've said most of what I need to say.

18           On the question that Your Honor had about

19   are they registered or not, are they registered and

20   we're removing them, or were they never registered

21   before, I would note that if the Board did register

22   people who did not provide those numbers, then they

23   would be in violation of HAVA because HAVA says that an

24   application for voter registration for an election for

25   federal office may not be accepted or processed by a

1   State unless the application includes the numbers.

2          THE COURT:  And that was my -- that was my

3   understanding when I went through it, trying to figure

4   out -- so if there's somebody who hasn't presented one

5   of those -- now, we're sort of at the -- there are three

6   layers of speculation here, right?  One is the

7   instructions say to give this to us.  The colors are

8   misleading.  So does the computer program accept those

9   registrations that lack those numbers?  Are they then

10  forwarded to the State Board of Election?  Are they then

11  processed and the person is registered in the absence of

12  the ID or the number?  Right?  So there are supposed to

13  be some checks and balances along the way.

14         So when the procedure that Mr. Waxman

15  describes, where it gets to the County and the County

16  Board says, "We registered these people," we're making

17  some assumptions that they have checked to make sure

18  that the required forms were provided or the required

19  number is provided.  So what we're at the -- we're at

20  the "We think this is possible, and we don't know, and

21  this could have gone wrong at each step, and we're

22  trying to find out."  That's reasonable.  It's

23  reasonable to want to find out what actually happened.

24  That's -- we want to know.  Are -- did this person get

25  through this process without ever providing the

1    HAVA-required materials?  And if they did, there's a

2    question as to whether or not they're a properly

3    registered voter if they registered -- were accepted by

4    a functionary in violation of the law, whether or not

5    they're properly registered in the first instance.

6          So I was reading it, trying to figure that

7    piece out because whether or not you remove a registered

8    voter depends on that person being registered.  So I

9    have to figure out what "registered" means in this

10   context.  So I was trying to work my way through that

11   with all of the materials to figure out who are we

12   talking about?  What's the class?  How big is it?  How

13   likely is it we're gonna affect multiple people,

14   assuming that this case is properly before me, thinking

15   about how and when we can apply any appropriate remedy?

16         So the question of what constitutes a

17   registered voter makes a difference in terms of figuring

18   out what remedy, if any, might even be appropriate.  So

19   that's why I was asking the question.

20         MR. STRACH:  Yeah.  And we think that's

21   clearly correct.  And that's what the discovery requests

22   that we propounded were designed to start to figure out,

23   which is, what are the buckets?  What process did people

24   go through?  Did they become improperly registered?  And

25   what's the universe of that look like?  That's what the

```
 1    discovery process is designed to do, and that's what
 2    we're trying to do.
 3              And we think that some of these questions,
 4    Your Honor, are, you know, gonna be answered by state
 5    law, and so even less of a reason for this Court to jump
 6    into a fray that's gonna involve a lot of difficult
 7    questions of state law.
 8              MR. WAXMAN:  Your Honor, with respect, I
 9    have one and a half points to make in response to my
10    friend's representations.
11              Number one.  In direct answer to your
12    question, it is not, in fact -- notwithstanding the
13    language that was quoted -- it is not, in fact, a
14    federal law requirement that you provide either of these
15    numbers in order to be registered.  Federal law
16    specifically provides -- and this is 52 U.S. -- well,
17    this is Section 303(a)(2) -- little "i," I think --
18    (a)(2)(5) little "i" -- which says that if an applicant
19    for registration for an election to federal office
20    doesn't have either of these numbers, the State shall --
21    it doesn't say that's the ball game.  It says, "the
22    State shall assign the applicant a number which will
23    serve to identify the applicant for voter registration
24    purposes."
25              And, in fact, it seems to me that the, you
```

 1    know -- what provides the -- maybe the thirteenth chime

 2    of the clock is a provision of North Carolina law.  It's

 3    section 163-166.12(d), which is entitled "Voting When

 4    Identification Numbers Don't Match."

 5            This is a situation in which the form is

 6    filled out.  One or both of the numbers is provided.  It

 7    goes to the responsible state officials for an

 8    ascertainment whether you can or cannot properly

 9    register.  And the numbers actually don't match the

10    government's records.  And what this provision says is

11    that if that happens, you are -- the voter is

12    nonetheless still entitled to vote provided that he

13    submits the ballot with the form of identification

14    described in the previous subsections, which are the

15    HAVA requirements.

16            And so even when somebody falsely fills out

17    a -- or mistakenly fills out a number, state law and

18    federal law require that that voter be allowed to vote

19    upon provision of HAVA-compliant information.

20            Thank you.

21            (Discussion off the record between defense

22    counsel.)

23            MR. WAXMAN:  Yeah.  And only if they fail do

24    they -- are they required to vote a provisional ballot.

