Nos. 24-2044, 24-4045

# In the United States Court of Appeals for the Fourth Circuit

REPUBLICAN NATIONAL COMMITTEE; NORTH CAROLINA REPUBLICAN PARTY,
*Plaintiffs-Appellees*

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, IN HER
OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE NORTH CAROLINA STATE
BOARD OF ELECTIONS; ALAN HIRSCH, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE
NORTH CAROLINA STATE BOARD OF ELECTIONS; JEFF CARMON, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS;
STACY EGGERS, IV, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH
CAROLINA STATE BOARD OF ELECTIONS; KEVIN N. LEWIS, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS;
SIOBHAN O'DUFFY MILLEN, IN HER OFFICIAL CAPACITY AS MEMBER OF THE
NORTH CAROLINA STATE BOARD OF ELECTIONS,
*Defendants-Appellants*

DEMOCRATIC NATIONAL COMMITTEE,
*Intervenor/Defendant-Appellant*

————————

From the United States District Court
for the Eastern District of North Carolina
The Honorable Richard E. Myers II (No. 5:24-CV-00547)

————————

## PLAINTIFFS-APPELLEES RESPONSE BRIEF

————————

PHILLIP J. STRACH
JORDAN A. KOONTS
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
301 HILLSBOROUGH ST., SUITE 1400
RALEIGH, NORTH CAROLINA 27603
PH: (919) 329-3800
PHIL.STRACH@NELSONMULLINS.COM
JORDAN.KOONTS@NELSONMULLINS.COM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 5

ISSUES PRESENTED ......................................................................... 6

STATEMENT OF THE CASE ............................................................. 7

    A.   North Carolina Law Creates Threshold Voter Registration Obligations for Defendants. ...................................................... 7

    B.   Plaintiffs File their Complaint in North Carolina State Court After Defendants Refuse to Uphold Their Duties Under State Law. ...................................................................................... 9

    C.   Defendants Remove to Federal Court and the District Court Dismisses Count One and Remands Count Two. ..................... 11

SUMMARY OF ARGUMENT ............................................................ 13

STANDARD OF REVIEW ................................................................. 16

ARGUMENT ..................................................................................... 17

I. This Court Does Not Have Jurisdiction to Consider the District Court's Original Jurisdiction Under 28 U.S.C. § 1331. .................. 17

    A.   The district court must have rejected all grounds for removal for this Court to review the district court's original jurisdiction analysis by invoking section 1443's exception to section 1447(d)'s bar. ........................................................................................ 18

    B.   The appealability of the district court's declination of supplemental jurisdiction under 28 U.S.C. § 1367(c) does not abrogate § 1447(d)'s categorical bar on review of original jurisdiction "on appeal or otherwise." ...................................... 21

    C.   The district court found that several of Defendants' theories of removal jurisdiction were proper. ........................................... 26

    D.   Because the district court found removal to be proper, this Court lacks jurisdiction to review anything beyond the district court's findings regarding 28 U.S.C. §§ 1443(2) and 1367. .................. 27

i

II. The District Court Correctly Decided To Remand The State Constitutional Claim In Count Two. ............................................. 28

    A.   The district court correctly found that precedent forecloses Defendants' 28 U.S.C. § 1443(2) arguments. ............................ 28

    B.   The district court did not abuse its discretion when it declined supplemental jurisdiction under 28 U.S.C. § 1367. .................. 32

III. Even if This Court Had Jurisdiction to Consider the District Court's Original Jurisdiction Analysis, The District Court Properly Declined Such Jurisdiction. ........................................... 36

    A.   The district court properly concluded that it lacked original jurisdiction over Count Two, Plaintiffs' State Constitutional Claim. ...................................................................................... 36

    B.   Count Two is a novel issue of state law which state courts should resolve. ....................................................................... 42

IV. This Court Should Not Reach the Merits of Defendants' Motion to Dismiss Count Two .................................................................... 45

CONCLUSION ............................................................................................ 46

CERTIFICATE OF COMPLIANCE ......................................................... 48

CERTIFICATE OF SERVICE .................................................................. 49

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Bryan v. BellSouth Commc'ns, Inc.,*
   377 F.3d 424 (4th Cir. 2004) ............................................. 23, 24, 25, 45

*Arrington v. City of Raleigh,*
   369 F. App'x 420 (4th Cir. 2010) ..................................................... 35

*B.P. P.L.C. v. Mayor and City Council of Baltimore,*
   593 U.S. 230 (2021) ............................................................... *passim*

*Badalato v. Wish to Give Prod., LLC,*
   2019 WL 3661164 (E.D.N.C. Aug. 6, 2019) ........................................ 44

*Battle v. Seibels Bruce Ins. Co.,*
   288 F.3d 596 (4th Cir. 2002) .................................................. 23, 24, 25

*Blankenship v. Bartlett,*
   363 N.C. 518 (2009) .................................................................... 41

*Brownback v. King,*
   592 U.S. 209 (2021) .................................................................... 45

*Burrell v. Bayer Corp.,*
   918 F.3d 372 (4th Cir. 2019) ......................................................... 36

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
   556 U.S. 635 (2009) ............................................................... *passim*

*Carnegie-Mellon Univ. v. Cohill,*
   484 U.S. 343 (1988) .................................................... 13, 16, 33, 34

*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987) .................................................................... 43

*City of Greenwood v. Peacock,*
   384 U.S. 808 (1966) .................................................................... 31

*Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.,*
   376 N.C. 558 (2021) .................................................................... 12

*Davis v. Glanton,*
   107 F.3d 1044 (3d Cir. 1997) ......................................................... 12

*Dixon v. Coburg Dairy, Inc.,*
   369 F.3d 811 (4th Cir. 2004) ......................................................... 43

*ESAB Grp., Inc. v. Zurich Ins. PLC,*
   685 F.3d 376 (4th Cir. 2012) ......................................................... 25

*Evans v. United States,*
   105 F.4th 606 (4th Cir. 2024) ........................................................ 45

*Flying Pigs, LLC v. RRAJ Franchising, LLC,*
  757 F.3d 177 (4th Cir. 2014) ................................................... 43

*Gunn v. Minton,*
  568 U.S. 251 (2013) ...................................... 15, 36, 37, 38, 39

*Harper v. Hall,*
  886 S.E.2d 393 (N.C. 2023) .......................................... 40-41

*Henderson v. Harmon,*
  102 F.4th 242 (4th Cir. 2024) ......................................... 16

*Hinson v. Norwest Fin. S.C., Inc.,*
  239 F.3d 611 (4th Cir. 2001) .................................... 13, 34

*Koon v. United States,*
  518 U.S. 81 (1996) .......................................................... 25

*Martin v. Hunter's Lessee,*
  14 U.S. 304 (1816) .......................................................... 41

*Mayor & City Council of Baltimore v. BP P.L.C.,*
  31 F.4th 178 (4th Cir. 2022) ......................................... 44

*Mayor & City Council of Baltimore v. BP P.L.C.,*
  388 F. Supp. 3d 538 (D. Md. 2019) ............................... 26

*Minnesota v. National Tea Co.,*
  309 U.S. 551 (1940) .................................. 13, 15, 38, 42

