# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

REPUBLICAN NATIONAL COMMITTEE, NORTH CAROLINA REPUBLICAN PARTY,
*Plaintiffs-Appellees*,

*v.*

NORTH CAROLINA STATE BOARD OF ELECTIONS, KAREN BRINSON BELL, ALAN HIRSCH, JEFF CARMON, STACY EGGERS IV, KEVIN N. LEWIS, SIOBHAN O'DUFFY MILLEN,
*Defendants-Appellants*,

DEMOCRATIC NATIONAL COMMITTEE,
*Intervenor-Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of North Carolina, No. 5:24-cv-00547 (Myers, C.J.)

## DEMOCRATIC NATIONAL COMMITTEE'S REPLY BRIEF

JIM W. PHILLIPS, JR.
SHANA L. FULTON
ERIC M. DAVID
WILLIAM A. ROBERTSON
JAMES W. WHALEN
BROOKS, PIERCE, MCLENDON
   HUMPHREY & LEONARD, LLP
150 Fayetteville Street
Suite 1700
Raleigh, N.C. 27601
(919) 839-0300

SETH P. WAXMAN
DANIEL S. VOLCHOK
CHRISTOPHER E. BABBITT
GARY M. FOX
JOSEPH M. MEYER
JANE E. KESSNER
NITISHA BARONIA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
(202) 663-6000
seth.waxman@wilmerhale.com

October 25, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ..............................................................................1

ARGUMENT .....................................................................................3

I.    THIS COURT HAS APPELLATE JURISDICTION OVER ALL THE ISSUES PRESENTED IN THESE APPEALS ........................................................3

II.   THE DISTRICT COURT ERRED IN REMANDING COUNT TWO............................7

    A.    The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1331 ........................................................8

        1.    Count two necessarily raises a disputed, substantial federal issue...............................................................8

        2.    Resolution of count two in federal court promotes the proper federal-state balance ......................................13

    B.    The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1443 ......................................................16

    C.    The District Court Should Have Exercised Supplemental Jurisdiction Over Count Two Under 28 U.S.C. §1367 .......................18

        1.    Plaintiffs forfeited any objection to the district court's exercise of supplemental jurisdiction over count two .............18

        2.    The district court abused its discretion by declining to exercise supplemental jurisdiction over count two...................21

III.   THIS COURT CAN AND SHOULD ADDRESS WHETHER COUNT TWO SHOULD BE DISMISSED....................................................................23

CONCLUSION .................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## CASES

Page(s)

*Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) ................................19

*Arakas v. Commissioner*, 983 F.3d 83 (4th Cir. 2020) ............................................24

*Arcia v. Florida Secretary of State*, 772 F.3d 1355 (11th Cir. 2014).......................16

*Arrington v. City of Raleigh*, 369 F.App'x 420 (4th Cir. 2010)
    (per curiam) ...........................................................................................20, 21

*Battle v. Seibels Bruce Insurance Co.*, 288 F.3d 596 (4th Cir. 2002) .......................4

*Bauer v. Elrich*, 8 F.4th 291 (4th Cir. 2021)...........................................................13

*BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021) ..........4, 5, 6

*Brookshire Brothers Holding v. Dayco Products, Inc.*, 554 F.3d 595
    (5th Cir. 2009) .................................................................................................23

*Brownback v. King*, 592 U.S. 209 (2021) ................................................................25

*Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424 (4th Cir.
    2004) ............................................................................................................3, 4

*Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009).....................3, 20

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) ...................................21

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ..................................................11

*City of Greenwood v. Peacock*, 384 U.S. 808 (1966)..............................................18

*Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811 (4th Cir. 2004)....................................10

*Doe by Fein v. District of Columbia*, 93 F.3d 861 (D.C. Cir. 1996) .......................20

*Evans v. United States*, 105 F.4th 606 (4th Cir. 2024) ...........................................25

*Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir.
    2014) ...............................................................................................................10

*Georgia v. Rachel*, 384 U.S. 780 (1966) ...........................................17, 18

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) ......................................8, 13

*Gunn v. Minton*, 568 U.S. 251 (2013) ................................................8, 13

*Harper v. Hall*, 886 S.E.2d 393 (N.C. 2023).......................................15

*Hicks v. Ferreyra*, 965 F.3d 302 (4th Cir. 2020) .....................................19

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) .............................................................6

*Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974)..........................................................20

*Minnesota v. National Tea Co.*, 309 U.S. 551 (1940) ...........................14

*Montano v. City of Chicago*, 375 F.3d 593 (7th Cir. 2004)....................23

*Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271 (4th Cir. 2022)..................................................8

*Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016).....................13, 14

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) .............................24

*Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995)..................................23

*Singleton v. Wulff*, 428 U.S. 106 (1976) ..............................................24

*Vlaming v. West Point School Board*, 10 F.4th 300 (4th Cir. 2021) .........6, 7, 17, 18

**CONSTITUTIONS, STATUTES, AND RULES**

N.C. Const. art. I, §19 .......................................................................1, 15

28 U.S.C.

 §1291 ................................................................................3
 §1331 ........................................................................4, 8, 16
 §1367 ...........................................................18, 19, 20, 21, 23
 §1441 ..........................................................................8, 16
 §1442 ................................................................................5
 §1443 ...........................................................5, 16, 17, 18
 §1447 ........................................................................3, 5, 6

52 U.S.C.

 §20501 ........................................................................16, 17
 §21083 ..........................................................................9, 12

N.C. Gen. Stat.