25            THE COURT:  Okay.  Yes, ma'am.

```
 1              MS. BOYCE:  Your Honor, I think it's totally
 2    fair for you to be honing in on the fact that, to some
 3    extent, this can all become quite circular.  But I do
 4    think it's important to distinguish between the question
 5    of eligibility and proper registration.  Even taking
 6    everything that my colleague over here says as true,
 7    that the State Board should not have processed these
 8    registrations, that would, I think, take us to a
 9    conclusion that they were improperly registered.  But it
10    would not necessarily take us to a conclusion that these
11    voters are ineligible.
12              THE COURT:  I agree.  The question is the
13    purging statutes talk about registered voters.  And so
14    figuring out who we can remove is somebody who is
15    registered; and to be a registered voter is a separate
16    question from an eligible voter.
17              MS. BOYCE:  I agree with that.  The way that
18    I think about it is that you are registered in North
19    Carolina if you look up the person in the database and
20    they appear on the voter rolls.  And then North Carolina
21    is quite clear that you may only be removed from those
22    rolls if, in fact, certain things are triggered and
23    essentially it is proven that you are ineligible.  And
24    again, just stepping up -- or, you know, zooming out to
25    10,000 feet, I do think it matters here that these
```

1    voters did everything right on the face of the form.

2    They provided the right information that the form said

3    was required.  They will show up to vote.  They will

4    provide HAVA ID.  So Your Honor is faced with a question

5    of what to do when voters have checked every box that

6    they have been told they needed to check.

7            THE COURT:  We certainly can't be

8    disenfranchising people who did what they were told to

9    do who are eligible voters.  Right?  HAVA is supposed to

10   help us make sure that only -- that every eligible voter

11   who wants to register does so in a way that is good and

12   uniform, and we get there, and we can check them against

13   our other disenfranchising requirements, and only

14   eligible registered -- only eligible voters register.

15            So we're supposed to help everyone who can

16   vote, and should vote, vote.

17            We're also supposed to make sure that people

18   who can't vote, and shouldn't vote, don't vote, right?

19            MS. BOYCE:  Right.

20            THE COURT:  We try to figure out the on/off

21   switch.

22            MS. BOYCE:  That's right, Your Honor.  But I

23   do think that the two key points in response to that

24   are, number one, as my colleague has said, federal law

25   makes clear that having the driver's license and the

1    Social Security number is not important to that

2    particular question.  You can not have one and you can

3    still vote.  So that's one --

4                    THE COURT:  Understood.  Understood.

5                    MS. BOYCE:  That's one factor here.

6                    And two.  I think we all agree that the

7    purpose here is to force the voter to confirm their

8    identity.  And again, these are voters who will not be

9    permitted to vote until they confirm their identity in

10   one of the ways that both state and federal law require.

11                   So in that circumstance where the voter has

12   done nothing wrong, and they're going to jump through

13   every hoop to provide the information that is actually

14   absolutely required, you know, we would submit that

15   there's no question but that federal law -- federal and

16   state law do not permit those voters to be

17   disenfranchised, nor does it permit them to be required

18   to cast a provisional ballot.

19                   THE COURT:  That was my understanding of the

20   positions.  I think the provisional ballot question was

21   how do we make sure -- I think that's the outermost ask.

22   I'm not sure where it's -- where the plaintiffs expected

23   to land.  What they want to do is say, "Can we get

24   discovery to figure out how big the buckets are?  And

25   when we figure out the bucket of people who shouldn't be

1    allowed to vote, can we figure out where and how we're

2    gonna stop that?"  I think that's ultimately what this

3    case is about.

4              MR. STRACH:  Correct.

5              THE COURT:  It's framed as a complaint, way

6    out here, intended to land at the -- figuring out the

7    small bucket and keeping the small bucket from voting.

8    That's how I read it.

9              MR. STRACH:  We've been -- we've been moving

10   in that direction the whole time as best we could.

11   That's the direction we're heading in.  We think that

12   the Court is right.  All eligible voters should vote.

13   Ineligible voters shouldn't.  And that's -- this lawsuit

14   deals with the second piece of that.

15             And I would just point out real quick, to

16   one of the points my colleagues made, the -- HAVA and

17   state laws say that if you don't have driver's license

18   number or last four, then they have to create a number

19   for you, that you can be tracked.  And then you have to

20   vote using a HAVA document or a photo ID, whatever.

21   That's if you were asked and did not have it.  We're

22   talking about people who weren't even asked properly and

23   may have it and did not provide it.  That's a whole

24   different ball game than what they were just talking

25   about.