*Moore v. Harper,*
  600 U.S. 1 (2023) .......................................................... 24

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
  429 U.S. 274 (1977) ...................................................... 34

*Mulcahey v. Columbia Organic Chems. Co.,*
  29 F.3d 148 (4th Cir. 1994) ........................................... 17

*Old Dominion Electric Cooperative v. PJM Interconnection,* LLC,
  24 F.4th 271 (4th Cir. 2022) .................................... 36, 39

*Pressl v. Appalachian Power Company,*
  842 F.3d 299 (4th Cir. 2016) .................................... 37, 38

*Ripley v. Foster Wheeler LLC,*
  841 F.3d 207 (4th Cir. 2016) ......................................... 16

*Shanaghan v. Cahill,*
  58 F.3d 106 (4th Cir. 1995) ........................................... 16

*State of Georgia v. Rachel,*
  384 U.S. 780 (1966) ................................ 14, 28, 30, 31

*State v. Arrington,*
  311 N.C. 633 (1984) ...................................................... 41

*State v. Diaz-Thomas,*
 382 N.C. 640, 888 S.E.2d 368 (2022) .....................................12
*State v. Kelliher,*
 381 N.C. 558 (2022) ...............................................................38
*Vlaming v. W. Point Sch. Bd.,*
 10 F.4th 300 (4th Cir. 2021) ..........................................*passim*
*Vlaming v. W. Point Sch. Bd.,*
 480 F. Supp. 3d 711 (E.D. Va. 2020) .....................................21
*Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27,*
 728 F.3d 354 (4th Cir. 2013) ....................................................3
*Waybright v. Frederick County, MD,*
 528 F.3d 199 (4th Cir. 2008) ..................................................35
*Yashenko v. Harrah's NC Casino Co., LLC,*
 446 F.3d 541 (4th Cir. 2006) ..................................................34

**Statutes**
28 U.S.C. § 1291 .................................................................5, 25
28 U.S.C. § 1441 .............................................................*passim*
28 U.S.C. § 1443 .............................................................*passim*
28 U.S.C. § 1447 .............................................................*passim*
52 U.S.C. §21083 .........................................................8, 9, 44
52 U.S.C § 20501 ...................................................................30


N.C. Gen. Stat. §163-82.4...............................................*passim*
N.C. Gen. Stat. § 4-1.............................................................12
N.C. Gen. Stat. § 163-82.11...........................................*passim*

**Constitutional Provisions**
U.S. Const. art. I, § IV, cl. I.................................................24


N.C. Const. art. I § 19......................................................*passim*
N.C. Const. art. VI § 3...........................................................7

**Rules**
Fed. R. Civ. P. 12.............................................................5, 45
Fed. R. Evid. 201 ..................................................................3

## INTRODUCTION

For years, Defendants' statewide voter registration form violated state law. Specifically, Defendants failed to collect statutorily required information (either the last four digits of a registrant's Social Security Number or their driver's license number) from approximately 225,000 persons who registered to vote in North Carolina under the erroneous form. As Defendants astutely recognized, this information is required to be collected by law *before* a registration form may be accepted or processed. *See* N.C. Gen. Stat. § 163-82.4(a)-(c); *see also* Help America Vote Act of 2002 ("HAVA"), Pub. L. No. 103-31, 116 Stat. 1666. When a concerned citizen identified these errors, Defendants agreed to change the statewide voter registration form moving forward. However, Defendants repeatedly refused to provide any retrospective relief, declining to do *anything* to confirm that each of the 225,000 affected registrants were otherwise qualified to vote in North Carolina.

Plaintiffs took prompt action to correct this error before it could dilute the votes of lawful North Carolina voters. Since Defendants steadfastly refused to uphold their duties under North Carolina law, Plaintiffs were forced to seek relief in *state court* raising exclusively *state*

*law* causes of action. Seeking relief for Defendants ongoing violations of their state statutory duties, Plaintiffs brought two claims—a North Carolina common law writ of mandamus arising from Defendants' failures to ensure accurate statewide voter registration lists under N.C. Gen. Stat. § 163-82.11 ("Count One"), and a claim for mandatory injunctive relief resulting from Defendants' violations of article I section 19 of the North Carolina Constitution ("Count Two"). JA38-40. Defendants still removed the case to federal court.

Contrary to the hyperbolic characterizations replete in the opening briefs, Plaintiffs' Complaint does not seek to "purge nearly a quarter million voters from the State's voter rolls." Instead, due to Defendants' refusal to comply with state law, Plaintiffs seek a court-ordered plan requiring Defendants to do what they should have done months ago: confirm registrant eligibility.

After finding removal jurisdiction and dismissing Count One the district court correctly remanded Count Two for further proceedings in state court, observing the novel issues of North Carolina law presented. Indeed, state courts—not federal courts—should determine unsettled questions of state law. The district court properly recognized the

significant comity concerns and declined Defendants' invitation. Now, Defendants and Intervenor-Defendant ask this Court to overlook those realities and inject itself into the fray based on little more than hyperbole and alarmism.[1]

Attempting to salvage their do-nothing approach, Defendants and Intervenor-Defendant now conflate state and federal law in an effort to manufacture federal jurisdiction and delay or avoid performing their duties under North Carolina law. To accomplish this, Defendants repeatedly raise the specter of mass voter roll purges, voter disenfranchisement, and federal statutes such as the National Voter Registration Act ("NVRA"), Pub. L. No. 103-31, 107 Stat. 77. These concerns, Defendants contend, are what warrant keeping the case in

---

[1] Intervenor-Defendant attempts to cast doubt over the proprieties of Plaintiffs' claims for relief arising from Defendants' violations of North Carolina law are misplaced and of no effect here. *See* Doc. 48 at p. 3 fn. 1; *but see Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013) (holding that judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters."); *see also* Fed. R. Evid. 201(b) (providing that a court in its discretion may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

federal court. Conclusory language aside, Defendants' arguments fail, thus warranting a remand to state court.

The district court properly remanded Count Two by declining supplemental jurisdiction. Having accepted at least some of Defendants' asserted grounds for removal and jurisdiction, the district court's order is only reviewable insofar as it specifically analyzed 28 U.S.C. §§ 1443(2) and 1367. Any further inquiry is foreclosed by *B.P. P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 141 S.Ct. 1532, 1537-38 (2021). The district court's analyses on both of these statutes withstand appellate scrutiny. Moreover, even if this Court could review the district court's determination that it lacked original jurisdiction over Count Two (it cannot), the district court's decision was correct. Thus, the district court's remand order should remain in full effect, and this Court should affirm the same.