 §163-82.4 .........................................................................12
 §163-82.11 ......................................................................10

Fed. R. Civ. P. 12 ...........................................................24, 25

# INTRODUCTION

Plaintiffs offer no sound reason to affirm the district court's order declining jurisdiction over count two of the complaint. Although that count is labeled a (nebulous) violation of Article I, Section 19 of the North Carolina Constitution, the paragraphs of the count make clear that, substantively, it turns on the proper interpretation of a federal statute, the Help America Vote Act ("HAVA"). And it is the substance, not plaintiffs' label, that is dispositive.

Plaintiffs' arguments in response lack merit. For example, plaintiffs admit that this Court has appellate jurisdiction over these appeals but distort the relevant—and binding—case law in an attempt to narrow the scope of the appeal; in fact, as that case law establishes, the entire order is properly before this Court. Moreover, although plaintiffs challenge each of the *Gunn-Grable* factors, including, bizarrely, whether there is a dispute here, they simply ignore many of the arguments regarding those factors in the DNC's brief. Next, on the civil-rights removal statute, plaintiffs double down on the district court's atextual and unduly narrow interpretation of the refusal clause. Plaintiffs do not meaningfully address that they forfeited any argument that the district court should decline supplemental jurisdiction over count two, nor do plaintiffs engage with the efficiency concerns that warrant the exercise of supplemental jurisdiction. Finally, plaintiffs do not respond to the DNC's detailed arguments on why count two be dismissed, stating

only that this Court should not address them.  But there is no reason the Court should not direct dismissal on the fully briefed, purely legal, and straightforward grounds presented (including one the district court already decided: that Congress has provided no private right of action for plaintiffs' claims).

Finally, plaintiffs (Br.2-3) baselessly accuse the North Carolina State Board of Elections ("State Board") and the Democratic National Committee ("DNC") of "alarmism," and making "hyperbolic characterizations."  And, attempting to rewrite this litigation, they falsely state (Br.2) that their complaint "does not seek to 'purge nearly a quarter million voters from the State's voter rolls.'"  That is *precisely* what it seeks:  Their prayer for relief requests "a court-ordered plan" that involves "identifying all ineligible registrants and removing them from the state's voter registration lists."  JA40.  That they also made an alternative request that those voters be required to "cast … provisional ballot[s]," JA40-41—an alternative that is equally unavailable—does not change the fact that their principal request was indeed a purge.  Plaintiffs' effort to run away from that leading request now speaks volumes.  But it does nothing to justify affirmance.

This case should be ended now, on the merits, so that plaintiffs cannot continue spinning their false narrative that North Carolina's elections are insecure. The district court's remand order for count two should be reversed, its judgment

should be vacated, and the case remanded to the district court with instructions to dismiss count two.

## ARGUMENT

I. **THIS COURT HAS APPELLATE JURISDICTION OVER ALL THE ISSUES PRESENTED IN THESE APPEALS**

Plaintiffs agree (Br.27) that this Court has appellate jurisdiction but argue that its review is limited to (1) the district court's ruling that it lacked federal jurisdiction under the civil-rights removal statute and (2) its decision not to exercise supplemental jurisdiction. As explained (DNC Br.3-4, 15-16), this Court also has appellate jurisdiction over the remaining issues presented, on either of two independent bases.

A. Under circuit precedent, this Court has jurisdiction to review a district court's decision declining to exercise supplemental jurisdiction, because such a decision is "appealable as a final order pursuant to § 1291." *Bryan v. BellSouth Communications, Inc.*, 377 F.3d 424, 428 (4th Cir. 2004). Plaintiffs agree (Br.21-22) that "[w]hen a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction," so 28 U.S.C. §1447(d)'s no-appeal provision for most remand orders does not apply. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 636, 641 (2009).

Plaintiffs, however, ask this Court (Br.22-25) to limit appeals of such remand orders to the denial of supplemental jurisdiction. That request must be rejected because the Supreme Court has held that review of "a district court's 'order'" generally includes "review of any issue fairly encompassed within it," *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 242 (2021). As the DNC explained (Br.17), this Court's review of district-court orders declining to exercise supplemental jurisdiction includes assessing if the district court erred in analyzing the necessarily precedent issue of whether federal-question jurisdiction existed under 28 U.S.C. §1331. *See Battle v. Seibels Bruce Insurance Co.*, 288 F.3d 596, 605-606 (4th Cir. 2002); *Bryan*, 377 F.3d at 428-430. This scope of appellate review makes sense, as it can often be difficult to disentangle interlocking jurisdictional rulings.