1          THE COURT:  I understand -- I understand
2     where we are in terms of figuring it out, right?  I
3     don't think the parties fundamentally disagree on we
4     want eligible voters to vote and we want ineligible
5     voters to not vote.  The question is just how do we get
6     from where we now stand where there may or may not have
7     been a problem with the form?  I think we're not even
8     sure we agree on that.
9          But the form has been fixed to where there's
10    clearly no problem.  How do we get from the possibility
11    that there are some registered voters who are actually
12    ineligible voters?  How do we find those people if they
13    exist?  And the big ask is "Let's have everybody vote
14    provisional and we'll sort it on the back end."  That's
15    not practical or, I think, susceptible to a canvass that
16    works.
17         So the question is how do we have something
18    that works inside of that that sorts it?  To the extent
19    that it's doable now at all -- and with Purcell, it may
20    not be doable for this election.  It doesn't mean that
21    it's not doable prospectively.  And so we'll -- I'll
22    take all of this under advisement.  I've got a lot of
23    thinking and writing to do to decide if this is my case
24    to decide, and then move from there.
25         But I'll get something out to the -- I know

 1    time is of the essence.

 2                    All right.  Final words.

 3                    MS. BOYCE:  I just have one small point,

 4    Your Honor.  And now that it seems like we are all

 5    coalescing around provisional ballots, I just want to

 6    make as crystal clear as I can what I think the dispute

 7    is.

 8                    The status quo today is that all of these

 9    voters will cast a provisional ballot if they don't show

10    up and present HAVA ID.  That's already the status quo.

11    All of them will have to do that.  What they're asking

12    for is specifically that these voters be required to

13    show up and provide a driver's license or a Social

14    Security number, and if they have HAVA ID, that's not

15    enough.  So I think that really is where we've landed.

16                    And our position, of course, is that federal

17    law makes clear that the HAVA ID should be enough, and

18    they say, "No, no, no.  You actually need to demand that

19    these people provide a driver's license and Social

20    Security number if they have one."  But I think we have

21    -- assuming we are now coalescing around provisional

22    ballots -- which, again, we disagree that, you know --

23    all the premises that go there.  I think that's where we

24    have landed.  And I just wanted to make crystal clear

25    that we are already in a situation where if you can't

1  provide HAVA ID, you are voting a provisional ballot.

2  That's the world we already live in now.

3  　　　　THE COURT:  Right.  And I think we're -- I

4  don't want to get ahead of this case, but time is of the

5  essence, right?  I have to figure out do I own it?  If I

6  own it, what stays here?  If I don't own it, what gets

7  sent back?  And then I have to figure out how are we

8  going to get through whatever discovery is necessary and

9  appropriate in an expedited fashion given <u>Purcell</u>,

10  whether or not that's anything that applies to this

11  election, or we just say we're off the books for this

12  election, do I retain it, knowing that there's another

13  election in two years that will be affected by these

14  same voter rolls and that will give us time to sort that

15  out?  There are questions to think through.  I will

16  think through them as fast as I can, and we will figure

17  out where we stand with regard to this Court, this suit,

18  and the next steps.

19  　　　　MR. WAXMAN:  Can I just provide Your Honor

20  the citations for -- I stated a -- the broad

21  proposition that requiring these people to vote

22  provisionally would be prohibited both by federal law

23  and state law.

24  　　　　First of all, the voting -- requiring a

25  provisional ballot from a voter who is either, quote,

1    entitled to or, quote, otherwise qualified to vote,

2    violates the Federal Voting Rights Act.  That's

3    52 U.S.C. 10307(a).

4              Section 163-166.12(e) of the North Carolina

5    statutes provides that essentially there is no

6    provisional voting if requisite ID is presented at the

7    time.  And that is also replicated in federal law.  It's

8    52 U.S.C. 21083(b)(2)(B) and 52 U.S.C. 21082(a).

9              And as I said, if we are all coalescing

10   around the fact that what this lawsuit is about is

11   keeping -- if there are any -- ineligible voters among

12   these 225,000 to be able to vote, number one, this --

13   the request in the mandamus petition, and therefore in

14   the constitutional argument, is vastly overbroad and

15   inappropriate.  And in any event, we have a mechanism

16   for doing that, which is the federal and state

17   requirement that every single one of these voters

18   provide HAVA-compliant ID and also photo ID at the time

19   they vote, which is the only thing they would be

20   required to do if it were not -- if they -- if they were

21   somehow required to vote provisionally.  Thank you.

22             THE COURT:  All right.  Thank you,

23   everybody.  We'll be in recess.

24             (Proceedings concluded at 11:40 a.m.)

25

1            **C E R T I F I C A T E**

2

3        I certify that the foregoing is a correct

4   transcript from the record of proceedings in the

5   above-entitled matter.

6

7   /s/Risa A. Kramer                    10/20/2024

8   Risa A. Kramer, RMR, CRR             Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25