# JURISDICTIONAL STATEMENT

This case was improperly removed—nearly a month after Plaintiffs' filing seeking expedited relief—pursuant to 28 U.S.C. §§ 1331, 1441(a), 1443(2) and 1367(a). JA7-9. Specifically, the district court lacked original jurisdiction over both counts pursuant to 28 U.S.C. § 1331. *Id.*

The district court entered an order on October 17, 2024 in which it held (1) it lacked original jurisdiction pursuant to 28 U.S.C. § 1331 over Count Two; (2) it possessed original jurisdiction over Count One pursuant to 28 U.S.C. § 1331; and (3) it lacked jurisdiction pursuant to 28 U.S.C. § 1443(2). JA559-602. Next, the district court dismissed Count One under Fed. R. Civ. P. 12(b)(6). *Id.* After dismissing Count One, the district court declined to exercise supplemental jurisdiction over the state constitutional claim presented in Count Two. *Id.*

This Court has jurisdiction <u>only</u> to review the district court's declination of supplemental jurisdiction under the final decision rule of 28 U.S.C. § 1291 and its determination of subject matter jurisdiction under 28 U.S.C. § 1443(d) under the enumerated exceptions to the general bar on appellate review of remand orders found in 28 U.S.C. § 1447(d). Because the district court accepted Defendants' theory of

removal under 28 U.S.C. § 1441(a), thus finding original jurisdiction over Count One via 28 U.S.C. § 1331, and supplemental jurisdiction over Count Two via 28 U.S.C. § 1367, this Court does not possess jurisdiction to independently review the entirety of the district court's order. *See B.P. P.L.C.*, 141 S.Ct. at 1537-38. Instead, this Court's jurisdiction is limited to those grounds which possess independent reviewability—i.e., the district court's analysis of 28 U.S.C. §§ 1443(2) and 1367.

## ISSUES PRESENTED

1. Does this Court lack jurisdiction to review every basis for removal raised by defendants below?

2. Did the district court correctly remand the North Carolina constitutional claim in Count Two?

## STATEMENT OF THE CASE

### A. North Carolina Law Creates Threshold Voter Registration Obligations for Defendants.

In North Carolina, an individual must register to vote prior to voting. *See* N.C. Gen. Stat. §§ 163-54, 163-82.1(a); *see also* N.C. Const. art. VI, § 3(1). JA31 ¶ 45; JA38 ¶ 82. North Carolina General Statute § 163-82.4 *et seq.* establishes threshold requirements of information Defendants and their county boards of election must obtain from a registrant as part of the registration process. JA31 ¶ 46 Of the enumerated items Defendants are required to obtain from a registrant, the most important for the present matter is the person's last four digits of their social security number or their driver's license number. *Id.* Should a person not have this information, North Carolina law contemplates other methods by which Defendants and their elections officials may satisfy the statutory registration requirements. *Id.* (citing N.C. Gen. Stat. §163-82.4(a)). Absent this information, Defendants cannot and should not process or accept a voter registration application.

Once a registration is accepted and the voter is placed on the statewide voter registration list, N.C. Gen. Stat. § 163-82.11 obligates Defendants to maintain the list's accuracy in accordance with a host of

state statutes, along with HAVA and its relevant provisions. *See* JA35 ¶¶ 62-63. In this respect, N.C. Gen. Stat. § 163-82.11(c) takes some—but importantly not all—guidance from HAVA's directives. *Id.* However, even HAVA itself defers to <u>the states</u> to determine whether the registration information they collect meets the statute's requirements. *Id.* ¶ 62 (citing 52 U.S.C. § 21083(a)(5)(A)(iii)). Thus, in both form and function, state law dictates what registration information is required on the front end <u>before</u> an application may be processed. And once that application is processed, state law imposes a duty to ensure the accuracy of the state's voter registration lists. *See* JA38-39 ¶¶ 82-85.

Defendants failed to uphold their threshold, prophylactic duty when they allowed 225,000 people to register to vote in North Carolina without collecting all of the statutorily required information set forth in N.C. Gen. Stat. § 163-82.4. *Id.* Then, even after impermissibly accepting those improper registration applications, Defendants refused to take any actions to confirm the registrants' qualifications to vote in North Carolina. As such, Defendants failed to uphold their state law duty. After Defendants repeatedly rejected requests for retrospective relief from the same concerned citizen who identified the illegal registration form in the

first place, JA38 ¶ 84, it became clear that Defendants would not act unless ordered to do so by a court.

**B. Plaintiffs File their Complaint in North Carolina State Court After Defendants Refuse to Uphold Their Duties Under State Law.**

Plaintiffs filed their Complaint against the North Carolina State Board of Elections ("NCSBE") in Wake County Superior Court on August 23, 2024. JA22-43. Plaintiffs allege that the NCSBE, its members, and its executive director (collectively, "Defendants") violated state law by allowing potentially ineligible applicants to register to vote without collecting the required identification information under state law in the first instance. N.C. Gen. Stat. §163-82.4(a) (requiring county boards to collect certain information in a voter application form); JA23 ¶ 3. It is undisputed that NCSBE's previous voter registration form made optional the fields on the form where applicants are required under federal law to provide a driver's license number or the last 4 digits of their social security number, *see* 52 U.S.C. §21083(a)(5)(A), and that this omission resulted in the registration of approximately 225,000 applicants who did not supply information required by state law or HAVA. JA30-31 ¶¶ 42-43.

Count One—now dismissed—sought a writ of mandamus to address an alleged violation of N.C. Gen. Stat. §163-82.11(c) for failing to collect the required voter information in the first instance and, as a result, failing to maintain North Carolina's voter rolls in compliance with state law HAVA. JA38-39 ¶¶ 77-88. Count Two—the subject of this appeal—seeks a permanent injunction to stop the NCSBE from further violating Plaintiffs' constitutional rights under Article I, Sec. 19 of the North Carolina Constitution by failing to collect all required identification information under state law. *Id*. ¶¶ 90-92. Recognizing the urgency of the issue, Plaintiffs requested "a court-approved plan to be completed no later than September 6" that would identify and remove ineligible registrants or, in the alternative, require voters who did not provide HAVA identification in their application to cast a provisional ballot. JA40, Prayer for Relief ¶ 2.

After Defendants accepted service on August 27, Plaintiffs sought expedited discovery given the exigencies of the matter on August 29, 2024. Shortly thereafter, August 30, 2024, the Democratic National Committee ("DNC" or "Intervenor-Defendant") moved to intervene as a defendant. JA-70-7.

### C. Defendants Remove to Federal Court and the District Court Dismisses Count One and Remands Count Two.

In the eleventh hour, on September 23, 2024, Defendants removed to federal district court. Plaintiffs filed an emergency motion to remand to the superior court on October 1. JA352-356. On October 17, the district court held a hearing on the motions. JA372-373. The district court then issued its opinion later that same day. JA559-602.

In that opinion the district court concluded that it had original federal jurisdiction over Count One under 28 U.S.C. §1331 as it raised a disputed and substantial issue of federal law, and supplemental jurisdiction over Count Two. JA562-597. Accordingly, the court found removal was proper under 28 U.S.C. §1441(a). *Id.* The district court analyzed and rejected Defendants' alternative theory for removal under 28 U.S.C. §1443(2), because "[n]either Section 20507(c)(2)(A) nor Section 1010(a)(2)(B) provide 'for specific civil rights stated in terms of racial equality.'" JA593 (quoting *State of Georgia v. Rachel*, 384 U.S. 780, 792 (1966)). Refuting the application of § 1443(2) to these claims, the court specifically noted that "the party seeking removal must cite a civil rights statute that deals in terms [of] racial equality and make some showing that their refusal to act actually involves considerations of racial equality

or discrimination." JA595-96 (citing *Davis v. Glanton*, 107 F.3d 1044, 1049 (3d Cir. 1997)). Because "Defendants' refusal to act does not have anything to do with racial equality," the court concluded that it only had subject matter jurisdiction pursuant to §§ 1331 and 1441(a). JA596-97.