Plaintiffs attempt (Br.23-24) to distinguish *Battle*'s and *Bryan*'s assessments of the scope of appellate review on the ground that those cases involved the "federally-dominated" flood insurance and telecommunications industries, whereas this election case is different, they say, because it implicates state concerns. But even putting aside that the federal interest in the proper running of *federal* elections is no less substantial than the federal interest in flood insurance or telecommunications, nothing in *Battle* or *Bryan* suggests that this Court's appellate jurisdiction was driven by the particular merits issue in the case. Nor do plaintiffs

explain how having the scope of appellate jurisdiction turn on such merits-based issues make any sense. And plaintiffs' other observations about *Battle* and *Bryan*—that *Battle* involved a more "obvious" jurisdictional defect and *Bryan* did not "explain[] its conclusion" to plaintiffs' liking (Br.25-26)—are also irrelevant to their holdings.

B.    This Court also has appellate jurisdiction under the second clause of 28 U.S.C. §1447(d). Section 1447(d) makes "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 … reviewable by appeal or otherwise." By its terms, then, the statute provides jurisdiction over any such "order" in its entirety. That means, as the Supreme Court has explained, that appellate review encompasses "any issue in a district court order remanding a case to state court where the defendant premised removal in part on" 28 U.S.C. §1443. *BP*, 593 U.S. at 234. This Court thus has jurisdiction to consider "the whole of" the district court's remand order, *id.* at 238, because the State Board premised removal of both counts on §1443, JA575.

Plaintiffs invite this Court (Br.19) not to take that Supreme Court holding "at face value," asserting that the facts of *BP* were "grounded" in the limitation—one stated nowhere in the opinion—that a district court must expressly reject every basis for removal for any basis to be reviewable on appeal. Neither §1447 nor *BP* says what plaintiffs wish.

As *BP* recognized, *e.g.*, 593 U.S. at 236, §1447(d) provides jurisdiction to review the court's entire "*order* remanding a case," (emphasis added). And plaintiffs themselves say (Br.22) that the review of the "entirety of an order remanding" a claim encompasses "whether the district court had original jurisdiction over the state law claims." That is correct, because, as *BP* explained, no district court is "at liberty to remove" a case from its "docket until it determine[s] that it lacked *any* authority to entertain the suit." 593 U.S. at 237 (emphasis added). Hence, §1447(d) "authorizes a court of appeals to review each and every one of" the "defendants' grounds for removal," all of which are necessarily rejected in the court's remand order. *Id.*

*BP* is unequivocal in this regard: Again and again, it states that §1447(d) permits review of the remand order "without any further qualification," no matter the "policy arguments" against that result. *Id.* at 235, 239, 245. Indeed, when the Supreme Court remanded *BP*, this Court recognized that it "*must* evaluate eight distinct grounds for removal" that the defendants "maintain[ed] provide federal jurisdiction." *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 194 (4th Cir. 2022) (emphasis added), *cert. denied*, 143 S.Ct. 1795 (2023).

Likewise infirm is plaintiffs' reliance (Br.21) on this Court's decision in *Vlaming v. West Point School Board*, 10 F.4th 300 (4th Cir. 2021). To the contrary, *Vlaming* states that the court may "consider *all* of the … arguments

- 6 -

supporting jurisdiction that were addressed in" the court's "remand *order*." *Id.* at 306 (emphases added).

Finally, even if *BP* required the analysis of the district court's order that plaintiffs posit, that would not help them. That is because the district court *did* "reject" (Resp. Br.20) both bases for removal jurisdiction over count two. In a discussion spanning over two pages, the court "consider[ed] whether Count Two raises a federal question" creating original jurisdiction and ultimately concluded that "finding federal question jurisdiction over" count two would disrupt the federal-state balance (even assuming that count two raised the same "disputed and substantial issue of federal law" as count one). JA575. Ignoring these pages of the court's opinion rejecting federal-question jurisdiction over count two, plaintiffs repeatedly say (Br.20, 26-27) that "the district court actually accepted" the State Board's federal-question theory as to count *one*. That merely emphasizes why the court *should* have applied the same federal-question reasoning to both counts (*see* DNC Br.18-27); it does not change the fact that these appeals of count two are properly before the Court even under plaintiffs' reading of *BP*.

## II.  THE DISTRICT COURT ERRED IN REMANDING COUNT TWO

The district court had jurisdiction over count two on any of three independent grounds. Unless this Court agrees with plaintiffs on all three, therefore, the district court's remand of count two must be reversed.