After determining it had original jurisdiction of Count One, the district court dismissed it with prejudice, concluding that Plaintiffs lacked a private right of action under federal or state law.[2] JA597-601. As to Count Two, the court declined to exercise supplemental jurisdiction over the "novel" issue of state constitutional law: "[W]hether the State's noncompliance with state and federal election law can give rise to state

---

[2] Plaintiffs maintain that this ruling was incorrect for several reasons including, the district court's misclassification of the mandamus relief Plaintiffs sought in Count 1. The North Carolina Supreme Court has made clear that North Carolina law treats private mandamus actions differently than federal courts. *See Committee to Elect Dan Forest v. Employees Political Action Committee*, 376 N.C. 558, 569, 853 S.E.2d 698, (2021) (discussing North Carolina's incorporation of "the prerogative writ of mandamus" through the common law); N.C. Gen. Stat. § 4-1 ("Common law declared to be in force"). Contrary to the district court's order, *State v. Diaz-Thomas*, 382 N.C. 640, 652, 888 S.E.2d 368, 378 (2022) did not alter the right to common law civil mandamus standard in North Carolina trial courts. *See* JA600 n. 8. Instead, *State v. Diaz-Thomas* is a criminal case involving an appellate court's issuing of a writ of mandamus under Rule 22 of the North Carolina Rules of Appellate Procedure. Here Plaintiffs seek a civil common law writ of mandamus in the trial court. This further speaks to the unique nature of the state law claims at issue.

constitutional injury." JA601-602. Citing "compelling [federalism] reasons" the court further noted that declining supplemental jurisdiction was appropriate because "state courts should decide the scope and extent of state constitutional rights." JA601 (quotation marks omitted) (citing 28 U.S.C. §1367(c)(4); *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940)). The court then remanded the case to state court in order to "best promote the values of economy, convenience, fairness and comity." JA602 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988); *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001)). At Defendants' request, the court stayed remand until October 22 to allow for this appeal. JA620 at 7-12.

## SUMMARY OF ARGUMENT

The district court correctly remanded Count Two.

1. This Court may only review the district court's holding of no subject matter jurisdiction under 28 U.S.C. § 1443 for Count Two, and declination of supplemental jurisdiction under 28 U.S.C. § 1367 due to the prohibition on review of subject matter jurisdiction in remand orders pursuant to 28 U.S.C. § 1447(d). Section 1447(d) provides that subject matter jurisdiction determinations in remand orders are "not reviewable

on appeal or otherwise." The Supreme Court in *B.P. P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 141 S.Ct. 1532 (2021) noted while federal circuit courts have held that § 1447(d) prevented review of entire remand orders where § 1443 was one of many grounds for removal, an appellate court could review *all* grounds for removal where the lower court denied jurisdiction under *all* grounds raised in support of removal. Here, the district court found removal proper under 28 U.S.C. § 1441(a), so the Court lacks jurisdiction to review the other grounds the Court rejected. The question of whether a remand for declination of supplemental jurisdiction has not been answered by the Supreme Court, but would meet the same fate as Defendants' arguments under *B.P.*

2.    The district court's analysis under 28 U.S.C. §§ 1367 and 1443 was correct.

First, well-settled precent establishes that subject matter jurisdiction under 28 U.S.C. § 1443(2) requires a law concerning racial equality. Neither federal statute invoked by Defendants (NVRA and HAVA) explicitly address racial equality as required by *State of Georgia v. Rachel*, 384 U.S. 780 (1966) and *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300 (4th Cir. 2021).

Second, the district court did not abuse its discretion in declining supplemental jurisdiction under 28 U.S.C. § 1367 for concerns of comity. Federalism concerns are most clearly presented in circumstances where federal courts are called on to interpret novel issues of state constitutional law. Indeed, "[i]t is fundamental that state courts be left free and unfettered [by federal courts] in interpreting their state constitutions." *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).

3.    Even if this Court had jurisdiction to consider the district court's original jurisdiction analysis of Count Two, the district court properly held that there was no original jurisdiction over that state constitutional claim. First, the same concerns of disrupting the federal-state balance that led to the district court declining supplemental prevents original jurisdiction under *Gunn v. Minton*, 568 U.S. 251 (2013). Second, even if the district court could have decided the state constitutional claim without disrupting the balance of federalism, Count Two does not necessarily raise a substantial, actually disputed question of federal law. Third, a federal defense like that raised by Defendants here cannot be the basis for removal.

This Court should affirm the district court's decision and allow this matter to promptly proceed through North Carolina's state courts to resolve the remaining issue of state constitutional law.

## STANDARD OF REVIEW

On appeal, a district court's decision to decline to exercise supplemental jurisdiction is reviewed for abuse of discretion only. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009); *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024). When all federal claims have been extinguished, the district court has "wide latitude in determining whether or not to retain jurisdiction over state claims," *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), and it is generally most appropriate to not. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c) (holding that "in the usual case" when all federal-law claims are eliminated before trial, declining jurisdiction over remaining state-law claims is proper).

"We review *de novo* issues of subject matter jurisdiction, including removal." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). "Because removal jurisdiction raises significant federalism concerns, we

must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

## ARGUMENT

Under the plain text of 28 U.S.C. 1447(d), along with clear directives set forth in *B.P. P.L.C. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 141 S.Ct. 1532 (2021) (hereinafter "*B.P.*"), this Court does not have jurisdiction to review the district court's original jurisdiction analysis under 28 U.S.C. § 1331. To the extent this Court is empowered to review the district court's analyses at all, such review is limited to the order's review—and rejection—of removal under 28 U.S.C. § 1443(2) and supplemental jurisdiction. Both grounds soundly withstand appellate review. Even assuming this Court had jurisdiction to review the merits of the district court's § 1331 analysis, that too passes muster.

## I. This Court Does Not Have Jurisdiction to Consider the District Court's Original Jurisdiction Under 28 U.S.C. § 1331.

In its briefing order the Court asked the parties to address the following:

> "The district court remanded because it declined to exercise supplemental jurisdiction over the state constitutional claim. On appeal, does this court have jurisdiction to consider whether the district court possessed original jurisdiction over that claim under 28 U.S.C. § 1331?"

[Doc. 37]. Defendants and Intervenor-Defendants argued that the Court has jurisdiction over the district court's determination of no original jurisdiction over Count Two through two theories: (1) the Court's decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) is not barred by the general prohibition on appeals of remand orders contained in 28 U.S.C. § 1447(d) and therefore the entire order is reviewable on appeal; and (2) the Court can review the entire order on appeal because 28 U.S.C. § 1443(2) was a stated basis for removal. Neither theory is supported by law, and the answer to the question presented by this Court is "no."

## A. The district court must have rejected all grounds for removal for this Court to review the district court's original jurisdiction analysis by invoking section 1443's exception to section 1447(d)'s bar.

While Appellants argue *B.P.* permits review of an entire remand order because Defendants invoked section 1443(2) in its removal, *B.P.* actually dictates the opposite.