### A. The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1331

Although clothed in "state garb," *Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022), count two arises under federal law because it necessarily raises a disputed, substantial federal question that can be adjudicated in federal court without disrupting the congressionally intended federal-state balance. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-314 (2005)). Because the district court would have had original jurisdiction over count two under 28 U.S.C. §1331, removal of that count to federal court was proper under 28 U.S.C. §1441(a), and the district court was therefore not permitted to decline jurisdiction. Plaintiffs' contrary arguments fail.

#### 1. Count two necessarily raises a disputed, substantial federal issue

The district court "assume[d]" that count two "necessarily raises a disputed and substantial issue of federal law." JA575. That assumption was well founded because, as the State Board and the DNC "persuasively argued," "Count 2 involves the same disputed issues pertaining to HAVA as Count One." JA575. While plaintiffs accuse the DNC of "overstat[ing]" the district court's opinion on this point (Br.42), that accusation is unfounded. The DNC's brief accurately presented

the relevant quotation, and acknowledged that the district court did not reach a definitive conclusion on this point.

a. The DNC's opening brief articulated the following federal question that was necessarily raised by count two (as well as count one):

> When election officials register a voter whose completed registration form lacked a current, valid driver's license number or the last four digits of her social security number—as required by 52 U.S.C. §21083(a)(5)(A)(i)—does the State Board's obligation under 52 U.S.C. §21083(a)(2)(A) to "perform list maintenance with respect to the computerized [registration] list on a regular basis" require that the voter either be removed from the rolls or allowed to cast only a provisional ballot?

DNC-Br.19-20 (alteration in original). Plaintiffs never engage with this question, and certainly never explain how they could continue pursuing this case while avoiding that question. Nor could they, as count two is explicitly based on the theory that the State Board has "a nondiscretionary, statutory duty to maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA." JA39; *see also* JA23 (State Board "violated HAVA and, *as a result*, state law" (emphasis added)). That is why plaintiffs' own press release referred to this case as implicating HAVA without mentioning *any* state law. JA483. Confronted with their own words, plaintiffs remain silent.

Instead, plaintiffs offer two conclusory arguments about why no federal issue is necessarily raised. Neither is persuasive.

First, plaintiffs cite two cases for the proposition that a federal issue is not necessarily raised unless "**every** legal theory supporting the claim requires the resolution of a federal issue." Resp. Br.43 (quoting *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014)). Simply explaining what "necessarily" means does not help plaintiffs. Under their own cited cases, plaintiffs must articulate at least "'one theory that does *not* call for an interpretation of federal law.'" *Id.* (emphasis added) (quoting *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 818 (4th Cir. 2004)). They offer no such theory. Indeed, they say (Br.43) that "whether 225,000 persons should have been registered to vote in the first place is a distinct state law issue of which HAVA provides some—but not all—guidance." That is quite an understatement, since the relevant state provision is titled "Compliance With *Federal* Law." N.C. Gen. Stat. §163-82.11(c) (emphasis added). In any event, even plaintiffs' formulation concedes that the central issue in this case turns (at least in part) on a federal law, HAVA. Plaintiffs' theory thus necessarily "call[s] for an interpretation of federal law," *Dixon*, 369 F.3d at 818.

Second, plaintiffs offer the undeveloped assertion (Br.43) that "'a case may not be removed to federal court on the basis of a federal defense'" (emphasis omitted) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). But the very case from which they draw this quote explains (in the prior paragraph) that

federal jurisdiction lies "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. Here, plaintiffs' complaint explicitly ties count two to the State Board's alleged non-compliance with HAVA. JA39. The State Board's removal was thus based on the federal issue presented by *plaintiffs' claims*, not the federal nature of any defense. *See* JA8.

b. As the DNC's opening brief explained (at 22), the necessarily raised federal issue was contested before the district court, and it remains hotly disputed: Plaintiffs argue that the State Board's alleged violation of HAVA's information-collection provisions requires a purge of the voter rolls through either wide-scale de-registration or provisional voting. The State Board and the DNC vehemently disagree that HAVA requires or even permits such a voter purge.

Denying this reality, plaintiffs say (Br.44) that the State Board's "noncompliance with HAVA is undisputed" because the Board "conceded" a problem with the prior version of North Carolina's voter-registration form. The DNC's opening brief already addressed that argument (at 22). Regardless of whether the State Board's *conduct* is disputed, there is undeniably a distinct dispute about the *consequences* (if any) of that conduct. In any event, the sufficiency of the State Board's conduct before December 2023 is in fact disputed, as the prior version of the voter-registration form specifically instructed registrants:

"If you have a NC driver license or non-operator identification number, provide that number. If you do not have a NC driver license or ID card, then provide the last four digits of your social security number." JA427. Plaintiffs offer no response.

      c.     Count two's federal issue is substantial because plaintiffs' relief would jeopardize the fundamental right to vote of tens (if not hundreds) of thousands of citizens registered in North Carolina in the midst of an ongoing election. Because plaintiffs' theory turns on an interpretation of HAVA, which is a federal law that applies uniformly across the nation, resolution of count two has the potential to affect registered voters throughout the country. *Id.*