There are two narrow exceptions to § 1447(d)'s general prohibition of review "on appeal or otherwise" of orders to remand: removals based on 28 U.S.C. §§ 1442 and 1443. *See* 28 U.S.C. § 1447(d). In *B.P* the

Supreme Court confronted the question of whether a district court's remand order rejecting removal based on, among other grounds, 28 U.S.C. §§ 1442 or 1443, meant that the entire order could be reviewed on appeal under 28 U.S.C. § 1447(d), or if only the portion of the order dealing specifically with § 1443 was subject to appellate review. 141 S.Ct. at 1536. In reviewing the text of § 1447(d), the Supreme Court in *B.P.* held that the statute allowed an entire remand order to be reviewable on appeal when § 1443 was one of the grounds for removal. *Id.* at 1537-38. This, the Supreme Court found, was specifically covered by § 1447(d). *Id.*

Critically, the Supreme Court in *B.P.* grounded its holding in the fact that the " 'order remanding a case' here rejected *all* of the defendants' grounds for removal…." *Id.* at 1533 (emphasis in original). And since one of the *B.P.* defendants' purported grounds for removal was § 1443, the Supreme Court determined that appellate review of the entire district court order was proper under § 1447(d).

Taken at face value, *B.P.* would appear to indicate that a full review of the district court's order here—including its original jurisdiction—would be appropriately within this Court's purview. However, *B.P.* actually confirms this Court's lack of jurisdiction to conduct such an

analysis. This conclusion is buttressed by the Supreme Court in *B.P.* resting its reading of § 1447(d) upon the fact that the district court had rejected <u>all</u> of defendants' grounds for removal. *Id.* at 1537. This wholesale rejection of each and every one of defendants' removal theories was what the Supreme Court latched onto in determining that the district court's remand should be reviewed *in its entirety* as opposed to the portion analyzing § 1443. *Id.* ("In this case, the district court's remand order rejected *all* of the defendants' grounds for removal.") (emphasis in original). Based upon the district court's comprehensive rejection of defendants' removal arguments and its subsequent remand, the Supreme Court in *B.P.* determined that this specific set of circumstances allowed the appellate court to review every aspect of the order under § 1447(d). *Id.* at 1538 ("[I]t would seem to follow that, when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them.").

The matter before this Court stands in stark contrast to what the Supreme Court was confronted with in *B.P.* Here, the district court actually accepted several of Defendants' theories of removal jurisdiction under 28 U.S.C. §§ 1331, 1441(a), and 1367. Thus, *B.P.*'s "whole order"

directive under § 1447 is inapposite. This principle has been reaffirmed by other foundational cases within this circuit where appellate review of a whole remand order was found to be proper. *Compare Vlaming v. W. Point Sch. Bd.*, 480 F. Supp. 3d 711 (E.D. Va. 2020) (declining all asserted grounds for removal, including § 1443(2)) *with Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 305-06 (4th Cir. 2021) (citing *B.P. P.L.C. v. Mayor & City Council of Baltimore*, 141 S.Ct. 1532, 1538 (2021)).

Further, in light of *B.P.*, the fact that the district court found jurisdiction under certain statutes raised by Defendants suggests that the entire order is not reviewable on appeal.

## B. The appealability of the district court's declination of supplemental jurisdiction under 28 U.S.C. § 1367(c) does not abrogate § 1447(d)'s categorical bar on review of original jurisdiction "on appeal or otherwise."

The plain language of 28 U.S.C. § 1447(d) generally prohibits review of orders to remand "on appeal or otherwise." *See* 28 U.S.C. § 1447(d). The Supreme Court has interpreted section 1447(d) *in pari materia* with section 1447(c) to determine that section 1447(d) only bars appellate review of remand orders that are based on subject matter jurisdiction. *Carlsbad*, 556 U.S. at 638. "When a district court remands claims to a state court after declining to exercise supplemental

jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)." *Id.* at 641. As such, the Supreme Court has generally approved of reviewing district court decisions to decline supplemental jurisdiction.

But the Supreme Court did not hold in *Carlsbad* or since then that the entirety of an order remanding based on declining supplemental jurisdiction is reviewable on appeal. Notably, in *Carlsbad*, the Supreme Court premised its holding on the fact that the district court had original jurisdiction over the federal RICO claim and supplemental jurisdiction over the related state law claims, noting that the district court's "decision declining to exercise that statutory authority was not based on a jurisdictional defect but on its discretionary choice not to hear the claims despite its subject-matter jurisdiction over them." *Id.* at 640-41. In other words, the Supreme Court did not even consider whether the district court had original jurisdiction over the state law claims.

The two Fourth Circuit cases cited by Defendants do not support the notion that a district court's decision that it lacks original jurisdiction under section 1331 is "reviewable on appeal or otherwise" simply because the supplemental jurisdiction determination is appealable. First, both

cases were issued two decades before *B.P.* and its progeny. Second, the facts of those cases differ significantly from the present case, rendering their relevance weak and outdated.

In *Battle*, all claims at issue arose from a dispute over a flood insurance policy issued under the National Flood Insurance Program ("NFIP"). *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 598 (4th Cir. 2002). Flood insurance is a uniquely federal monolith. *Id.* at 599. Even when private insurers issue a flood insurance policy, all policies must "mirror the terms and conditions of the [Standard Flood Insurance Policy promulgated by the Federal Emergency Management Agency], which terms and conditions cannot be varied or waived other than by the express written consent of the Federal Insurance Administrator." *Id.* In fact, all private flood insurance coverage must "arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the [NFIP]" *Id.*

Similarly, *Bryan v. BellSouth Commc'ns, Inc.*, dealt with the federally-dominated telecommunications industry. There, all claims were based on a dispute over how the defendant passed on costs of carrier tariffs to consumers. 377 F.3d 424, 425-27 (4th Cir. 2004). The Federal

Communications Commission set the tariff rate and regulated how those costs could be passed on to consumers. *Id.* at 425-26. Based on this all-consuming federal overlay, the defendants removed to federal court under 28 U.S.C. § 1447. *Id.* at 427.

Contrast that with the Elections Clause, which vests states with the primary responsibility for the mechanics of elections, with Congress retaining only the power to preempt state regulations where necessary considering other protected rights. U.S. Const. art. I, § IV, cl. I; *Moore v. Harper*, 600 U.S. 1, 37 (2023). Put another way, federal law runs the show for flood insurance and telecommunications, but merely sets the stage for elections. With this critical factual distinction in mind, *Battle* & *Bryan* lose their comparative punch.

In *Battle*, the federal question was so apparent that remanding the case was an abuse of discretion, which was the way the Court reviewed the lower court's decision. "[T]he district court *lacked discretion to remand*," said the Court, "because the district court *clearly* possessed subject matter jurisdiction over the Remaining Claims pursuant to 28 U.S.C. § 1331." 288 F.3d at 606 (emphasis added). In fact, nowhere in *Battle* does the Court deal with section 1447(d), further emphasizing that

rather than asserting ironclad jurisdiction over the entire order, the *Battle* court was merely correcting a clearly erroneous oversight of the lower court, as the abuse of discretion standard allows. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 393 (4th Cir. 2012) ("an error of law is, by definition, an abuse of discretion"); *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2048, 135 L. Ed. 2d 392 (1996) ("abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions").