      Plaintiffs do not dispute that the stakes are high enough to render the federal issue substantial. Instead, they attempt (Br.44) to shift the focus away from federal law by pointing out that HAVA tasks the states with determining whether identification numbers that applicants provide are "sufficient" under HAVA's information-collection provisions, 52 U.S.C. §21083(a)(5)(A)(iii); *see also* N.C. Gen. Stat. §163-82.4 (listing information to be collected on North Carolina's voter-registration form). But state law's enumeration of the precise information to be collected from voters has no bearing on federal law governing what can or should happen when election officials do not collect a small subset of that information.

Put simply, plaintiffs cannot wave away the substantiality of the federal question presented here by pointing to a subsidiary issue of state law.

## 2. Resolution of count two in federal court promotes the proper federal-state balance

Given that count two necessarily raises a substantial federal issue, there is "no reason to suppose that Congress" intended to channel that dispute into state court, *Gunn*, 568 U.S. at 264. That is why, in dismissing count one, the district court recognized that "Congress intended for federal courts to resolve core questions of statutory interpretation" regarding HAVA. JA591. The district court never explained why that principle applied for count one but not count two. *See* JA575-577. As this Court aptly put it not long ago, when a removed complaint "contains a single theory of liability" that defendants have violated a federal law, jurisdiction over that "core" federal claim does not "undermine state courts[]" or otherwise "disrupt the 'congressionally approved balance of federal and state judicial responsibilities.'" *Bauer v. Elrich*, 8 F.4th 291, 297 (4th Cir. 2021) (quoting *Grable*, 545 U.S. at 314). That is precisely the situation here.

Plaintiffs lean heavily on *Pressl v. Appalachian Power Co.*, 842 F.3d 299 (4th Cir. 2016), but that case is inapposite. There, this Court there held that the final *Gunn-Grable* factor was not satisfied because a state court is "just as able (perhaps more able) to interpret and enforce the *property rights conveyed through instruments governed by state law*." *Id.* at 305 (emphasis added). But here, by

contrast, count two does not focus on flowage easements, property rights more generally, or any other creature of state law. Rather, in the complaint's own words, count two hinges on whether election officials "have a non-discretionary, statutory duty to maintain the state's voter rolls in a manner compliant with Section 303(a) of HAVA," JA39, and whether their alleged noncompliance with that duty requires (or even permits) them to interfere with 225,000 individuals voting in federal elections. *See supra* §II.A.1.a.

Like the district court, plaintiffs fall back (Br.38, 41) on the principle that "'state courts should be left free and unfettered by [federal courts] in interpreting their state constitutions.'" JA575 (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940)). But that principle has no application here because the claim turns not on an interpretation of the state constitution, but on whether federal law requires or permits voters to be systematically removed from the rolls or forced to vote provisionally as a consequence of an alleged non-compliance with §303(a) of HAVA. As the State Board's opening brief explained (at 40), a state court has no special advantage in adjudicating a state-constitutional claim that, like count two, "so completely and exclusively invokes federal law."

The DNC's opening brief (at 26) challenged plaintiffs to identify the precise issue of state constitutional law under count two that would better addressed in state court. Their only response (Br.40) is: whether the State Board's alleged

failure "to comply with mandatory state *and federal* reporting requirements can independently violate Article I, Section 19 of the North Carolina Constitution by diluting the votes of eligible voters" (emphasis added). Citing nothing, plaintiffs assert (Br.40) that such a failure can give rise to such a claim. But without any underlying HAVA violation by the State Board, and without HAVA requiring or permitting plaintiffs' desired relief, any such "constitutional" violation is entirely untenable. And plaintiffs cannot avoid this reality by invoking "vote dilution" (*id.*). In the first place, even under their own theory, alleged "dilution" would arise only if a HAVA duty were violated. Moreover, as the DNC has explained (Br.26), any vote-dilution claim based on alleged non-compliance with HAVA would be dead on arrival in state court. The North Carolina Supreme Court held just last year that a vote-dilution claim could be viable only if one individual's vote does not "have the same weight" as another's vote. *Harper v. Hall*, 886 S.E.2d 393, 440 (N.C. 2023). Plaintiffs offer no response, i.e., nothing constituting a plausible allegation that their supporters' votes are being weighted differently than others' votes.

In short, having a federal court decide the disputed and substantial issue of federal law raised in count two would be consistent with and promote the tenets of federalism. And because all the *Gunn-Grable* factors are satisfied, the district court would have had original jurisdiction over count two under 28 U.S.C. §1331,

meaning that removal of that count was proper under 28 U.S.C. §1441(a). This Court need go no further to reverse the district court's contrary order remanding count two.