Moreover, in *Bryan*, this Court addressed the question of whether the remand order was appealable under 28 U.S.C. § 1291 but did not meaningfully engage with the question of whether the portions of the order discussing section 1331, which "is not reviewable on appeal or otherwise" under section 1447(d), are exempted from review on appeal. Instead, the *Bryan* Court assumed it could review original jurisdiction over the state law claim without explaining how it reached that conclusion despite section 1447(d)'s admonition that such orders are "not reviewable by appeal or otherwise."

In short, the appealability of the district court declining supplemental jurisdiction under section 1367(c) does not abrogate the

general rule under section 1447(d) that subject matter jurisdiction determinations as the basis for remand are "not reviewable on appeal or otherwise."

## C. The district court found that several of Defendants' theories of removal jurisdiction were proper.

Unlike in *B.P.* or *Vlaming*, the district court here found that Defendants' removal was proper under 28 U.S.C. § 1441(a). *Compare Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) (denying each of defendants' alleged grounds for removal), *and Vlaming*, 10 F.4th at 715 (same), *with* JA591 (finding removal was proper under 28 U.S.C. § 1441(a)). In denying Plaintiffs' Motion to Remand, the district court further found that it had subject matter jurisdiction over Count One of the complaint under 28 U.S.C. § 1331, and supplemental jurisdiction over Count Two under 28 U.S.C. § 1367. JA591. Far from completely rejecting Defendants' theories of removal, the district court embraced them. JA597 (concluding that, while "Defendants have not met their burden in establishing removal jurisdiction under Section 1443(2)," the court nevertheless concluded that it had subject matter jurisdiction under 28 U.S.C. § 1331 and that defendants' removal was proper under 28 U.S.C. § 1441(a)).

**D. Because the district court found removal to be proper, this Court lacks jurisdiction to review anything beyond the district court's findings regarding 28 U.S.C. §§ 1443(2) and 1367.**

Understanding that *B.P.* and its progeny dictate that an entire remand order may only be reviewed when the district court wholly rejects all alleged bases for removal and that rejection necessarily entails one of the two narrow exceptions in 28 U.S.C. § 1447(d), the question then becomes what analyses the court has jurisdiction to review here. This answer is twofold: first, this Court is empowered to review the district court's declining jurisdiction under 28 U.S.C. § 1443(2) as explicitly contemplated by 28 U.S.C. § 1447(d). Second, this Court may review the portion of the district court's order denying supplemental jurisdiction under 28 U.S.C. § 1367. *See Carlsbad*, 556 U.S. at 638, 640-41 (determining that a remand based on declining subject matter jurisdiction is not a determination of subject matter jurisdiction for the purpose of 28 U.S.C. § 1447(d)).

## II. The District Court Correctly Decided To Remand The State Constitutional Claim In Count Two.

### A. The district court correctly found that precedent forecloses Defendants' 28 U.S.C. § 1443(2) arguments.

Section 1443(2) permits removal in cases involving "any act under color of authority derived from any law providing for equal rights," or the refusal "to do any act on the ground that it would be inconsistent with such law." 28 U.S.C. § 1443(2). The district court correctly identified "[t]he problem with [Defendants'] theory"—namely, that the Supreme Court "has limited the meaning of a 'law providing for equal rights' in § 1443 to only those concerning racial equality." JA592 (quoting *Vlaming*, 10 F.4th at 309).

The United States Supreme Court has precluded the possibility of removal jurisdiction under § 1443 for causes of action under laws that "are phrased in terms of general application available to all persons or citizens," as opposed to "specific language of racial equality." JA573 (quoting *Rachel*, 385 U.S. at 792). Despite Defendant's contentions to the contrary, the statutes in question are "phrased in terms of general application available to all persons or citizens" and do not contain "the

*specific language of racial equality* that § 1443 demands." *Vlaming*, 10 F.4th at 309 (emphasis added).

Defendants agree that removal under § 1443(2) requires a law concerning racial equality. Doc. 49 p. 50-51 (quoting *Vlaming*, F.4th at 309). But the federal laws at issue here, NVRA and HAVA, do not explicitly deal with racial equality as required by *Vlaming*. Defendants summarily claim that one of the "central purposes" of the NVRA is to "promote racial equality." Doc. 49 p. 51. In support, they point to the congressional findings in statute which indicate that the NVRA was enacted to "eliminate 'discriminatory and unfair registration laws and procedures' that 'have a direct and damaging effect on voter participation . . . and disproportionately harm voter participation by *various groups, including racial minorities*." *Id.* at p. 51-52 (quoting 52 U.S.C. § 20501(a)(3)). Defendants point to no "specific language" regarding racial equity that § 1443 demands.

Moreover, this language is far less convincing than defendants would like it to be. The general concern highlighted by the congressional finding was a desire to remedy laws that have a damaging effect on "voter participation" by "various groups." While racial minorities were one of

the groups that could be negatively affected by discriminatory and unfair registration laws, the findings cited by the defendants in 52 U.S.C § 20501 display concern for harms to many groups rather than specific focus on racial equality.

Defendants also fail to adequately explain why removal was denied by the Supreme Court in *Rachel* if all that is required is that a law be the "kind of law" that provides for equal rights. In *Rachel*, the Supreme Court held that "broad contentions under . . . the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443." 384 U.S. at 792. One would be hard pressed to identify a law that was more the "kind of law" that provides for equal rights than the Fourteenth Amendment, but removal was still improper under § 1443 because "the guarantees of those clauses are phrased in terms of general application . . . rather than the specific language of racial equality that § 1443 demands." *Id.*

Furthermore, even if the NVRA were a law that would support removal under § 1443, the circumstances under which defendants seek to remove in this case do not apply. Defendants seek removal specifically because they are refusing to employ the remedy requested by Plaintiffs

on the grounds that such an action would violate the NVRA.[3] Under the second clause of 28 U.S.C. § 1443(2), a defendant may remove to federal court for "refusing to do any act on the ground that it would be inconsistent with [a law providing for equal rights]." In *City of Greenwood v. Peacock*, 384 U.S. 808 (1966), the Supreme Court observed that the refusal to act phrase was added by congress "[t]o enable State officers, who shall refuse to enforce State laws discriminating . . . on account of race or color, to remove their cases to the United States courts." *Id.* at 824 n.22.

The district court rightly observed *Rachel* and *Vlaming*'s directives and found that Defendants failed to identify any discriminatory law that they are refusing to enforce before concluding that Defendants failed to establish removal under § 1443(2). This sound analysis remains true, even under *de novo* review.

---

[3] Plaintiffs note that it is not settled whether a person who was not properly registered to vote in the first place is even a covered voter under the scope of the NVRA's 90-day quiet period, a fact squarely considered by the district court. *See* JA656 at 24 through JA657 at 6. In response, Intervenor-Defendant tellingly deferred to the judgment of state officials under state law. JA657 at 7-17.

### B. The district court did not abuse its discretion when it declined supplemental jurisdiction under 28 U.S.C. § 1367.