## B. The District Court Had Original Jurisdiction Over Count Two Under 28 U.S.C. §1443

As the DNC's opening brief explained (at 28-31), the State Board exercised "authority derived from [a] law providing for equal rights," 28 U.S.C. §1443(2), when it refused to remove voters from the rolls or make them cast discardable provisional ballots without giving them any notice or opportunity to be heard. The National Voter Registration Act ("NVRA") is such a law, as it specifically protects "racial minorities" from "discriminatory" state "procedures," 52 U.S.C. §20501(a)(3). It (like, by incorporation, HAVA) protects racial minorities by barring states from de-registering voters en masse within 90 days of any federal election, when there is not enough time for those voters to "correct the State's errors in time to vote," *Arcia v. Florida Secretary of State*, 772 F.3d 1355, 1346 (11th Cir. 2014).

Plaintiffs do not contest that the 90-day rule acts to protect racial minorities, or that the law of which it is a part expressly refers to the NVRA's intent to protect "racial minorities" from "discriminat[ion], 28 U.S.C. §20501(a)(3). They even acknowledge (Br.29) that "the federal laws at issue here" are "the NVRA and HAVA," not their isolated statutory provisions. But in the same breath (*id.*), they

recite the district court's mistaken conclusion that it is the "*statute*" in question, i.e., the individual provision of a law, that must contain "'the specific language of racial equality that § 1443 demands,'" *Vlaming*, 10 F.4th 300, 309 (4th Cir. 2021) (quoting *Georgia v. Rachel*, 384 U.S. 780, 789 (1966)). As the DNC explained (Br.30), neither the refusal statute nor either *Rachel* or *Vlaming* ignores the text and purpose of a law as well as its lead provisions to focus only on a specific section within it. *Rachel*, for example, held that "the Civil Rights Act" as a whole is "clearly a law conferring a specific right of racial equality" because its lead provision (not every single provision) refers to "discrimination on the ground of race." *Id.* at 792-793. The NVRA similarly protects "racial minorities" from "discriminatory" state "procedures." 52 U.S.C. §20501(a)(3).

Plaintiffs also argue (Br.30) that the NVRA expresses "concern for harms to many groups rather than [a] specific focus on racial equality." But the law's recognition that it may benefit other (unidentified) groups *in addition to* explicitly protecting "racial minorities" does not erase its "specific language of racial equality," *Rachel*, 384 U.S. at 789. Plaintiffs cite no authority for their contrary suggestion. *Rachel* and *Vlaming* certainly do not support it; they simply held that when a law contains *no* reference, in any provision, to racial equality (such as the First and Fourteenth Amendments discussed in *Rachel*, 384 U.S. at 792, and the

sex-equality law at issue in *Vlaming*, 10 F.4th at 309), that law cannot justify removal under §1443(2).

Finally, plaintiffs argue (Br.30-31) that §1443(2) cannot apply because there is no discriminatory *state* law that the State Board is refusing to enforce. But §1443(2) does not apply only to refusals to enforce discriminatory state laws; it also allows state officials to remove "civil actions" challenging their "refusal to do any act" that would undermine equal rights. 28 U.S.C. §1443(2). Regardless, plaintiffs *have* cloaked their request in state law, and the Board has refused to enforce state law in the manner plaintiffs demand. *City of Greenwood v. Peacock*, 384 U.S. 808 (1966), is not to the contrary, as plaintiffs suggest (Br.31). As relevant here, it simply holds that removal under 28 U.S.C. §1443(2) is available only to governmental officials, not (as in that case) individual persons being prosecuted under state law. 384 U.S. at 824 & n.22.

## C. The District Court Should Have Exercised Supplemental Jurisdiction Over Count Two Under 28 U.S.C. §1367

Even if the district court had discretion to decline to exercise supplemental jurisdiction over count two after dismissing count one, it abused that discretion.

### 1. Plaintiffs forfeited any objection to the district court's exercise of supplemental jurisdiction over count two

As the DNC's opening brief explained (at 31-33), plaintiffs forfeited any objection to the exercise of supplemental jurisdiction by failing to argue in their

remand motion that the district court should discretionarily decline supplemental jurisdiction. Because such arguments are forfeited unless raised in the district court, *see id.* at 32 (collecting cases), the court erred by declining supplemental jurisdiction *sua sponte*—and without even acknowledging the DNC's contention (JA480) that any argument that it should decline such jurisdiction had been forfeited, *see* JA601-602. Because plaintiffs did not ask the district court to decline supplemental jurisdiction in their remand motion, the arguments they now raise against the exercise of supplemental jurisdiction (Br.32-35) are "forfeited on appeal." *Hicks v. Ferreyra*, 965 F.3d 302, 309 (4th Cir. 2020).