In *Carlsbad,* the Supreme Court held that 28 U.S.C. § 1447(d) only bars appellate review of remand orders that are based on subject matter jurisdiction. 556 U.S. at 638 ("This Court has consistently held that § 1447(d) must be read *in pari materia* with § 1447(c), thus limiting the remands barred from appellate review by § 1447(d) to those that are based on a ground specified in § 1447(c)."). "When a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)." *Id.* at 641. In other words, the district court's declination of supplemental jurisdiction is reviewable on appeal.

The district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over Count Two after dismissing Count One. A district court "may decline to exercise supplemental jurisdiction" where "the claim raises a complex or novel <u>issue</u> of state law," "the claim substantially predominates over the claim . . . over which the district court has original jurisdiction," or "the district court has

dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1)-(3). Declination of supplemental jurisdiction was appropriate under each of these provisions.

The district court appropriately declined to exercise supplemental jurisdiction under § 1367(c)(1) because, as discussed extensively *supra*, this matter involves a novel issue of state law. Likewise, declining supplemental jurisdiction under §§ 1367(c)(2) and (c)(3) was merited because the district court dismissed Count One. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. Because the state constitutional claim is the only remaining claim, it *de facto* "substantially predominates" over Count One. Moreover, "the district court has dismissed [Count One] over which it has original jurisdiction." § 1447(c)(2). The district court did not have original jurisdiction over Count Two and declining supplemental jurisdiction under § 1447(c)(3) was proper.

The district court's decision to decline supplemental jurisdiction was not reversible error, despite Intervenor-Defendant's arguments thereunder. "Once a district court has dismissed the federal claims in an action, it maintains 'wide discretion' to dismiss the supplemental state law claims over which it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 553 (4th Cir. 2006) (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 353-54). Moreover, federal courts "are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). A district court has "*inherent* power to remand removed State claims when the federal claims drop out of the case." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (emphasis in original) (quoting *Carnegie-Mellon University*, 484 U.S. at 351, 355 n. 11). Here, once the sole potentially federal claim was dismissed, the district court had broad discretion to decline supplemental jurisdiction. Here, that discretion was appropriately exercised as now North Carolina courts will interpret the North Carolina Constitution.

Federal courts routinely and appropriately decline supplemental jurisdiction under 28 U.S.C. § 1367(c) after disposing of federal claims.

For example, in *Arrington v. City of Raleigh*, 369 F. App'x 420 (4th Cir. 2010) this Court held that the district court should have *sua sponte* declined supplemental jurisdiction. Despite the plaintiff not requesting remand, the court held that "both the plain text of § 1367(c) as well as our precedents make clear that in this instance, that discretion should have been exercised to decline jurisdiction." *Id.* at 422-23. "Indeed, our precedents evince a strong preference that state law issues be left to state courts in the absence of diversity or federal question jurisdiction under circumstances such as those reflected here." *Id.* at 423.

"With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so." *Waybright v. Frederick County, MD*, 528 F.3d 199, 209 (4th Cir. 2008), *cert. denied*, 555 U.S. 1069 (2008). Defendants have not made a strong showing that the district court's decision to remand Count Two for lack of supplemental jurisdiction was an abuse of discretion.

III. **Even if This Court Had Jurisdiction to Consider the District Court's Original Jurisdiction Analysis, The District Court Properly Declined Such Jurisdiction.**

Assuming *arguendo* that this Court has the jurisdiction to reach the question of whether the district court appropriately declined to exercise supplemental jurisdiction over the novel issue of state law presented by Count Two the Court should affirm because the district court was correct in declining jurisdiction.

A. **The district court properly concluded that it lacked original jurisdiction over Count Two, Plaintiffs' State Constitutional Claim.**

The district court correctly concluded that it had no original jurisdiction over plaintiffs' state constitution claim. JA601-602. When examining whether original federal jurisdiction lies over a state law claim, this Court has consistently relied upon the four-factor test articulated in *Gunn v. Minton*, 568 U.S. 251 (2013). *See, e.g., Burrell v. Bayer Corp.* 918 F.3d 372, 379 (4th Cir. 2019); *Old Dominion Electric Cooperative v. PJM Interconnection*, LLC, 24 F.4th 271, 279–80 (4th Cir. 2022). According to *Gunn*, original federal jurisdiction lies under 28 U.S.C. § 1331 when a state law claim raises a substantial federal question. 568 U.S. at 258. A state law claim raises a substantial question

if the claim presents a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Following the well-established lead of this Court, the district properly identified and applied the *Gunn* standard in its order. JA569 and JA575-577 Therefore, its conclusion that original jurisdiction did not lie for Count Two should be affirmed.

The basis for the districts court's conclusion was that "finding federal question jurisdiction over [plaintiffs'] claim would fundamentally disrupt 'the federal-state balance,' . . . precluding the exercise of original jurisdiction." JA575 (citing *Gunn*, 568 U.S. at 258). In other words, the district court concluded that the fourth element of the *Gunn* test was not satisfied and, by implication, the issue was "[in]capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This court addressed the question of whether deciding an issue would result in the disruption to the federal-state balance in *Pressl v. Appalachian Power Company*, 842 F.3d 299 (4th Cir. 2016). In *Pressl*, the court concluded that asserting federal jurisdiction over the interpretation of flowage easements would be

disruptive because "[s]tate courts are just as able (perhaps more able) to interpret and enforce the property rights conveyed through instruments governed by state law." *Id.* at 305. Because "[t]he interpretation of a state conveyance is a quintessential question of state property law . . . § 1331 provides no basis for federal jurisdiction over [the] case." *Id.*

The district court's conclusion that resolving the state constitutional claim fails the fourth *Gunn* factor is entirely in line with the reasoning in *Pressl.* If the interpretation of property conveyances is a quintessential question for state courts, how much more so would a question of state constitutional law be? The district court recognized that North Carolina courts tradition of jealously guarding the "independent authority to interpret state constitutional provisions reflect[ing] the unique role of state constitutions and state courts within our system of federalism." Ord. at 18 (quoting *State v. Kelliher*, 381 N.C. 558, 580 (2022)). As the district court rightly highlighted, the United States Supreme Court has expressed its commitment to state courts on that score: "It is fundamental that state courts be left free and unfettered [by federal courts] in interpreting their state constitutions." JA575 (quoting *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).

In Count Two, Plaintiffs brought a state constitutional claim alleging their rights under the state constitution were denied by Defendants' failure to comply with state law. The district court rightly applied the relevant tests in line with both precedent from both this Court and the United States Supreme Court. Because the interpretation of state constitutional rights is quintessentially the province of state courts, the district court rightly concluded that original jurisdiction did not lie over Count Two because resolution of the issue would disrupt the federal-state balance approved by Congress. Therefore, there is no original jurisdiction over the state law claim and the district court should be affirmed.

Plaintiffs' state constitutional claim does not arise under federal law pursuant to 28 U.S.C. § 1331 because (1) it cannot be decided without disrupting the federal-state balance approved by Congress and (2) it does not raise a substantial, actually disputed issue of federal law. *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 87 (2022)). (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013))

The district court correctly determined that Count Two raises a novel issue of state constitutional law. North Carolina law, particularly N.C. Gen. Stat. § 163-82.4(a), independently requires that certain information be collected in statewide voter registration applications. This directive in turn informs list maintenance procedures under § 163-82.11(c). Failure of a state agency to comply with mandatory state and federal reporting requirements can independently violate Article I, Section 19 of the North Carolina Constitution by diluting the votes of eligible voters with ineligible voters.