Plaintiffs do not directly address the DNC's forfeiture argument; their response does not include the word "forfeiture" or acknowledge any of the cases the DNC cited. Plaintiffs instead cite (Br.34) a case noting that "federal courts 'are obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" But that reference to "federal jurisdiction" refers to Article III jurisdiction, which indeed "must be considered *sua sponte*," unlike "the discretionary aspect to supplemental jurisdiction under §1367(c)" which is "waived unless raised in the district court," *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-1001 (9th Cir. 1997) (citing *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996)). As the Supreme Court has explained, the "view of pendent jurisdiction as something akin to subject matter jurisdiction that may be

raised *sua sponte* at any stage"—let alone that courts *must* consider *sua sponte*—is "a misreading of the law." *Mayor of City of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974). In other words, §1367(c) "may not be raised at any time as a jurisdictional defect." *Carlsbad*, 556 U.S. at 640. That conclusion is not altered by the cases plaintiffs cite (Br.34), which observe that §1367(c) grants courts "wide discretion" and "inherent power" to remand state-law claims after dismissing federal claims where §1367(c) *is* properly raised. In other words, it is legal error for a district court to decline supplemental jurisdiction where, as here, that argument was not raised by any party.

Nor is it altered by *Arrington v. City of Raleigh*, 369 F.App'x 420 (4th Cir. 2010) (per curiam), which plaintiffs also cite (Br.35). In *Arrington*, the plaintiff voluntarily dismissed all her federal claims thirteen days after removal, but never sought remand to state court; on appeal this Court ruled that the district court should have declined to exercise supplemental jurisdiction under §1367(c) and remanded the case to state court. *See* 369 F.App'x at 421. But *Arrington* is not binding, and it should not be followed because it did not even acknowledge any of the precedent cited above and in the DNC's opening brief. In any event, *Arrington* is distinguishable. For one, the plaintiff there did not seek remand and thus never had a forum to argue that the district court should decline to exercise its supplemental jurisdiction. 369 F.App'x at 421. Plaintiffs here, by contrast, sought

remand and made several other arguments but *chose* not to raise §1367(c).

Moreover, the ruling in *Arrington* was driven by the unusual facts, including that

(1) the appeal involved "complex issues of immunity under North Carolina law,"

369 F.App'x at 421; (2) "virtually from the start, there ha[d] existed solely state

law claims," *id.* at 423; and (3) "the sole federal claim supporting the district

court's original jurisdiction was dismissed voluntarily by the plaintiff without

objection by defendants less than two weeks after the case arrived in federal

court," *id.* None of those considerations are present here.

### 2. The district court abused its discretion by declining to exercise supplemental jurisdiction over count two

Even if any argument against supplemental jurisdiction had been presented

to the district court, that court still would have abused its discretion in declining to

exercise it. Plaintiffs do not dispute that courts of appeals regularly find an abuse

of discretion when district courts decline supplemental jurisdiction without

appropriately weighing "principles of economy, convenience, fairness, and comity

which underlie the pendent jurisdiction doctrine," *Carnegie-Mellon University v.*

*Cohill*, 484 U.S. 343, 357 (1988); *see* DNC Br.33 (collecting cases). And plaintiffs

do not directly answer the DNC's detailed arguments (Br.33-36) for why the

district court erred in applying those principles. Instead, they merely cross-

reference their undeveloped assertion that count two raises a novel issue of state

law and note (Br.33) that "in the usual case in which all federal-law claims are

eliminated before trial," the relevant factors "will point towards declining to exercise jurisdiction over the remaining state-law claims." None of that has merit.

First, as the DNC explained in its opening brief (at 33-34) and above, *see supra* pp.14-15, count two does not raise any novel or complex issue of state law. Indeed, it remains unclear what plaintiffs think the state constitutional issue even is. And even if this Court were to accept plaintiffs' arguments that count two is not fundamentally a HAVA claim, there is, at a minimum, enough overlap that resolving count two does not require an adjudication of any state-law issues and thus it does not actually "raise" any significant issue of North Carolina law. The district court acknowledged (JA575) that count two turns at least in part on a federal question: whether HAVA requires de-registration of voters, or mandates provisional voting, based on alleged deficiencies in the collection of registration information, even this close to the election. Fairness and judicial economy thus require exercising supplemental jurisdiction to align the resolution of two claims that ultimately turn on the same (federal) question. At the very least, because the state constitutional claim was inadequately pleaded and incoherent, it does not raise any difficult state-law questions.

Second, plaintiffs ignore the DNC's argument (Br.34-36) that because the district court is thoroughly familiar with the case and has already expended significant judicial resources in the adjudication of plaintiffs' core arguments under

HAVA, "further proceedings in the district court would prevent redundancy and conserve scarce judicial resources," *Batiste*, 179 F.3d at 227. The district court erred by not even mentioning, let alone "account[ing] for[,] the amount of time and energy that has already been expended" on the near-identical claim in count one. *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995). Plaintiffs' only response (Br.33) is that in the "usual" case where all federal-law claims are dismissed, the relevant principles will counsel towards declining supplemental jurisdiction. But they do not address the DNC's point that this does not hold true where significant judicial resources have been expended. To the contrary, "when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation … that court has abused its discretion under 28 U.S.C. § 1367." *Brookshire Brothers Holding v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *see also Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004); *Batiste*, 179 F.3d at 227. That is the situation here.