While Defendants and Intervenor-Defendant argue that no new constitutional issue has been raised because *Harper v. Hall*, 886 S.E.2d 393, 440 (N.C. 2023) overruled voter dilution claims under Article I, Section 19 of the North Carolina Constitution, *see* Doc. 48, pp. 26, 40–41; Doc. 49, p. 39, this grossly misinterprets *Harper*. That case addressed partisan gerrymandering, holding that vote dilution "based on one's *affiliation with a political party* does not raise a claim under our equal protection clause." *Harper*, 886 S.E.2d at 440 (emphasis added). Here, despite the presence of political parties positioned on both sides of this case, the issue is not partisan. The claim concerns *eligible voters*,

regardless of party affiliation, having their votes diluted due to ineligible voters remaining on the voter rolls and potentially voting. *See, e.g.,* JA36 ¶ 71 ("If Defendants do not remove ineligible voters from the state's voter rolls, then the legitimate votes of qualified voters will be diluted and disenfranchised in upcoming elections."). Thus, the vote dilution at play here is not "based on one's affiliation with a political party"—and therefore the holding in *Harper* is inapplicable.

The district court rightly acknowledged that allowing states to interpret their own constitutions is a foundational principle of federalism. JA575 (citing *Martin v. Hunter's Lessee*, 14 U.S. 304, 325 (1816)). While Article I, Section 19 of the North Carolina Constitution "generally follows" its federal counterpart, *see Blankenship v. Bartlett,* 363 N.C. 518, 522, 681 S.E. 759, 762 (2009), state courts are not bound by federal interpretations. *See State v. Arrington*, 311 N.C. 633, 642, 319 S.E.2d 254, 260 (1984) (holding that North Carolina Supreme Court "is not bound by opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States"). Thus, since federal courts are not meant to be the arbiters of state constitutional questions, wading into an issue of state-specific voter

registration regulations presented by Plaintiffs here would elide the proper relationship between the state and federal courts. *See Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) ("It is fundamental that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions.").

Tellingly, Defendants' and Intervenor-Defendant's briefs fail to meaningfully engage with the balance of federalism that was key to the district court's decision.

### B. Count Two is a novel issue of state law which state courts should resolve.

Further, Defendants cannot make a strong showing that Count Two necessarily presented a substantial, actually disputed question of federal law. Defendants overstate a footnote in the district court's opinion about their argument that Count Two raises the same issues as the dismissed Count One. What Defendants and Intervenor-Defendant ignore is the fact that the district court previously indicated "Defendants have not convincingly argued" that Count Two raised a federal question and that the court merely "assume[d] without deciding that this claim necessarily raises a disputed and substantial issue of federal law." *Compare* JA574-575 *with* Doc. 49 p.24 (quoting JA575 n.2); Doc. 48 p.27 (same).

Regardless, there is not a necessarily presented, substantial, or disputed federal question in Count Two.

First, Plaintiffs' state constitutional claim does not necessarily raise a federal question. "[A] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when **every** legal theory supporting the claim requires the resolution of a federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original). "In other words, if the plaintiff can support [the] claim with even one theory that does not call for an interpretation of federal law, [the] claim does not arise under federal law[.]" *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 818 (4th Cir. 2004). The issue of whether 225,000 persons should have been registered to vote in the first place is a distinct state law issue of which HAVA provides some—but not all—guidance. *See* N.C. Gen. Stat. §§163-82.11(c), 163-82.4(a).

Second, "a case may *not* be removed to federal court on the basis of a federal defense"—thus, even Defendants' invocation of a federal defense to Plaintiff's state constitutional claim under NVRA cannot form the basis for federal jurisdiction. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S. Ct. 2425, 2430, 96 L. Ed. 2d 318 (1987) (emphasis in

original); *see also Mayor & City Council of Baltimore v. BP P.L.C.,* 31 F.4th 178, 198 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795, 215 L. Ed. 2d 678 (2023); *Badalato v. Wish to Give Prod., LLC*, No. 7:19-CV-66-FL, 2019 WL 3661164, at *4 (E.D.N.C. Aug. 6, 2019).

Moreover, for much the same reason as there is no necessarily presented federal question, there is no substantial federal question involved in Plaintiffs' state constitutional claim. HAVA explicitly defers to state law when determining the sufficiency of the information received from a registrant. *See* 52 U.S.C. § 21083(a)(5)(A)(iii). As state law defines the contents of the voter registration form, *see* N.C. Gen. Stat. § 82.4(11), what is and is not sufficient information received from a qualified person seeking to register to vote is a matter of state law.

Finally, even if HAVA is implicated in Plaintiffs' state constitutional claim, Defendants' noncompliance with HAVA is undisputed. Defendants conceded that they allowed applicants to register to vote without providing a social security number or driver's license number, and thereby violated HAVA. JA577-578.

## IV.	This Court Should Not Reach the Merits of Defendants' Motion to Dismiss Count Two

Only Intervenor-Defendant argues that this Court should decide its motion to dismiss Count Two on the merits. Doc. 48 at 36 (citing *Bryan*, 377 F.3d at 427, 430). But it is well-established that when a district court dismisses on jurisdictional grounds and did not consider the merits of a contemporaneous Rule 12(b)(6) motion, an appellate court can only dismiss a case under that rule in circumstances where the district court actually determined that the plaintiff failed to allege an element that is necessary to both the merits of a claim and the jurisdictional question actually decided by the court below. *See Evans v. United States* 105 F.*4th* 606, 616 (4th Cir. 2024) (quoting *Brownback v. King*, 592 U.S. 209, 218 n.8 (2021)).

Here, the district court made no determination on the merits of Count Two—in fact, it expressly avoided ruling on the merits due to the novel question of state law involved. JA601-602. Accordingly, if this Court determines that it is able to decide whether the district court should not have remanded Count Two *and* that the district court incorrectly remanded Count Two, the Court should remand to the district court for further proceedings on the merits of the Rule 12(b)(6) motions.

In short, there are significant questions of fact and law to be argued and determined. Intervenor-Defendant's brief is evidence of that, spending a quarter of their pages discussing their merits-based arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court affirm the district court's order, remanding the matter to state court.

Respectfully submitted, this, the 24th day of October, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/  Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

**BAKER DONELSON BEARMAN, CALDWELL & BERKOWITZ, PC**

John E. Branch, III
North Carolina State Bar no. 32598
Thomas G. Hooper
North Carolina State Bar no. 25571
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Ph: (984) 844-7900
jbranch@bakerdonelson.com
thooper@bakerdonelson.com

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(A)(7)(B) because it contains 8989 words, excluding the parts of the brief exempted by FRAP 32(f).

2.     This brief complies with the typeface and style-requirements of FRAP 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century Schoolbook size 14 font.

Respectfully submitted, this, the 24th day of October, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/  Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach

Phillip J. Strach
North Carolina State Bar no. 29456
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Plaintiffs-Appellees*