## III. THIS COURT CAN AND SHOULD ADDRESS WHETHER COUNT TWO SHOULD BE DISMISSED

Plaintiffs offer no direct response to the DNC's detailed arguments (Br.36-49) why this Court should direct that count two be dismissed. Instead, they argue (Br.45) that this Court "[s]hould" not address that issue. That is meritless.

"The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Deciding an issue for the first time on appeal, the Supreme Court has explained, may be appropriate "where the proper resolution is beyond any doubt" or "where injustice might otherwise result." *Id.* And this Court, in deciding whether to reach an issue not decided below, has considered factors like "whether the issue is primarily a question of law" and whether a remand would be "pointless." *Arakas v. Commissioner*, 983 F.3d 83, 105 (4th Cir. 2020). These factors favor this Court's resolution of the State Board's motion to dismiss count two. The issues are purely legal, as is necessary at the Rule 12(b)(6) stage. And count two is so devoid of merit that there is no doubt dismissal is required, rendering further consideration by the district court pointless. With less than two weeks before Election Day, it is imperative that the rules of the election be settled. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam).

Plaintiffs' description (Br.45) of *Evans v. United States*, 105 F.4th 606 (4th Cir. 2024), again invents a rule that is nowhere in that case. *Evans* reviewed on appeal *both* jurisdiction (based on the Federal Tort Claims Act's own jurisdictional limitations) and the Rule 12(b)(6) grounds for dismissing a tort action. *Id.* at 616. In a footnote (which plaintiffs apparently meant to cite in making this argument),

this Court acknowledged a Supreme Court footnote stating that "'where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both.'" *Id.* at 616 n.* (quoting *Brownback v. King*, 592 U.S. 209, 218 n.8 (2021)).  That statement reinforces that dismissal (and review of the denial of dismissal) *is* appropriate here, where the district court found the "jurisdictional posture partially informs resolution of Defendants' motion to dismiss," JA575.  The Supreme Court's footnote also says nothing about the scope of *appellate* review—and plaintiffs omit that this Court dismissed it as "dicta," *Evans*, 105 F.4th at 616 n.*.

Lastly, nothing should stop this Court from ordering the dismissal of count two on the ground that plaintiffs lack a private right of action to enforce HAVA's list-maintenance provisions.  The district court already decided that issue, concluding that HAVA does not provide a cause of action under the circumstances here.  JA584-589.  This Court thus has the benefit of the district court's relevant analysis.  That court simply failed to take that analysis to its logical conclusion—namely, the dismissal of count two.  This Court can and should easily fix that mistake.

*     *     *

Plaintiffs' complaint alleges, "on information and belief," that the State Board's purported "violations of HAVA allowed non-citizens to register to vote in North Carolina." JA36. Yet plaintiffs have not provided a shred of evidence—or any reason to believe—that *any* of the targeted 225,000 individuals (let alone a substantial number) is ineligible to vote. Plaintiffs' amorphous, flawed "constitutional" claim should be dismissed now so that they cannot continue sowing doubt over the ongoing elections.

## CONCLUSION

The district court's remand of count two should be reversed, its judgment should be vacated, and it should be instructed to dismiss count two. Alternatively, the district court should be instructed to consider the merits of the arguments for dismissal of count two.

October 25, 2024                    Respectfully submitted,

                                    /s/ Seth P. Waxman

JIM W. PHILLIPS, JR.                SETH P. WAXMAN
SHANA L. FULTON                     DANIEL S. VOLCHOK
ERIC M. DAVID                       CHRISTOPHER E. BABBITT
WILLIAM A. ROBERTSON                GARY M. FOX
JAMES W. WHALEN                     JOSEPH M. MEYER
BROOKS, PIERCE, MCLENDON            JANE E. KESSNER
    HUMPHREY & LEONARD, LLP         NITISHA BARONIA
150 Fayetteville Street             WILMER CUTLER PICKERING
Suite 1700                              HALE AND DORR LLP
Raleigh, N.C. 27601                 2100 Pennsylvania Ave. NW
(919) 839-0300                      Washington, DC 20037
                                    (202) 663-6000
                                    seth.waxman@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitation of Local Rule 32(a)(7)(B)(ii) in that, according to the word-count feature of the word-processing system used to prepare this document (Microsoft Word for Microsoft 365), the foregoing contains 6,003 words, excluding the portions exempted by Rule 32(f).

/s/ Seth P. Waxman
SETH P. WAXMAN

## CERTIFICATE OF SERVICE

On this 25th day of October, 2024, I electronically filed the foregoing using the Court's appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Seth P. Waxman
SETH P. WAXMAN